IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Northern Division

WILLIAM CLARK, et al.,                    )
                                          )
          Plaintiffs,                     )
                                          )
vs.                                       )          NO. 2:07-CV-190-WKW
                                          )
GOVERNOR BOB RILEY, et al.,               )
                                          )
          Defendants.                     )

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS, AND IN SUPPORT OF PLAINTIFFS' MOTION
TO REMAND AND FOR SUMMARY JUDGMENT**

Plaintiffs respectfully submit this brief in opposition to Defendants' Motion to

Dismiss.  This is also a brief in support of Plaintiffs' Motion to Remand in Part and for

Summary Judgment in Part.  For the reasons stated herein, Defendants' motion should be

denied, and Plaintiffs' motion should be granted.

This case concerns the interpretation of, and the constitutionality of, an Alabama

statute imposing an age limitation on the Trustees of Alabama State University.  *See* Ala.

Code § 16-50-20.  The statute reads as follows:

> (a) There is hereby created a Board of Trustees for Alabama State
> University, the state educational institution at Montgomery, Alabama. The
> board of trustees shall consist of two members from the congressional
> district in which the institution is located and one member from each of the
> other congressional districts in the state as constituted on October 6, 1975,
> and who shall reside in that district, four members from the state at large

1

who shall reside in different districts, and the Governor, who shall be ex officio president of the board. Except for a trustee at large, the position of any trustee shall be vacated at such time as he shall cease to reside in the district from which he was appointed. The trustees shall be appointed by the Governor, by and with the advice and consent of the Senate, in such manner that the membership shall consist of at least a majority who are alumni and who have received a bachelor's degree from the said university; at least one-half of the board shall be from the prevailing minority population of the state according to the last or any succeeding federal census. Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed. All appointments shall be effective until adversely acted upon by the Senate. Provided, however, no trustee who is currently serving on the board or whose term has just expired, who has been previously confirmed by the Senate, shall be required to be reconfirmed for the new term under this section, once appointed by the Governor. A member may be appointed to serve a second term of 12 years, but no member shall be appointed to serve as trustee for more than a total of two terms. The first members, however, shall be eligible to serve for two full additional terms in addition to their initial terms. No trustee shall receive any pay or emolument other than his actual expenses incurred in the discharge of his duties as such. No member of the governing board or employee or student of any public postsecondary education institution, no elected or appointed official having the power of review of the Alabama State University budget, other than the Governor and no employee of the State of Alabama shall be eligible to serve on the board. No member shall serve past September 30 following his seventieth birthday.

(b) No trustee who is serving on the said board on April 30, 1986, shall lose his or her seat because of this section; provided, however, the Governor may re-designate the period of the term of these members so as to conform to the provisions of subsection (a).

Defendants removed the case to this Court based on federal-question jurisdiction.

Defendants have moved to dismiss on three grounds. (1) Defendants contend that

Plaintiffs Figures and Clark have no standing (or in the alternative that Figures's claim is

not ripe). (2) Defendants contend that the Governor has taken action to "moot" Count

2

One, the claim concerning interpretation of the statute, and particularly the question whether the age limitation applies to Plaintiff Reed or whether he is exempted from it by virtue of § 16-50-20(b).  (3)  Defendants contend that they are entitled to a judgment on the merits as to Count Two, i.e., a ruling that the statute's age limitation is constitutional. For the reasons explained in the following sections, none of Defendants' arguments have merit.  To the contrary, the claims of Plaintiffs Figures and Clark should be remanded to state court, Plaintiff Reed's Count One should be remanded to state court, and judgment should be entered in favor of Plaintiff Reed on Count Two.

## 1.    If Plaintiffs Figures and Clark have no standing in the Article III sense, then their claims must be remanded to state court.

Defendants' first contention is that Plaintiffs Figures and Clark have no standing to bring any claims, or in the alternative that Figures's claims are not ripe.  As Defendants themselves confirm by their citation of Article III of the U.S. Constitution (Brief in support of motion to dismiss, p. 3), these issues of "standing" and "ripeness" are fundamentally issues of federal subject-matter jurisdiction.  *Elend v. Basham*, 471 F.3d 1199, 1204-05 (11th Cir. 2006).  Plaintiffs are not the ones who sought to litigate this case in federal court.  It was Defendants who removed the case.

Since Defendants claim that this Court lacks the power under Article III to hear the claims of Plaintiffs Figures and Clark, this Court should remand those Plaintiffs' claims to state court.  A case is removable only if it is within the subject-matter jurisdiction of the federal courts; and if a federal court lacks subject-matter jurisdiction in a removed

3

case because the plaintiff has no Article III standing, then the federal court should remand to state court. *See, e.g., Roberts v. BJC Health System*, 452 F.3d 737 (8th Cir. 2006) (finding a lack of standing and therefore a lack of jurisdiction, District Court remanded case to state court; Court of Appeals had no jurisdiction to review that order). If (as Defendants contend here) *part* of a removed case is outside the federal court's subject-matter jurisdiction, then that part of the removed case should be remanded. *See, e.g., Hudson Savings Bank v. Austin*, ___ F.3d ___, 2007 U.S. App. LEXIS 5129, *14-19 (1st Cir. 2007); *Charles D. Bonnano Linen Service, Inc. v. McCarthy*, 708 F.2d 1, 11 (1st Cir. 1983).

So, this Court should remand the claims of Plaintiffs Figures and Clark to state court, from which they were removed. This Court should not attempt to decide whether Plaintiffs Figures and Clark can meet the Alabama state-law standing requirements for pursuing their suit in state court. That is a matter for the state courts to decide.

If this Court does not grant the motion to remand, then the Court should hold that Plaintiff Figures does have standing to pursue his claim under 42 U.S.C. § 1983. The facts alleged in the Complaint, which must be taken as true at this point, demonstrate that the age limitation in the statute will place Figures at a disadvantage in terms of his prospects of reappointment to a subsequent term, at the conclusion of his present term. A Governor considering whom to appoint, at the conclusion of Figures's present term, would be deterred by the statute from reappointing Figures. That Governor would know that, unless the statute is struck down, Figures would not be able to serve a full term upon

reappointment. Thus the statute places Figures at a competitive disadvantage in comparison to other possible candidates. This is enough to give him standing, and a ripe claim as well, to challenge the statute under the Equal Protection clause. *See, e.g.*, *Northeastern Florida Chapter, AGC v. City of Jacksonville*, 508 U.S. 656, 666, 113 S.Ct. 2297, 2303 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").

**2.     Count One, which is a pure matter of state law, should be remanded. In the alternative, Plaintiff Reed's claim in Count One, as to interpretation of the statute, is not moot, and the statute's age limitation is inapplicable to him.**

In Count One, Plaintiff Reed seeks a declaration that the age limitation in § 16-50-20(a) is inapplicable to him by the statute's own terms, since he was a member of the Board as of April 30, 1986.[1] This would be an application of the first clause of § 16-50-20(b), which provides that "No trustee who is serving on the said board on April 30, 1986, shall lose his or her seat because of this section …" Defendants, while apparently agreeing with our interpretation of the first clause of subsection (b), have claimed that the

---

[1] As stated in the Declaration of Plaintiff Reed that is being filed along with this brief, Dr. Reed has been a member of the Board continuously since before April 30, 1986.

5

Governor has "mooted" this issue by relying on the second clause of subsection (b): "provided, however, the Governor may re-designate the period of the term of these members so as to conform to the provisions of subsection (a)." The Governor purports to have "re-designated" Plaintiff Reed's term such that the term will end on September 30 following his seventieth birthday. *See* Exhibit to Defendants' motion to dismiss.

Count One thus presents pure issues of state law, in regard to the interpretation of the statute. Does the exemption clause of § 16-50-20(b) exempt those who were sitting as of April 30, 1986, from the age limitation? While Defendants appear to concede that it does, this is still a pure issue of state law statutory interpretation. Does the Governor nonetheless have the power to "re-designate" such a member's term so as to make the age limitation applicable again? This too is a pure issue of state law statutory interpretation.

This Court, we submit, should exercise its authority under 28 U.S.C. § 1367(c)(1) (or 28 U.S.C. § 1441(c), if applicable) to remand this aspect of the case, Count One, to state court. It is appropriate that the state courts should have the right to decide questions of first impression about the interpretation of state statutes, particularly in disputes (like this one) that are between citizens of the same state.

But if the Court retains jurisdiction over Count One, the Court should hold that Plaintiff Reed's interpretation of the statute is correct, i.e., that the age limitation of § 16-50-20(a) is inapplicable to him by virtue of § 16-50-20(b); and that the Governor's purported "re-designation" of his term was of no legal effect.

The first conclusion – that the age limitation is inapplicable to Plaintiff Reed – is a

matter of the ordinary meaning of the plain language in the first clause of § 16-50-20(b).

That clause provides that those like Dr. Reed, who were already serving as of April 30,

1986, shall not lose their seats "because of this section." In using the phrase "this

section," rather than referring to some lesser portion of § 16-50-20, the Legislature

plainly encompassed the age-related portion of "this section" as well as the other portions

of "this section." And, as we have noted above, the Defendants do not even seem to

contest this plain-language interpretation of the statute.[2] So, that much should be taken as

settled.

But, contrary to Defendants' view, the "re-designation" clause of subsection (b)

has a more limited application – and it has nothing to do with this case. The Governor's

action purporting to "re-designate" Plaintiff Reed's term was legally a nullity, because the

statute does not give the Governor any such power under the circumstances present here.

Therefore, the Governor's claim to have "mooted" Count One is meritless.

The best reading of the "re-designation" clause of § 16-50-20(b) is that the power

of "re-designation" of "terms" concerns only the initial staggering of terms for then-

existing Trustees following the 1986 amendment to the statute. It does not confer a more

general power to "re-designate" terms at other times and for other reasons. As we will

show, our interpretation in this respect is most consistent with (1) the language of § 16-

50-20 itself, (2) the history of the statute, (3) the remaining provisions of the statutory

---

[2] *See* Defendants' Brief Supporting Joint Motion to Dismiss (Doc. 4), pp. 7-8 ("This provision appears to exempt certain trustees from the scope of the age restriction contained in subsection (a).")

scheme regarding the Board; and (4) existing precedent about Gubernatorial power in regard to the Board.

The language of the statute itself suggests that "re-designation" refers only to the initial staggering of terms of then-existing Trustees in 1986.  When amending the statute in 1986, the Legislature provided that "Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed."  This provision, on its face, was designed to create an orderly and predictable degree and rate of turnover on the Board, such that a predictable and equal number of vacancies on the Board would occur every three years. Such a provision is, of course, quite common for multi-member deliberative bodies, to ensure continuity and efficiency of functioning.

The apparent reason for the "re-designation" clause ties in with this goal.  One of the plain and undisputed effects of the first clause of § 16-50-20(b) was that all Trustees sitting at the time of the 1986 amendment would continue to serve following that amendment.  The "re-designation" clause was therefore necessary in order to harmonize that provision with the staggered-terms provision of § 16-50-20(a).  While all then-sitting Trustees would continue to serve, the Governor would have the power to "re-designate" their "terms" in a manner that comported with the staggered-terms provision of § 16-50-20(a), in order to obtain the benefits of continuity, efficiency, and predictability that were the goals of the staggered-terms provision.

8

By contrast, reading the "re-designation" clause more broadly, as Defendants would, will interfere irreparably with the Legislature's goal in the staggered-terms provision of § 16-50-20(a). And so, such a reading should be rejected. *See*, *e.g.*, *Proctor v. Riley*, 903 So.2d 786, 789-90 (Ala. 2004) (noting that this statutory scheme should be "consider[ed] … as a whole and ... construe[d] …reasonably so as to harmonize [its] provisions," and should be "read *in pari materia* in order to 'produce a harmonious whole.'") That is, if the Governor were construed to have the power to "re-designate" Plaintiff Reed's current term to make it last less than 12 years, then the Governor would thereby have been given a power that is in fatal conflict with the staggered-terms provision of § 16-50-20(a). On Defendants' reading of the "re-designation" provision, the Board will no longer enjoy the stability and predictability of having an equal number of terms end every three years. Instead, on Defendants' view, a trustee appointed to the seat now held by Dr. Reed would hold office for twelve years from the September 30 following Dr. Reed's seventieth birthday. And if there were more trustees ousted by reason of the age limitation in the future, the staggering of terms would soon become practically random, based entirely on the happenstance of the ages of various past Trustees. This is clearly not what the Legislature provided for, in the staggered-terms provision. And this shows that the power of "re-designation" should not be read in Defendants' preferred way, as that would conflict with other language of § 16-50-20 itself.

Our interpretation in this regard is supported by other aspects of the statutory

9

scheme, and specifically § 16-50-25.  Section 16-50-25 provides that when a sitting

Trustee leaves office during the statutorily-set length of his or her term, the person

appointed to fill the resulting vacancy "shall hold office during the unexpired term."  This

provision, too, fits in with the staggered-term provision of § 16-50-20(a) that we have

been discussing.  It emphasizes and effectuates the Legislature's intention that "terms,"

after the initial staggering following the 1986 amendment, would last twelve years.  Even

when a Trustee becomes ineligible because of age (or other reason such as death or

resignation), the starting and ending dates of the "term" remain the same, in order to

continue the staggered-terms model in full effect.  In other words, this shows the

legislative intention that "terms" have a length that is independent of the particular

circumstances of the individual who happens to hold office during such term.  The "term"

of a seat on the Board after 1986 is, and remains, 12 years.  The Legislature did not grant

the Governor the power to make some terms shorter than that, after the initial staggering

of terms following the 1986 amendment.

The history of the statute also demonstrates that the power to "designate" terms

has to do only with the staggering of terms in orderly fashion, and not with a more

general Gubernatorial power that would work against that orderly staggering of terms.

That is, in the original 1975 version of the statute, and again in the 1983 version of the

statute (both attached hereto as an Exhibit), the word "designate" was used in § 16-50-20

only in reference to the Gubernatorial power of staggering initial terms.  As stated in the

1975 version, "Of the first members appointed to the Board, one-third shall be designated

by the Governor to serve until January 31, 1978, one-third until January 31, 1980, and one-third to serve until January 31, 1982."  The provision in the 1983 version was the same.  This history demonstrates what the Legislature had traditionally meant by "designation" of terms in regard to the Board of Trustees of Alabama State University.  It is reasonable to infer that this was what the Legislature again had in mind, in using the similar term "re-designate" in 1986: only the power to set initial terms, in furtherance of the staggered-terms goal of the statutory scheme.

Our limited reading of the "re-designation" clause, finally, is most consistent with existing Alabama Supreme Court precedent on gubernatorial power with respect to Trustees of Alabama State University.  Among the Supreme Court decisions regarding this Board of Trustees is *Tucker v. Watkins*, 737 So.2d 443 (Ala. 1999).  That case involved a gubernatorial claim of power to "rescind" a previous appointment to this Board – a claim quite similar to the present Governor's claim of power to reduce the term of office of a sitting Trustee.  The Supreme Court resoundingly rejected that gubernatorial claim to power, in *Tucker*.  The Court quoted and relied upon an Alaska decision holding that "Courts have uniformly held that an executive's power to reconsider an appointment ends when the executive takes the last act required to complete the appointment process." *Id.* at 445.  The Court further quoted and relied upon the principle that "The rule established by cases considering the issue is that the last act of the executive is the act which places the appointee in office." *Id.*  That rule should similarly guide the result in this case.  Once Plaintiff Reed was placed in office by gubernatorial appointment, a

11

subsequent Governor has no power to interfere with his service. [3]

For these reasons, the Court should reject Defendants' reading of the "re-designation" clause of § 16-50-20(b).  Therefore, the Governor's attempt to "moot" Count One was unavailing, since the Governor has no power to "re-designate" Plaintiff Reed's term at this juncture.  And, since Defendants have not disputed our reading of the exemption clause of § 16-50-20(b), this Court should hold that Plaintiff Reed is exempt from the statute's age limitation, if the Court does not remand Count One to state court.

**3.**     **The age limitation in the statute is unconstitutional.  Judgment should be entered in favor of Plaintiff Reed (and any other Plaintiff whose claims are not remanded) on Count Two.**

Finally, Defendants' argument on Count Two is purely a "merits" argument: Defendants contend that the age limitation in the statute is constitutional.  But here again, Defendants are wrong.  The age limitation violates the Equal Protection command of the Fourteenth Amendment.

The age limitation in § 16-50-20 violates the Equal Protection command in two related but distinguishable ways.  First, there is no rational basis for prohibiting persons over the age of seventy from serving on Alabama State University's Board of Trustees.

---

[3]  The proper way to remove a Trustee is not through unilateral Gubernatorial action; it is instead through the legal mechanism of a writ of *quo warranto*, as in *Tucker* itself.  So, *if* Plaintiff Reed was thought to be subject to the age limitation, a *quo warranto* action would be the way to seek his removal.  But, as we have noted above, Defendants have correctly accepted that he is excepted from the age limitation by the first clause of § 16-50-20(a), so this possibility of a *quo warranto* action is purely hypothetical and counter-factual in this case.

Second, there is no rational basis for imposing such a rule *only* on Trustees of Alabama State University and not on the Trustees of any other public university in the State.

(A)  There is no rational basis for decreeing that persons over the age of seventy may not serve on Alabama State University's Board of Trustees.  The statute simply favors the younger over the older in blatant fashion, without any justification, and thereby violates the Equal Protection command.

Defendants read Supreme Court precedent as holding in blanket fashion that a State may constitutionally impose whatever age limit it prefers on any position or office. But that is not what Supreme Court precedent holds.  Instead, the Supreme Court has inquired into the specific duties for the particular job in question, and has required a rational basis for the chosen age limitation as to the job in question.  If the inevitable march of age was *always* a constitutionally-acceptable basis for a state classification, then the Supreme Court's decisions on the topic would be simple one-liners.  But that is not the way the Supreme Court has dealt with the question, in the cases that Defendants cite. *See Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395 (1991); *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939 (1979); *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307,  96 S.Ct. 2562 (1976) (all discussing, at some length, the particular facts as to the job at issue).

And, once it comes to the specific duties of a Trustee of Alabama State University, there is nothing in the record in this case to demonstrate that there is any reason

whatsoever to believe that the age-limitation is rational.[4]  This case is very different,

therefore, from the cases upon which the Defendants rely.

Consider and contrast, for instance, *Gregory v. Ashcroft*.  Before accepting that a

mandatory retirement age for state court judges was rational and therefore constitutionally

acceptable, the Supreme Court went through a substantial analysis.  It noted the

"demanding" nature of the job of being a state court judge.  *Gregory*, 501 U.S. at 472,

111 S.Ct. at 2407.  Then, importantly, the Court inquired as to whether other mechanisms

were sufficient to remove judges who weren't up to the job.  *Id.* (discussing whether

mechanisms such as impeachment, voluntary retirement, and elections were sufficient to

remove judges who no longer had the ability to serve capably).  The Supreme Court

upheld the rationality of the age limitation only after concluding that "[t]he people of

Missouri rationally could conclude that the threat of deterioration at age 70 is sufficiently

great, and the alternatives for removal sufficiently inadequate, that they will require all

judges to step aside at age 70."  *Id.*, 501 U.S. at 473, 111 S.Ct. at 2408.

This case is very different from *Gregory*, in ways that show the irrationality of the

age limitation.  First, the part-time role of being a Trustee is much less "demanding" than

being a state court judge;[5] there is nothing about it that would naturally tax the abilities of

---

[4] The irrationality of the age-limitation is further affirmatively shown by the fact that
Alabama has not chosen to impose such a limitation on the Trustees of any other
university in the State.  If it were rational to impose such a limitation, the State would
have done so in other universities as well.  But the State has not done so.

[5]  It is noteworthy in this regard that the age limitation in § 16-50-20(a) is even more
stringent than the age limitation that applies to Alabama's Supreme Court Justices.  That
is, a Justice of the Alabama Supreme Court is allowed to serve for several years past the

people over 70.  (Particularly at this point in the litigation, on motion to dismiss, the

Court cannot assume that the Legislature had a basis for believing the duties of the

position to be so "demanding" that they would justify an age limitation).  And second,

there is no reason to believe that "the alternatives for removal [of those who should be

removed are] sufficiently inadequate" to justify an across-the-board age limitation.  *Id.*

After all, one will not even reach age 70 as Trustee at Alabama State University unless

the Governor has specifically decided, within the few years preceding that, that the

particular appointee is up to the task.  If the Governor has any doubts about whether the

person will be up to the task for a twelve-year term, then the Governor can decide to

appoint someone else instead.

This leaves, as conceivable justification for the age limitation, only the

hypothetical assertion that some Trustee <u>might</u> quickly and unforeseeably become

incompetent to serve at some time during his or her term following a Gubernatorial

appointment.  But the possibility of a rapid and unforeseeable decline after Gubernatorial

appointment – and the possibility, beyond that, that a person suffering such a decline

would refuse to resign from the Board – is a slim and purely speculative possibility.  It is

not a rational justification for classifying the populace into one favored class who may

serve, and another disfavored class who may not.  It does not rise anywhere near the level

of justification that the Supreme Court has relied upon, in cases such as *Gregory*, to

---

age of seventy, but is merely constrained for running for a new term after reaching the
age of seventy.  *See* Ala. Const., Amd. 328 § 6.16.

uphold age limitations. [6]

(B)  Moreover, there is no rational basis for imposing an age limit on Trustees of Alabama State University while not imposing such a limit on Trustees of any other public university in the State.

Crucially, Defendants do not claim that there is any rational basis for treating Trustees of Alabama State different from Trustees of other universities.  It is, in this regard, particularly striking that a Trustee of Alabama State University who became ineligible as a result of turning 70 could, on the very day after his or her service at Alabama State ended, be appointed as a Trustee of any of the State's other four-year universities.  And there is absolutely no basis upon which anyone could claim to have a reasoned belief that service as a Trustee of Alabama State University is more demanding than service on the board of every other public university in the State, such that it would be reasonable to impose an age limitation only at this one institution alone.  So, again, this difference in treatment is purely irrational, and Defendants do not claim otherwise.  Instead, Defendants' only response is the difference in treatment is "irrelevant" from a

---

[6]  Defendants also suggest that the age limit is rationally related to promoting "fluidity" – i.e., turnover – on the Board of Trustees.  (Brief in support of motion to dismiss, p. 14). But there is likewise no rational connection here.  We are, after all, talking about people who are appointed for limited terms, and who (except for those who were serving as of April 30, 1986) can only be appointed for two such terms.  So, a great deal of turnover is built into the statute already, without regard to the age limitation; adding an age limitation, on top of this, adds extraordinarily little to the supposed goal of "fluidity." Dividing the populace into the favored younger group and the disfavored over-70 group was, therefore, not a rational way of pursuing a supposed goal of additional turnover.

constitutional perspective.  (Brief in support of motion to dismiss, p. 14).  Defendants

claim (*id.*, p. 15) that the difference in treatment does not implicate the constitution at all.

Defendants' argument in this regard is directly contrary to the Supreme Court's

analysis in the very cases upon which Defendants rely.  That is, in *Gregory*, *Bradley*, and

*Murgia*, the Court upheld mandatory-retirement provisions only after concluding *not only*

that there was a rational basis in terms of the requirements of the particular job in

question, *but also* that there was a rational basis for imposing an age limit on that job

while imposing no such requirement on other comparable jobs.  That is, the Supreme

Court undertook the precise sort of analysis that we are asking this Court to undertake,

and exactly the sort of analysis that the Defendants wrongly claim to be "irrelevant."  *See*

*Gregory v. Ashcroft*, 501 U.S. at 473, 111 S.Ct. at 2407 ("This is also a rational

explanation for the fact that state judges are subject to a mandatory retirement provision,

while other state officials – whose performance is subject to greater public scrutiny, and

who are subject to more standard elections – are not.  Judges' general lack of

accountability explains also the distinction between judges and other state employees, in

whom a deterioration in performance is more readily discernible and who are more easily

removed."); *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939 (1979) (discussing at length why

State Department Foreign Services Officers' jobs are different from other Civil Service

Jobs, in a way that justifies having a mandatory retirement age for the former but not the

latter); *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 315 n. 8, 96 S.Ct. 2562, 2568 n.

8 (1976) (holding that it was acceptable to impose a mandatory retirement age on state

17

police officers but not on other law enforcement officers, where "[I]t has never been seriously disputed ... that the work of uniformed state officers is more demanding than that of other state, or even municipal, law enforcement personnel. It is this difference in work demands that underlies the job classification.")

As the Supreme Court noted in *Gregory*, the plaintiffs in that case were making the same two sorts of Equal Protection arguments that we are making here:

> Petitioners contend that there is no rational basis for the decision of the people of Missouri to preclude those aged 70 and over from serving as their judges. They claim that the mandatory retirement provision makes two irrational distinctions: between judges who have reached age 70 and younger judges, and between judges 70 and over and other state employees of the same age who are not subject to mandatory retirement."

*Gregory*, 501 U.S. at 470, 111 S.Ct. at 2406. On Defendants' view of the law, the Supreme Court should have deemed the second theory "irrelevant," and should have declared that treatment of "other state employees of the same age who are not subject to mandatory retirement" was not legally material to the Equal Protection analysis. But that is not what the Supreme Court did. Instead, as we have quoted in the preceding paragraph, the Supreme Court accepted the theory as a potentially viable one, but found that on the particular facts of the case the disparity in treatment was rational and therefore constitutionally permissible.

So, in this portion of our claim we are asking the very same question that the Supreme Court has asked: is there a rational basis for treating Trustees at Alabama State University different from other people in similar positions? The answer, as Defendants

have effectively admitted, is that there is no such rational basis.  This is, in itself,

sufficient justification to hold that the statute violates the Equal Protection command,

under *Gregory*, *Bradley*, and *Murgia*.

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss should be denied.

The claims of Plaintiffs Figures and Clark should be remanded to state court.  Plaintiff

Reed's Count One should also be remanded to state court.  In the alternative judgment

should be entered in Plaintiff Reed's favor on that count, declaring the purported

"redesignation" of his term legally ineffective and declaring that the age limitation of §

16-50-20 is inapplicable to him.  And the Court should enter judgment in favor of

Plaintiff Reed (and any other Plaintiff whose claims are not remanded) on Count Two,

declaring also and in the alternative that the age limitation of Ala. Code § 16-50-20 is

unconstitutional.

Respectfully submitted,

ATTORNEYS FOR PLAINTIFFS

s/J. Cecil Gardner
J. Cecil Gardner (GAR039)
M. Vance McCrary (MCC134)
THE GARDNER FIRM, P. C.
P. O. Box 3103
Mobile, Alabama 36602
Telephone: (251) 433-8100
Fax: (251) 433-8181
E-mail: cgardner@gmlegal.com
        mvancemccrary@gmlegal.com

John B. Crawley, Esq.
8115 Amber Street
Montgomery, AL 36117
Telephone (334) 277-9045 or (334) 546-9045
CRA006
E-mail: jbcsjc@charter.net

James H. Anderson, Esq.
Beers, Anderson, Jackson, Patty,
Van Heese & Fawal, P. C.
P. O. Box 1988
Montgomery, AL 36102-1988
(334) 834-5311
Fax: (334) 834-5362
E-mail: janderson@beersanderson.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of April, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:   **Scott Lee Rouse, Esq. , Kenneth Lamar Thomas, Esq., Kenneth Dallon Wallis, II. Esq. Christopher Kyle Whitehead, Esq.**

s/J. Cecil Gardner_____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Northern Division

| | |
|---|---|
| WILLIAM CLARK, et al., )<br><br>    Plaintiffs, )<br><br>vs. )<br><br>GOVERNOR BOB RILEY, et al., )<br><br>    Defendants. ) | NO. 2:07-CV-190-WKW |

## DECLARATION OF DR. JOE L. REED
## PURSUANT TO 28 U.S.C. § 1746

I am Dr. Joe L. Reed. I have personal knowledge of the facts stated herein. This is my first declaration in *Clark v. Riley*, No. 2:07-CV-190-WKW (M.D. Ala.).

I have been a member of the Board of Trustees of Alabama State University since before April 30, 1986. Following the amendment of the statute relating to the Board in 1986, my term was designated by the Governor as a twelve-year term pursuant to the power granted in Ala. Code § 16-50-20(b). Then, I was reappointed to the Board for a further twelve-year term beginning February 1, 1999. There was no gap between the term beginning in 1986 and the term beginning in 1999, since under § 16-50-20(a) a Trustee continues to serve until his or her successor is appointed.

I declare under penalty of perjury that the foregoing is true and correct.

This 3 day of APRiL , 2007.

_____
JOE L. REED