IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM CLARK, THOMAS FIGURES and DR. JOE L. REED, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION NO. 2:07-CV-190-WKW |
| GOVERNOR BOB RILEY, in his official capacity, and ELTON DEAN, in his official capacity as Chair of the Board of Trustees of Alabama State University, ) ) ) ) ) ) | Removed from the Circuit Court of Montgomery County, Alabama Case No. 03-CV-2007-900076.00 |
| Defendants. ) | |

_____

**DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFFS'
MOTION TO REMAND IN PART AND FOR SUMMARY JUDGMENT IN PART**
_____

COME NOW Defendants Governor Bob Riley and Elton Dean (collectively "the Defendants"), by and through their respective counsel of record, and submit the following brief in response to the Plaintiffs' Motion to Remand in Part and for Summary Judgment in Part (Docs. 7-8):

ARGUMENT

I. **THE DEFENDANTS AGREE THAT THE CLAIMS OF PLAINTIFFS WILLIAM CLARK AND THOMAS FIGURES SHOULD BE REMANDED TO STATE COURT.**

In their brief, Plaintiffs Clark and Figures have basically conceded that they lack Article III standing[1], and they ask that their claims be remanded to state court on that

---

[1] Plaintiff Figures does attempt to argue that his section 1983 claim is sufficiently ripe for this Court's review. See Doc. 8, pp. 4-5. His argument, however, does little to counter the Defendants' position, which was presented in their initial brief, that Plaintiff Figures's claims are simply too remote in time to be justiciable at this juncture. See Doc. 4, pp. 4-7. In any event, Plaintiff Figures has effectively waived the ripeness issue by inviting this Court to remand his claims.

ground.  See Doc. 8, pp. 3-4.  A review of the relevant authorities leads the Defendants to agree that, if it is determined that these Plaintiffs lack Article III standing, then their claims should be remanded rather than be dismissed by this Court.  To be sure, the Defendants will again challenge the justiciability of these Plaintiffs' claims in state court.  Given the tremendous similarity between state and federal jurisprudence regarding standing and ripeness, these Plaintiffs' efforts to prove the justiciability of their claims in state court will assuredly be in vain.  Yet, that decision is properly left for the state court to decide.  For this Court's purposes, it is sufficient that the Defendants agree to remanding the claims of Plaintiffs Clark and Figures, with only one caveat.  That is, the Defendants can concede this point only if a remand is predicated on these Plaintiffs' lacking Article III standing.  If that is the basis of a remand, the Defendants register no objection.

## II.  THE GOVERNOR HAS THE AUTHORITY TO RE-DESIGNATE THE PERIOD OF PLAINTIFF JOE REED'S TERM AS A MEMBER OF THE ALABAMA STATE UNIVERSITY BOARD OF TRUSTEES.

The Defendants also agree that, because Plaintiff Reed was serving on the Alabama State University Board of Trustees on April 30, 1986, the first phrase of section 16-50-20(b) of the Code of Alabama *generally* exempts him from the scope of the age restriction set forth in subsection (a) of that same statute.  Thus, as the Defendants posited in their initial brief, there is no need for this Court to construe the first phrase of subsection (b).  See Doc. 4, pp. 7-10.  In their own brief, however, the Plaintiffs have argued a related issue that will apparently require a judicial construction of the latter part of subsection (b).  See Doc. 8, pp. 5-12.  That issue concerns the extent of the Governor's statutory authority to re-designate the length of Plaintiff Reed's term as an Alabama State University trustee, notwithstanding the general exemption bestowed by

the first phrase of subsection (b).[2]  Though the Plaintiffs did not seek a declaratory judgment on this specific issue in their complaint, it has nonetheless become a threshold issue that must be dealt with as a prelude to adjudicating the Plaintiffs' challenge to the constitutionality of the age restriction set forth in section 16-50-20(a).[3]  Thus, the Governor's position regarding the latter half of subsection (b) is presented here.

Plaintiff Reed's interpretation of section 16-50-20(b) is as inconsistent as it is self-serving.  He is quick to claim the general exemption afforded by the initial phrase of subsection (b), as it preserves Plaintiff Reed's long-held seat on the Alabama State University Board of Trustees.  But even though he broadly interprets the exemption for his own benefit, Plaintiff Reed simultaneously seeks to so narrowly construe the Governor's power under that same statutory subsection that it would render that authority altogether meaningless.  The apparent duplicity in his legal analysis belies the true impetus for this lawsuit — that it is just a stratagem for Plaintiff Reed to extend his tenure on the Alabama State University Board of Trustees, regardless of what the law unambiguously provides.

---

[2] The first phrase of this subsection provides that "[n]o trustee who is serving on the said board on April 30, 1986, shall lose his or her seat because of this section. . ." ALA. CODE § 16-50-20(b) (2001). The second phrase of this subsection is the obvious counterpoint to the first. It completes subsection (b) by stating that "the Governor may re-designate the period of the term of these members so as to conform to the provisions of subsection (a)." ALA. CODE § 16-50-20(b) (2001). Subsection (a) is indisputably the source of the age restriction now challenged by Plaintiff Reed, as it plainly provides that "[n]o member shall serve past September 30 following his seventieth birthday." ALA. CODE § 16-50-20(a) (2001).

[3] If it were to be determined that Plaintiff Reed is correct in his assertion that the Governor holds no authority to re-designate the length of his term under section 16-50-20(b), there could be no way to enforce the subsection (a) age restriction against Plaintiff Reed. Consequently, it is necessary to first discern the scope of the Governor's statutory authority to determine whether this Court should even reach the broader constitutional issues raised by Plaintiff Reed.  Moreover, the interrelatedness of these statutory and constitutional issues demonstrates why their adjudication cannot be bifurcated, as the Plaintiffs request. See Doc. 8, p 6.  Therefore, this Court should neither remand nor decline to exercise its supplemental jurisdiction over Plaintiff Reed's state-law claim for declaratory relief.

According to Plaintiff Reed, the "best reading" of the latter part of subsection (b) is that the Governor's power to re-designate the length of trustees' terms applies only to the staggered-terms provisions of subsection (a), and not to the age restriction that is also found there. See Doc. 8, p. 7. Though Plaintiff Reed embarks on a windy explanation of this interpretive theory, see Doc. 8, pp. 7-12, he is ultimately only attempting to obfuscate the plain language of subsection (b). By venerating the staggered-terms provisions of the statute as he does, Plaintiff Reed would unjustifiably restrict — and even outright nullify — the Governor's statutory authority to enforce the age restriction set forth in subsection (a). In sum, Plaintiff Reed's "best reading" of the statute patently contravenes the plain language of subsection (b) and, therefore, accepted canons of statutory construction militate against the adoption of his interpretation of the law.

The cardinal rule of statutory interpretation is neither disputable nor avoidable in this case. As the Alabama Supreme Court has long held:

> "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."

Austin v. Alabama Check Cashers Assoc., 936 So. 2d 1014, 1026 (Ala. 2005) (quoting Ex parte Master Boat Builders, Inc., 779 So. 2d 192, 196 (Ala. 2000), and IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So. 2d 344, 346 (Ala. 1992)). Accord American Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982); U.S. v. Fisher, 289 F.3d 1329, 1337-38 (11th Cir. 2002).

4

The Alabama Supreme Court has also held that "only when the language of the statute is ambiguous or uncertain will [it] resort to considerations of fairness or policy to ascertain the legislature's intent." Advertiser Co. v. Hobbie, 474 So. 2d 93, 95 (Ala. 1985) (citing Morgan Co. Bd. of Educ. v. Alabama Public School and College Auth., 362 So. 2d 850 (Ala. 1978)). This unwillingness to deviate from a statute's unambiguous text for policy reasons has likewise been expressed by the federal courts. As the Eleventh Circuit has held, "legislative history and [the] general purpose of the Act do not overcome its plain statutory language . . . [n]or can a general appeal to statutory purpose overcome the specific language of the Act, because the text of a statute is the most persuasive evidence of [legislative] intent." National Coal Ass'n v. Chater, 81 F.3d 1077, 1082 (11th Cir. 1996) (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)).

In this case, the language of section 16-50-20(b) is clear and unambiguous. Though the first phrase of this subsection generally grants an exemption to trustees who were serving on April 30, 1986, the latter phrase empowers the Governor to re-designate the length of those trustees' terms so as to conform them to the requirements of subsection (a) of the statute. By Plaintiff Reed's reckoning, however, the Governor's authority only extends to maintaining the staggered-terms provisions of subsection (a), and to nothing else. Yet, the clear language of subsection (b) does not limit the Governor's power in this way. Quite plainly, it says that "the Governor may re-designate the period of the term of these members *so as to conform to the provisions of subsection (a)*." ALA. CODE § 16-50-20(b) (emphasis added). Notably, the statute does not restrict the Governor's authority to conform trustees' terms only to certain aspects of subsection (a). Because the Legislature has expressed no intent to do something less,

5

the Governor's power must be understood to extend to each of "the provisions of subsection (a)," which includes the age restriction challenged by Plaintiff Reed. Had the Legislature only intended to give the Governor authority to maintain the staggered-terms provisions of subsection (a), it could have easily expressed that intent by inserting the phrase "staggered terms" ahead of the word "provisions" in subsection (b). While this is certainly the way Plaintiff Reed wishes to read the statute, it is not at all what the law actually provides. This Court should reject his "best reading" of section 16-50-20(b), as it attempts to inject limitations to the Governor's authority that are not expressed in the plain language of the statute itself.

Rationally, Plaintiff Reed should acknowledge that the Governor's authority to re-designate the lengths of trustees' terms extends to enforcing the age restriction set forth in subsection (a). But, while he eagerly accepts the notion that the first phrase of subsection (b) exempts him from the age restriction, he vehemently denies that the Governor's authority under that same subsection is of the same scope as the exemption. In essence, Plaintiff Reed seems to want his cake and eat it, too. If it were true that the Governor's authority under subsection (b) extends only to enforcing the staggered-terms provisions of the statute, as Plaintiff Reed asserts, then it would logically follow that the exemption itself is limited in the same way. There is nothing in subsection (b) that suggests these two phrases (which are only a semicolon apart in the syntax of the statute) have different scopes of operation. Yet, as inconsistent as it is, that is the position Plaintiff Reed takes.

Because of the inconsistency in Plaintiff Reed's argument, its adoption by this Court would produce an absurd result, by ascribing different scopes of application to two phrases found in the same sentence of a statutory provision. The law will not

permit such a reading of a statute, as it has been held that a construction of a statute that produces absurd or unreasonable consequences is to be avoided. See Ex parte Watley, 708 So. 2d 890, 893 (Ala. 1997). Thus, rather than adopt Plaintiff Reed's tortured and inconsistent reading of section 16-50-20(b), this Court should instead construe the scopes of both parts of subsection (b) so that they are consistent with one another. See Tucker v. Molden, 761 So. 2d 996, 999 (Ala. 2000) ("when an expression in a statutory scheme allows two interpretations, one consistent with the remainder of the statutory scheme and the other inconsistent with the remainder of the statutory scheme, the courts will adopt the consistent interpretation and will reject the inconsistent one"). This, as has already been explained, would also comport with the plain language of the statute.

To the extent the Governor's interpretation of section 16-50-20(b) might hamper the staggered-terms provisions of subsection (a), that is an insufficient reason for departing from the plain language of the statute. As argued above, policy arguments and general appeals to a statute's broader purpose have no relevance where the statute's language is clear. Hobbie, 474 So. 2d at 95; Chater, 81 F.3d at 1082. In addition, nothing in section 16-50-20 supports Plaintiff Reed's apparent premise that maintaining the staggered terms of Alabama State University's trustees is of such paramount importance that it would justify nullifying the Governor's authority under the statute. This is especially significant in that the Governor's power under subsection (b) is the only safeguard by which an otherwise exempt trustee could be subjected to the statute's age restriction. See Ex parte E.J.M., 829 So. 2d 105, 109 (Ala. 2001) ("a conflict in statutory provisions should not be resolved in a way that nullifies safeguards"). Moreover, to the extent the Governor's subsection (b) authority might be inconsistent

7

with the staggered-terms provisions of subsection (a), the Governor's authority must trump, as it is set forth at the terminus of the statute and is consequently the last expression of legislative intent. Swint v. State Alcoholic Beverage Control Bd., 628 So. 2d 769, 772 (Ala. Civ. App. 1993) (quoting Alabama State Bd. of Health ex rel. Baxley v. Chambers County, 335 So. 2d 653, 655 (Ala. 1976), to observe that "[a] basic rule of statutory construction is that '[w]here two sections or provisions of an act are conflicting, the last in order of arrangement controls'").

Finally, Plaintiff Reed's argument is not supported by the decision in Tucker v. Watkins, 737 So. 2d 443 (Ala. 1999). In citing that case, Plaintiff Reed seems to suggest that, despite the plain language of section 16-50-20(b), the Governor can never affect an Alabama State University trustee's term of office once an appointment has been made. See Doc. 8, pp. 11-12. But this broad proposition has no credence, at least not where the Governor's section 16-50-20(b) re-designation authority is implicated. Significantly, the Tucker opinion did not address nor even mention the re-designation clause of section 16-50-20(b). For that reason alone, Tucker is altogether inapposite to the issues now before the Court.

The circumstances of Tucker also readily show that it is distinguishable from the present case. The controversy in Tucker stemmed from an attempt to rescind outright the appointments of two Alabama State University trustees. The decision to rescind these appointments seems to have been motivated primarily by political considerations, inasmuch as Tucker suggests no substantive reason for removing the trustees from their positions. That, however, is different from what the Governor has done regarding Plaintiff Reed's term. Rather than capriciously rescinding Plaintiff Reed's term, the Governor has only altered its length so that it conforms with the age restriction set forth

in section 16-50-20(a).  This is a critical distinction vis-à-vis <u>Tucker</u>, because section 16-50-20(b) specifically empowers the Governor to re-designate the lengths of trustees' terms to conform those terms to the requirements of section 16-50-20(a), including the age restriction found there.  Again, such an explicit grant of gubernatorial authority was not in play in <u>Tucker</u>.  Thus, whatever issues were decided in <u>Tucker</u>, it did not dispose of the issues now confronting this Court.

Ultimately, much in this litigation depends on the construction given to the Governor's re-designation authority under section 16-50-20(b).  As argued herein, the plain language of the statute empowers the Governor to alter the lengths of trustees' terms so that such terms comply with all the strictures found in section 16-50-20(a).  Yet, Plaintiff Reed contends otherwise, attempting to artificially delimit the Governor's authority so that Plaintiff Reed can be immune from the requirements of the law and serve as an Alabama State University trustee well past his seventieth birthday.  Though this is an issue of state law, its nexus with Plaintiff Reed's federal constitutional claim necessitates this Court's construction and interpretation of section 16-50-20(b).  As was explained in the Defendants' initial brief, the Governor's recent re-designation of the length of Plaintiff Reed's term has effectively mooted his claim for declaratory relief made in the first count of the Complaint.  <u>See</u> Doc. 4, pp. 7-10.  Additionally, by denying Plaintiff Reed the general exemption bestowed in the first phrase of subsection (b), the Governor's action has also ripened Plaintiff Reed's federal equal protection claim, by squarely subjecting him to the age restriction he challenges in the second count of the Complaint.  Thus, the subject-matter jurisdiction of this Court, in one way or another, hinges on the efficacy of the Governor's actions taken under the auspices of the second phrase of section 16-50-20(b).  For this reason, this Court should decide this threshold

issue rather than remand it or decline to exercise supplemental jurisdiction. Moreover, in construing the scope of the Governor's authority under subsection (b), the Defendants ask that this Court reject Plaintiff Reed's interpretation, as it is both inconsistent and contravenes the plain language of the statute.

### III. SECTION 16-50-20(a) OF THE CODE OF ALABAMA DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

In their brief, the Plaintiffs contend that the trustee age restriction set forth in section 16-50-20(a) violates the Equal Protection Clause of the Fourteenth Amendment because it allegedly discriminates on the basis of age without any rational basis for doing so. The Plaintiffs claim that the statute does so in "two related but distinguishable ways." Doc. 8, p. 12. The Plaintiffs first contend that there is no rational basis for prohibiting persons over the age of seventy from serving on the Board. See Doc. 8, pp. 13-16. In their second contention, the Plaintiffs wrongly assert that the mandatory retirement age of 70 is imposed only on trustees of Alabama State University and not on those of other public universities. See Doc. 8, pp. 16-19. The Defendants will address the arguments individually.

#### A. There is a rational basis for prohibiting persons over the age of seventy from serving on the Board.

The Plaintiffs have conceded that the age classification contained in section 16-50-20(a) is subject only to rational-basis scrutiny. See Gregory v. Ashcroft, 501 U.S. 452, 470 (1991) ("This Court has said repeatedly that age is not a suspect classification under the Equal Protection Clause"). In applying the rational-basis test, courts give great deference to the actions of state legislatures. Panama City Medical Diagnostic, Ltd. V. Williams, 13 F.3d 1541, 1545 (11th. Cir. 2004) (stating that "[courts] must give

10

great deference to the [legislature] because lawmakers are presumed to have acted constitutionally 'despite the fact that, in practice, their laws result in some inequality'") (quoting McGowan v. Maryland, 366 U.S. 420, 425-26 (1961)).  This deference is a result of comity between the branches of government.  As the United States Supreme Court held in F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993):

> [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.  In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

Id. at 313 (citations omitted).  Furthermore, "[r]estraints on judicial review have 'added force' in cases, such as the one at bar, in which the legislature must engage in line-drawing."  Panama City, 13 F.3d at 1546 (quoting Beach Communications, 508 U.S. at 315).

Due to the deference afforded under rational-basis review, when statutes affect neither suspect classifications nor fundamental rights, courts never require legislatures to articulate specific reasons for enacting particular statutes.  See Williams v. Pryor, 240 F.3d 944, 948 (11th Cir. 2001) (quoting Beach Communications, 508 U.S. at 313-15).  In this context, the State bears no evidentiary burden in defending a challenged statute.  Thus, when a law is subjected to rational-basis scrutiny, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  Id.  Moreover, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends."  Heller v. Doe, 509 U.S. 312, 321 (1993).  In

contrast, "those attacking the rationality of the [statute] have the burden to *negative every conceivable basis which might support it.*" Williams, 240 F.3d at 948 (quoting Beach Communications) (emphasis added in Williams). Almost universally, this burden proves to be insurmountable, because "[a]lmost every statute subject to the very deferential rational basis scrutiny standard is found to be constitutional." Id. (citing Panama City, 13 F.3d at 1546-47).

In this case, the Plaintiffs argue that Gregory v. Ashcroft, 501 U.S. 452 (1991), requires this Court to perform an in-depth analysis of the particular job duties to be performed whenever an age restriction is imposed on those holding a public position. The Defendants strongly dispute that the United State Supreme Court performed any type of detailed analysis of a judge's "duties" in Gregory. In fact, to have done so would have contradicted the principle that legislative choices are not subject to courtroom fact-finding under rational-basis review. See Beach Communications, 508 U.S. at 315. In any event, the Gregory decision specifically noted the public's general lack of knowledge regarding judge's duties, stating that most citizens "never observe state judges in action, nor read judicial opinions." 501 U.S. at 472.

Instead of deeply analyzing the various responsibilities of judges in Gregory, the Supreme Court simply focused on rational reasons why the state may have wanted to impose mandatory retirement on judges at the age of seventy. Id. at 472-473. In doing so, the Gregory court noted that the challenged age limitation drew a line "to avoid the tedious and often perplexing decisions to determine which judges after a certain age are physically and mentally qualified, and those who are not." Id. at 471. The same can be said for the mandatory retirement of Alabama State University trustees at the age of 70. The Gregory court also noted that "mandatory retirement increases the opportunity for

qualified persons . . . to share in the judiciary and permits an orderly attrition through retirement." Id. at 471.  Again, the same can be said for the mandatory retirement of trustees at the age of 70.  And finally, the Gregory court also noted that the judges in question served an extensive term of twelve years, which made them less dependent on the will of the public.  Id. at 472.  Here, Plaintiff Reed is also serving a twelve-year term, placing him exactly on par with the judges in Gregory.

Ultimately, and most importantly, the Gregory court held that the people could rationally conclude that "the threat of deterioration at age 70 is sufficiently great, and the alternatives for removal sufficiently inadequate, that they will require all judges to step aside at age 70 [and that] [t]his classification does not violate the Equal Protection Clause." Id. at 473.  Likewise, the threat of deterioration at age 70 is sufficiently great in this instance as well, and there are also inadequate alternatives for removal of Alabama State University trustees.  In fact, the Plaintiffs do not even cite alternatives for the removing of trustees before the expiration of their full terms.

The Plaintiffs attempt to argue that the threat of deterioration that comes with advanced age is not a factor because the duties and responsibilities of an Alabama State University trustee are simply not demanding.  This is preposterous.  It is not a secret to even the most casual observer that service on the Board of Trustees for Alabama State University is likely the most demanding of any public university in the State of Alabama.  The overwhelming history of litigation involving the Board of Trustees is itself mind-boggling.  See Proctor v. Riley, 903 So. 2d 786 (Ala. 2004); Dickerson v. ASU, 852 So. 2d 704 (Ala. 2002); Byrd v. Lamar, 846 So. 2d 334 (Ala. 2002); Williams v. Williams, 786 So. 2d 477 (Ala. 2000); Reed v. Bd. of Trustees for ASU, 778 So. 2d 791 (Ala. 2000); Tucker v. Watkins, 737 So. 2d 443 (Ala. 1999); Watkins v. Bd. of Trustees for ASU, 703

13

So. 2d 335 (Ala. 1997); Watkins v. Bd. of Trustees for ASU, 697 So. 2d 465 (Ala. 1997); Dunn v. Bd. of Trustees for ASU, 628 So. 2d 519 (Ala. 1993); Ex Parte ASU, 571 So. 2d 301 (1990); Ex Parte ASU, 553 So. 2d 561 (Ala. 1989).[4]

Service on the Board of Trustees has been fraught with infighting. It is also no secret to even casual observers that Plaintiff Reed has been squarely in the middle of the majority of this infighting. By illustration, earlier this month Plaintiff Reed published a detailed editorial in the Montgomery Advertiser calling for the firing of University President Joe Lee. (See Exh. 1). In so doing, Plaintiff Reed accused Board of Trustees Chairman Elton Dean, a defendant in this action, of doing "an about-face" regarding a decision the Board had allegedly made regarding the retention of President Lee, and further accused Chairman Dean of "lobbying other members" of the Board to advocate a position that Plaintiff Reed obviously did not favor. In 2004, Trustee Oscar Crawley was escorted from the building by campus police after the Board of Trustees barred him from participating in a meeting. See Proctor v. Riley, 903 So. 2d 786, 787 (Ala. 2004).

It should also be noted that Alabama State University is located in the state capital of Montgomery. Service as a trustee at a large public university located squarely within the seat of government in the state can logically be expected to be complicated by constant political pressures and power struggles. The same political concerns would not be nearly as prevalent in towns such as Livingston, Montevallo, Florence, Athens, or Jacksonville, where other state universities are located. This is an additional factor that makes service on the Alabama State University Board of Trustees more demanding.

---

[4] This is merely a recitation of cases that have ultimately been decided by the Alabama Supreme Court. The number of cases that have been presented to the federal and state trial courts throughout Alabama during this same time period is too great to mention each one.

Simply put, to argue that service on the Board of Trustees at Alabama State University is anything less than extremely demanding is wholly unfounded.

    **B.    The Plaintiffs wrongly assert that the mandatory retirement age of 70 is imposed only on trustees of Alabama State University and not on the trustees of other public universities.**

The Plaintiffs asserted in their Complaint that no other public university in the State of Alabama imposes a mandatory retirement age of seventy.  See Complaint, Doc. 1, ¶ 11.  The Defendants initially accepted the Plaintiffs' representation at face value, and simply noted its irrelevance in the brief supporting their motion to dismiss.  See Doc. 4, pp. 14-15.  However, a review of the enabling laws of the boards of trustees for both the University of Alabama and Auburn University show that the Plaintiffs' assertion is blatantly incorrect.  The terms for members of the University of Alabama Board of Trustees are governed by Amendment 399 to the Alabama Constitution of 1901.  This amendment, in pertinent part, provides as follows:

> Successors to the terms of the existing and additional trustees shall hold office for a term of six years, and shall not serve more than three consecutive full six year terms on the board; *provided however that a trustee shall retire from the board and vacate office at the annual meeting of the board following that trustee's seventieth birthday.*

ALA. CONST. of 1901, amend. 399 (emphasis added).  The terms for members of the Auburn University Board of Trustees are similarly governed by Amendment 670 to the Alabama Constitution of 1901.  This amendment, in pertinent part, provides as follows:

> A trustee shall hold office for a term of seven years, and may serve no more than two full seven-year terms of office. Appointment and service for a portion of an unexpired term shall not be considered in applying the two-term limit. Each member of the board of trustees as constituted on the date this amendatory language is ratified may serve the remainder of his or her current term and shall be eligible, if otherwise qualified, to serve for no more than two additional seven-year terms. *No person shall be appointed as a member of the board of trustees after having reached 70 years of age.*

ALA. CONST. of 1901, amend. 670 (emphasis added).

An educational entity that is similar to boards of trustees for public universities is the Alabama Commission on Higher Education. The terms of commission members are governed in part by section 16-5-2 of the Code of Alabama. This statute also mandates retirement at the age of 70, stating as follows:

> No member of the commission shall be on the governing boards, be employed by or directly connected with any institution of higher education in the state, the State Department of Education or any county or other local board of education. *No member of the commission shall serve past June 30th following his seventieth birthday.*

ALA. CODE § 16-5-2(b) (2001) (emphasis added).

Essentially, the total lack of foundation in the Plaintiffs' argument is set forth in the following incorrect statement at the opening of section 3(B) on page 16 of their response:

> Crucially, Defendants do not claim that there is any rational basis for treating Trustees of Alabama State different from Trustees of other universities. It is, in this regard, particularly striking that a Trustee of Alabama State University who became ineligible as a result of turning 70 could, on the very day after his or her service at Alabama State ended, be appointed as a Trustee of any of the State's other four-year universities.

Doc. 8, p. 16. The only matter that is "particularly striking" is the utter falsity of this statement. Contrary to the Plaintiffs' assertion, an Alabama State University trustee who became ineligible to serve as a result of reaching the age of 70 also could not be appointed to the boards of trustees for either the University of Alabama or Auburn University, be it the next day after his service or any day.

Finally, the Defendants correctly argued in their joint motion to dismiss that the treatment of terms at other public universities is irrelevant, because legislatures can implement regulations incrementally and need not legislate to the furthest possible extent. Williamson v. Lee Optical, 348 U.S. 483, 489 (1955) (holding that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind" and that "[t]he legislature may select one phase of one field and apply a remedy there, neglecting the others"); see also Beach Communications, 508 U.S. at 316 (citing Williamson); Panama City, 13 F.3d at 1546 (citing both Williamson and Beach Communications). Regardless of whether statutes controlling other state universities' boards of trustees restrict the ages of the members of those boards, the decisions in Gregory, Bradley, and Murgia foreclose any argument that the Legislature could not implement such restrictions if it desired to do so. Even if the Legislature had chosen to first implement such a measure with Alabama State University, it would not render it violative of equal protection. Williamson and its progeny instruct that the Legislature did not have to act to the fullest extent to satisfy the Equal Protection Clause. Rather, it was free to regulate incrementally, first testing a trustee age restriction at Alabama State University and, if the Legislature later deemed it prudent, it could then undertake to implement similar restrictions for other boards of

trustees. Thus, the "all-or-nothing" approach that the Plaintiffs apparently advocate finds no support, either in the Constitution or in equal protection jurisprudence.

## CONCLUSION

For the foregoing reasons, the claims of Plaintiffs Clark and Figures should be remanded to state court, and judgment should be entered in favor of the Defendants dismissing with prejudice all the claims of Plaintiff Reed.

Submitted this 21st day of May 2007.

Respectfully submitted,

**/s/ Kenneth D. Wallis, II**
Kenneth D. Wallis, II (WAL064)
Chief Legal Advisor
Office of the Governor

**/s/ Scott L. Rouse**
Scott L. Rouse (ROU010)
Deputy Legal Advisor
Office of the Governor

**ADDRESS OF COUNSEL:**

Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax

**/s/ Kenneth L. Thomas**
Kenneth L. Thomas (THO043)
Attorney for Defendant Elton Dean

**/s/ Christopher K. Whitehead**
Christopher K. Whitehead (WHI105)
Attorney for Defendant Elton Dean

**ADDRESS OF COUNSEL:**

Thomas, Means, Gillis & Seay, P.C.
P. O. Drawer 5058
Montgomery , AL 36103-5058
(334) 270-1033 Phone
(334) 260-9396 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following attorneys:

J. Cecil Gardner, Esq.
M. Vance McCrary, Esq.
James H. Anderson, Esq.

I also hereby certify that I have mailed by United States Postal Service to the following:

John B. Crawley, Esq.
8115 Amber Street
Montgomery, Alabama 36117

**/s/ Scott L. Rouse**
Scott L. Rouse (ROU010)
Deputy Legal Advisor
Office of the Governor

**ADDRESS OF COUNSEL:**

Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax

# MONTGOMERY ADVERTISER

Sunday, May 13, 2007

# President's deficient leadership damaging to ASU

**By Joe L. Reed**

According to experts in trusteeship, the two most important duties for a university's board of trustees are to protect the integrity of the university and select a quality president.

I believe that the members of the board of trustees of Alabama State University have failed in both respects. I must speak out concerning the nature of these failures. I know that there are some people who will never forgive me for what I say; however, the future of ASU and the students it must serve is far more important than how some individuals may pass judgment.

Obviously, I am very proud of ASU as an institution and few would challenge my commitment to serve the university. My involvement with ASU began in 1958, when I enrolled as a freshman and worked as a custodian in Kilby Hall for 25 cents per hour. I literally flushed the toilets others would not flush and cleaned the floors others made dirty.

I became active in the affairs of the university and served as student body president my senior year, and later I served as president of the ASU National Alumni Association. My service to ASU culminated with my election as chairman of the ASU Board of Trustees in the 1990s. I am still a member of the board. For more than 45 years, I saw it as my duty to lobby the Alabama Legislature and the federal government for ASU, at my own expense, to gain funding and help ASU improve and grow.

Recently, the ASU board agreed to extend the contract of its president, Dr. Joe A. Lee, for two years. I originally voted for Dr. Lee to become president of ASU, even though I had been previously warned not to support him by people who had a deeper knowledge of Dr. Lee but a search committee had recommended him. I accepted that recommendation and voted for him.

I now believe that I made a mistake. I could not vote to extend his current contract, nor did I vote for his extension two years ago.

I want to believe that Dr. Lee is an upright, Christian gentleman, and a fundamentally honest family man, who would make a good next-door neighbor; however, he has not been an effective president.

The record shows that Dr. Lee has brought no vision to ASU. Practically every ASU program was in place when he arrived. Most of the buildings that are under construction on campus were on the drawing board before his arrival.

The one facility initiative to renovate six dormitories appears to be headed toward huge cost overruns and long delays. Poor management has led to this project becoming a fiasco, resulting in expensive lawsuits against ASU. Strong presidential leadership would never have allowed a routine construction project to become an embarrassment to the institution.

Dr. Lee has not been adept at handling personnel. We have numerous vacancies, including two vice presidents. We have been forced to call upon retired professors to fill vacant positions. Last year, he summarily terminated several upper-level administrators without discussing their dismissals with them. To this day, these positions remain without a permanent appointment and are being filled on an interim basis.

Dr. Lee to refuses to implement a long-standing board instruction to recommend an in-house legal counsel to reduce the exorbitant amount ASU is paying to outside lawyers.

To his detriment and the university's detriment, Dr. Lee has no firm connection to the community or the institution. This shows in his inability to raise our endowment.

Under the *Knight* consent decree, the state of Alabama will match contributions to ASU's endowment up to $1 million per year. The board ordered Dr. Lee to develop a plan to raise funds, but he has failed. Although ASU continues to struggle to recruit students despite its vast network of alumni and supporters, Dr. Lee has not tapped into that reservoir of good will for funding support or to bring the best and brightest to Montgomery.

Because of administrative ineffectiveness, ASU lost out on an opportunity to receive between $4 million and $6 million because of a failure to write a short, simple proposal on economic development. Troy University, Tuskegee University, Jacksonville State University, Wallace State Community College and Bishop State Community College and some other universities received millions of dollars through this program. These universities got money. ASU only got presidential excuses.

It is unfortunate that Dr. Lee has placed himself in this position. It is beyond reason for the board to continue Dr. Lee's contract when every evaluation he has received has been less than satisfactory. Incredibly, the board voted unanimously at its February 2007 meeting not to extend his contract.

The chairman notified him of this decision and Dr. Lee was preparing a letter stating that he would not accept a renewal of his current contract. In an about-face, the board chairman told him not to submit the letter and started lobbying other board members to retain Dr. Lee.

Dr. Lee has compromised the presidency of ASU and diluted its influence. He has lost the confidence of the faculty, the trust of the students and the support of many alumni. To keep Dr. Lee as president does a disservice to the entire university family.

I am saddened to say that I am not optimistic about the future of a place that I hold near and dear to my heart, a university that has helped educate generations of students and improves our state. Our university cries out for help, but a majority of the board ignores the pleas.

For the sake of Alabama State University, time has come for the alumni to come forward to demand new leadership and a vision for the future of the university.

*Joe L. Reed is a former chairman and a current member of the Alabama State University board of trustees.*