IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Northern Division

WILLIAM CLARK, et al.,                )
                                      )
            Plaintiffs,               )
                                      )
vs.                                   )        NO. 2:07-CV-190-WKW
                                      )
GOVERNOR BOB RILEY, et al.,           )
                                      )
            Defendants.               )

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO REMAND AND FOR SUMMARY JUDGMENT

Plaintiffs respectfully submit this reply brief in support of the Motion to Remand in Part and for Summary Judgment in Part. Defendants have agreed that the claims of plaintiffs Clark and Figures should be remanded to state court. (Defendants' Brief, Doc. 11, pp. 1-2). In this brief, we will show that the remainder of our motion should be granted as well.

### 1.   The Court should remand Count One to state court, or enter judgment in favor of Plaintiff Reed on that count.

On Count One, Plaintiff Reed seeks a ruling that the age limitation of Ala. Code § 16-50-20(a) is inapplicable to him because he has been in continuous service on the Board since before April 30, 1986. Defendants continue to admit that the first clause of § 16-50-20(b) does indeed exempt those like Dr. Reed from the age limitation (Defendants' Brief, p. 2). But Defendants say that the second clause of § 16-50-20(b) then gives the

Governor the power to "enforce" that same limitation on Dr. Reed and those like him. (Defendants' Brief, p. 4).[1]

The parties' briefs have thus disclosed three possible ways of reading § 16-50-20(b). First, it would be possible to read that subsection *not* as exempting pre-1986 Trustees from the age limitation. On this view, both the first ("exemption") clause and the second ("re-designation") clause would have nothing to do with the age limitation, but would have to do only with the staggering of terms. But all parties recognize that this is not, in fact, what the Legislature intended or what the statute means. So, the Court certainly should not adopt this reading.

Second is the way we read the statute – that the "exemption" clause exempts pre-1986 Trustees such as Dr. Reed from the age limitation as well as from other limitations in § 16-50-20(a), and the "re-designation" clause speaks only to designation of terms in the sense of their initial designation after the 1986 amendment to the statute (under § 16-50-20(a)) as being of 3, 6, 9, or 12 years duration, for purposes of ensuring a predictable and settled staggering of terms. We explained the reasons why this is the best reading in our earlier brief.

Third is Defendants' proposed reading. They agree that the "exemption" clause

---

[1] As pointed out in our initial brief, this Count presents pure matters of state law that should be resolved by the state courts, and so the Court should remand this Count along with the claims of the other plaintiffs. In arguing otherwise, Defendants imply that a ruling on Count One is a necessary prerequisite before the Court can or should get to Count Two. And so, Defendants say, this Court should not exercise its discretion to remand Count One. (Defendants' Brief, p. 3. n.3, pp. 9-10). But a ruling on Count One is not really a prerequisite to getting to Count Two. Counts One and Two are essentially alternative theories, with neither one being necessarily prior to the other as a matter of logic. The Court could allow the state courts to wrestle with Count One, and could nonetheless proceed to rule on Count Two.

exempts pre-1986 Trustees such as Dr. Reed from the age limitation as well as from other limitations in § 16-50-20(a). But, they say, the "re-designation" clause nonetheless gives the Governor the power to "enforce" all such limitations including the age limitation.

Defendants' reading stumbles, first, over the fact that it would be quite a bizarre way to write a statute. Why would the Legislature exempt some Trustees from certain requirements, yet give the Governor the power to enforce all those same requirements? It just makes no sense; if that's what the Legislature wanted, it would not have exempted anyone in the first place. Note that the Governor doesn't suggest that the Legislature meant to leave it up to his whim, as to whether to bar some 70-year old Trustee from further service; so there is no reason to think that the Legislature wanted to rely on the ad hoc political preferences of the Governor in this regard. Instead, on the Governor's reading, it seems that the Legislature exempted and then immediately un-exempted. Why the Legislature would conceivably want to do that is never explained. Our reading, by contrast, at least has the virtue of making the statute mean something. Under our reading, subsection (b) serves a purpose: its first clause protects long-serving Trustees from ouster, while its second clause gives the Governor the power to ensure that Terms remain equally staggered.

In arguing for their odd and pointless interpretation, Defendants rely almost solely on the theory that it is a "plain language" interpretation of a supposedly unambiguous provision. But Defendants are wrongly trying to take just a few words in isolation. They are focusing all their thinking on the words "the provisions of subsection (a)," as though those words by themselves answer the question presented in this part of the case, and are

3

failing to address the context in which those words appear. But that is not how to read a statute. As the Supreme Court reaffirmed just weeks ago, a search for clarity or ambiguity in statutes cannot take words in isolation, but must consider them in the context of the statute as a whole.

> [S]tatutory "ambiguity is a creature not [just] of definitional possibilities but [also] of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118, 115 S. Ct. 552, 130 L. Ed. 2d 462 (1994). *See also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-133, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000) ("meaning -- *or ambiguity* -- of certain words or phrases may only become evident when placed in context" (emphasis added)).

*Zuni Public School Dist. No. 89 v. Dep't of Education*, ___ U.S. ___, 127 S.Ct. 1534, 1546 (2007) (bracketed material in original).

Seen in the context of the entire statutory scheme, § 16-50-20(b) certainly does not "unambiguously" or "plainly" mean that the Governor can enforce the age limitation even against those who are exempted from that limitation. Among other sources of (at least) ambiguity about this, are the words "re-designate" and "terms." In the context of this statute, those words do not "plainly" or "unambiguously" refer to the length of a particular person's eligibility or service. Instead, they could (and, we submit, plainly do) refer to the length of *terms*, and to particular reasons for setting the length of such terms, as a matter entirely separate from the circumstances that might render a particular incumbent unable to serve out an entire term. Because this interpretation would be consistent with the common meanings of the words used, this interpretation is not foreclosed by Defendants' "plain language" argument. On the contrary, if any reading is supported by a "plain language" argument it is ours, since the statute's plain language

4

draws a clear distinction between "terms" (which are of fixed length) and "positions" or "seats" (which may be lost even before a term ends, through death or ineligibility). To say that "terms" can be "re-designated," then, most "plainly" would mean being re-designated as being of 3, 6, 9, or 12 years on a one-time basis in 1986 – not being re-designated as being of some entirely random length due to the happenstance of individual incumbents' circumstances.

Aside from their incorrect "plain language" argument, Defendants' only substantive argument is that interpreting the "re-designation" clause of § 16-50-20(b) is necessary because otherwise there is no way to "enforce" the age limitation of § 16-50-20(a) against Dr. Reed. (Defendants' Brief, p. 3 n. 3; *id.*, p. 4; ). This argument has no weight whatsoever, though, because it completely begs the question. That is, it *assumes* that the Legislature intended that there be some way to "enforce" the age limitation against those, like Dr. Reed, who were in service on the Board prior to April 30, 1986. It makes this *assumption* despite the agreed fact that the "exemption" clause of § 16-50-20(b) exempts such people from the age limitation. There is no basis for the *assumption* that the Legislature intended that the age limitation be enforced against such people. The question whether the Legislature had that intent, or not, is simply another way of stating the question that is at the core of the current dispute about Count One. So, Defendants' argument in this regard is merely the equivalent of saying "If the Court assumes that we are right about legislative intent, then we are right."

For these reasons, if the Court does not remand Count One to state court, the Court should accept the parties' agreed principle that the first clause of § 16-50-20(b) does

5

exempt Dr. Reed from the age limitation in § 16-50-20(a). And the Court should further hold that the "re-designation of terms" clause of § 16-50-20(b) did not give the Governor the power to impose that same age limitation on Dr. Reed.

**2.     The Court should enter judgment in favor of Plaintiff Reed on Count Two, because the age limitation violates the Equal Protection clause.**

Count Two is the Equal Protection claim. The Court should enter judgment in favor of Dr. Reed, holding that the age limitation violates Equal Protection doctrine.[2] (We note also that, even if the Court found that summary judgment was not warranted in our favor, certainly the case is not ripe for a judgment in favor of Defendants. Defendants have not moved for summary judgment in their favor, but have only moved to dismiss; so, to whatever extent a summary judgment motion might place the burden on Plaintiffs to come forward with evidence of any sort, that burden does not yet exist.)

**A.     Irrationality in comparison to other similar Boards of Trustees.**

As Defendants have pointed out, our original brief was incorrect in one respect. We stated that, of all the four-year public universities in the state, Alabama State is the only one whose Board of Trustees has an age limitation. We made this statement after scouring the relevant portion of the Alabama Code, not realizing that Alabama's unwieldy Constitution includes two relevant provisions. As Defendants have pointed out, while the majority of Alabama public universities have no age limitation for Trustees, *one* other university (the "flagship" University of Alabama) has a 70-year age limitation,

---

[2]  If the Court enters judgment for Dr. Reed on Count One, then the Court should also issue its holding on Count Two, striking down the age limitation, as an alternative holding.

and one other (Auburn University) in effect has a 76-year age limitation. So, the corrected point about the comparison with other public four-year universities is reflected in the following chart. (It is possible that there are other such institutions, but we can fairly assume that none of them has an age limitation, or else surely Defendants would have pointed this out with equal gusto.)

| Institution | Maximum allowed age for sitting Trustee |
|---|---|
| University of Alabama | 70 (Ala. Const., Amd. 399) |
| Auburn University | 76 (Ala. Const., Amd. 670)[3] |
| Alabama A & M University | none |
| Alabama State University | 70 (the provision at issue here) |
| University of North Alabama | none |
| Jacksonville State University | none |
| University of West Alabama | none |
| University of Montevallo | none |
| University of South Alabama | none |
| Troy State University | none |
| Tuskegee University | none |

So, the question on this aspect of the case is whether there is a rational basis for requiring that Trustees of Alabama State cannot serve past age 70, while making no such

---

[3] Amendment 670 provides 7-year terms for Auburn Trustees, and provides that no one can be appointed as Trustee after reaching age 70. Thus, a person could be appointed at 69 years and 364 days, and serve until 76 years and 364 days.

7

requirement for Trustees of the many other similar universities listed above (and while

allowing Auburn Trustees six more years beyond age 70). And the answer is that there is

no rational basis for this differential treatment.

Defendants still contend that the differential treatment is irrelevant. (Defendants'

Brief, pp. 15-18). They contend that this case is governed by the aphorism that a

legislature is entitled to address a perceived problem one increment at a time, without

running afoul of Equal Protection Doctrine. But – as demonstrated by the Eleventh

Circuit case that Defendants themselves cite – this aphorism tends to be applied in cases

"involving economic classifications" and cases in which the legislature "must engage in

line-drawing." *Panama City Medical Diagnostic v. Williams*, 13 F.3d 1541, 1545-46

(11th Cir. 1994). This is not a case involving economic classifications. And it is not a

case where the Legislature *had* to draw a line somewhere. (The absence of necessity of

line-drawing is demonstrated by the fact that the Legislature has drawn no such lines at

other schools). It is, instead, a classification in which the Legislature simply divided the

populace into the favored young and disfavored older.

So, rather than being governed by *Panama City Medical Diagnostic*, this case is

governed by the mode of analysis that the Supreme Court utilized in *Gregory v. Ashcroft*,

501 U.S. 452, 111 S.Ct. 2395 (1991), *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939 (1979),

and *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562 (1976). In those

cases, dealing with age classifications, the Supreme Court did *not* say that a legislature

has carte blanche to impose age limitations on some jobs but not others, as a so-called

"incremental" approach. Instead, the Supreme Court has inquired on a fact-specific basis

8

as to whether there is a justification for such differential treatment. This Court should apply that same analysis, rather than declaring it irrelevant as Defendants urge.

While Defendants now belatedly attempt to justify the differential treatment as between similar schools, their justifications are complete irrationality. The statutes themselves do not suggest or imply any possible reason for the difference in treatment of ASU Trustees versus other trustees. While it is true that Defendants are entitled to offer possible rationales even without evidence that the Legislature was actually motivated by such rationales, there are nonetheless legal limits on how creative Defendants can be in this respect. One such limit is that Defendants cannot have the age limitation upheld on the basis of some putative rationale that *could not possibly have been* a legislative justification for it, at the time of enactment. And another such limit, as inherent in the very nature of "rational basis" review, is that the proposed rationale must actually be a rational justification for the difference in treatment.

> The first step . . . is identifying a legitimate government purpose -- a goal -- which the enacting government body could have been pursuing. The actual motivations of the enacting governmental body are entirely irrelevant . . . . The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose. The proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis was actually considered by the legislative body. As long as reasons for the legislative classification may have been considered to be true, and the relationship between the classification and the goal is not so attenuated as to render the distinction arbitrary or irrational, the legislation survives rational-basis scrutiny.

*National Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1245 (11th Cir. 2003), quoting *Joel v. City of Orlando*, 232 F.3d 1353, 1358 (11th Cir. 2000) (emphasis

9

supplied, ellipses in original).

As their first justification for imposing an age limitation at ASU but not at other similar schools, Defendants say that there has been a series of reported decisions about the Alabama State Board of Trustees. (Defendants' Brief, pp. 13-14). But many of those cases have simply been disputes about the membership of the Board – whether certain appointments were valid or not – and do not demonstrate that the role or duties of Board members are any more draining than the role or duties of members of other similar boards. While Defendants cite some litigation commenced against Board members over certain other sorts of disputed by disgruntled employees, that does not rationally demonstrate anything about the difficulty of duties of ASU Board members in particular – especially without any meaningful comparison with litigation involving other schools. Moreover, all the cases that Defendants cite were decided years (in nearly all cases, more than a decade) after the Legislature last reenacted the age limitation; so, there is absolutely no way that such litigation could possibly have been a rational basis for creating the invidious age classification. In short, there is still no rational basis for believing that the duties of ASU Trustees are more taxing to people over 70, than are the duties of other Trustees.

Second, Defendants say that the Board of ASU has been "fraught with infighting." (Defendants' Brief, p. 14). Again, Defendants do not and cannot show that ASU is meaningfully different from any other institution's board in this regard – and especially cannot show even a rational possibility that the Legislature *could have* had any such putative distinction in mind. The age classification has been in this statute since at least

10

1975, and was last reenacted in 1986. To suggest that subsequent "infighting" (even if it may now exist) is a rational basis for the age classification is therefore a purely irrational anachronism. Moreover, there is simply no rational connection between the existence of some "infighting" and a need to eliminate older Trustees. Are older people supposedly less good at getting along, in the eyes of the State of Alabama? Or at dealing with those who are hard to get along with? One is left only to wonder at the irrationality of Defendants' position in this regard.

Finally, Defendants contend that ASU is different because it's in Montgomery, and Montgomery is the state capital. From this, Defendants conjure the bald assertion that this is a rational basis for booting older people off the Board, on the grounds that (a) being in Montgomery means more political concerns, and (b) people over 70 can't handle political pressures as well as people under 70. Neither part of that argument rises to the level of rationality, as a reason for treating ASU Trustees worse than others. There is, first, simply no basis for believing that the fact of being in the state capital will make service on this Board harder than service on other boards; Defendants' contention is a mere made-up assertion, without even any common sense grounding in believable fact. There is no reason to believe that members of ASU's board, in their capacity as such, would have any more frequent or difficult interaction with the Governor or the Legislature than those of any other university.[4]  Second, there is in any event no reason to

---

[4] If it is contact with the Governor that is the supposed source of political pressure, the relevant fact is that the Governor is an ex officio member of many of the State's university Boards. *See* Ala. Code § 16-49-20 (Alabama A & M); § 16-51-3 (North Alabama); § 16-52-3(b) (Jacksonville State); § 16-53-3 (West Alabama); § 16-54-2 (Montevallo); § 16-55-2 (South

11

believe that any political concerns that may arise by virtue of proximity to the capital will be meaningfully draining, in a way that is more taxing with age; again, Defendants' contention does not even pass the common sense test.[5]

In short, Defendants have come up with nothing that comes remotely close to what the Supreme Court has accepted (in *Gregory*, *Vance*, and *Murgia*) as justification for placing age limitations on some public servants but not others. In each of those cases, the Supreme Court looked at actual facts about the duties of the public servants in the various categories, and found a real rational basis for distinguishing one group from another. Defendants' suggestions, by contrast, are even beyond being tenuous; they are made up out of whole cloth and bear no rational relationship to the real world.

**B.**   Irrationality of the age limitation, even apart from comparison to other schools.

Finally, even if one looks at ASU alone (rather than in comparison to other schools), the imposition of the age limitation is likewise completely irrational.

---

Alabama); § 16-56-3 (Troy State). So there is absolutely no reason to think that ASU Board members will have any more political pressure from the Governor than Trustees at those other schools. Nor is there any reason to think that members of ASU's Board, in their capacity as such, would have more contact with Legislators than would members of other Boards. After all, members of ASU's Board live throughout the State, as do members of other boards; and the Legislature is not constantly in session, nor is the ASU Board; and every university has home-area Legislators with whom they must interact politically. In short, Defendants' supposed concern about political pressure simply by virtue of being in Montgomery is patently absurd.

[5] There is no reason whatsoever for anyone to think that well-connected and politically savvy people – well-connected and politically savvy enough to be appointed by the Governor to a university Board of Trustees in the first place – lose their ability to withstand political pressures at or around the age of 70. While there may unfortunately be some longstanding age-related stereotypes on which legislators are allowed to rely (and to which courts will then defer), a state certainly isn't allowed to make up its own novel age-related stereotypes on the fly, where there is no rational basis for them. The state's current contention – that older people, even those who gained appointment a few years earlier through politics, can't "do" politics – is just that sort of newly-constructed and completely-baseless generalization.

12

As supposed grounds for the age limitation, Defendants rely first (Brief, pp. 12-13) on the general assertion that some people's faculties deteriorate with age, and that the age limitation is therefore rational. But this is not enough to constitute a rational basis for age discrimination, as demonstrated by cases such as *Gregory*, *Vance*, and *Murgia*. If that general assertion were enough, then those cases would have required no analysis whatsoever, and no discussion of the particular jobs at issue in those cases. The Supreme Court would have decided *Vance* by saying "Constitutional. *See Murgia*." And it would have decided *Gregory* by saying "Constitutional. *See Vance* and *Murgia*." But that is not what the Supreme Court did. Instead, the Supreme Court inquired into the particulars of the situation – deferentially, to be sure, but still with specificity and not on a rubber-stamp basis. That is what the Court should do in this case, as well.

When the Court looks at the case on such a specific basis, the Court will see that there is absolutely no rational basis for requiring all Trustees of ASU to step down at age 70. If *any* state-mandated age discrimination could ever be held unconstitutional, this is surely it. The role of Trustee at ASU, it must be emphasized, is far from a full-time job. Many Trustees maintain demanding full-time jobs in addition to their voluntary service on ASU's Board. So, service on the Board cannot be anything as demanding as, for instance, the law enforcement or foreign service or judgeship positions at issue in *Gregory*, *Vance*, and *Murgia*. In fact, the governing statute requires only two meetings of the Board per year, and requires ample notice of any specially-called meetings between those times. *See* Ala. Code § 16-50-26.

Moreover, no one gets to serve on the Board at all, at any age, unless he or she has

13

been specifically chosen by the Governor for the role. The Board is thus, by its very nature, made up of people who are comfortable with the world of politics and deliberation. There is no reason ever to believe that any Governor will choose a Trustee who is unable to stand the heat, or who is on his or her last legs.

So, again, there is nothing about the realities of the role of Trustee at ASU – nothing, even, in any way that a rational person could *view* or *perceive* the role – that specifically justifies dividing the populace into the favored young and the disfavored older. As we have shown above, the main justifications offered by Defendants – the supposed "infighting" and litigation involving the Board in recent years – could not even possibly have been a rational basis for the age classification, either when it was first enacted or when it was last reenacted in 1986. The only legal holding that would justify this age limitation would be a holding that age limitations are constitutionally permissible in any situation at all – even where the role is very far from a full-time occupation, even where the role requires no physical exertion at all, even where incumbents are chosen for their suitability on a one-on-one basis by the Governor. But, as we have shown, that is simply not the law under *Gregory* and earlier cases.

## Conclusion

For these reasons and the reasons explained in our earlier brief, the motion should be granted in its entirety. The case should be remanded in part, the Court should enter judgment in Plaintiff Reed's favor on Count Two, along with appropriate declaratory and equitable relief.

14

Respectfully submitted,

ATTORNEYS FOR PLAINTIFFS

s/J. Cecil Gardner
J. Cecil Gardner
M. Vance McCrary
THE GARDNER FIRM, P. C.
P. O. Box 3103
Mobile, Alabama 36602
Telephone: (251) 433-8100
Fax: (251) 433-8181
E-mail: cgardner@thegardnerfirm.com
        vmccrary@thegardnerfirm.com

John B. Crawley, Esq.
8115 Amber Street
Montgomery, AL 36117
Telephone (334) 277-9045 or (334) 546-9045
E-mail: jbcsjc@charter.net

James H. Anderson, Esq.
Beers, Anderson, Jackson, Patty,
Van Heese & Fawal, P. C.
P. O. Box 1988
Montgomery, AL 36102-1988
(334) 834-5311
Fax: (334) 834-5362
E-mail:  janderson@beersanderson.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:    **Scott Lee Rouse, Esq. , Kenneth Lamar Thomas, Esq., Kenneth Dallon Wallis, II. Esq. Christopher Kyle Whitehead, Esq.**

s/J. Cecil Gardner