IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Northern Division

| | |
|---|---|
| DR. JOE L. REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. 2:07-CV-190-WKW |
| | ) |
| GOVERNOR BOB RILEY, et al., | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff Dr. Joe L. Reed respectfully submit this brief in support of his Motion for Summary Judgment.

This case concerns the interpretation of, and the constitutionality of, an Alabama statute imposing an age limitation on the Trustees of Alabama State University. *See* Ala. Code § 16-50-20. The statute reads as follows:

> (a) There is hereby created a Board of Trustees for Alabama State University, the state educational institution at Montgomery, Alabama. The board of trustees shall consist of two members from the congressional district in which the institution is located and one member from each of the other congressional districts in the state as constituted on October 6, 1975, and who shall reside in that district, four members from the state at large who shall reside in different districts, and the Governor, who shall be ex officio president of the board. Except for a trustee at large, the position of any trustee shall be vacated at such time as he shall cease to reside in the district from which he was appointed. The trustees shall be appointed by the Governor, by and with the advice and consent of the Senate, in such manner that the membership shall consist of at least a majority who are alumni and who have received a bachelor's degree from the said university; at least one-half of the board shall be from the prevailing minority

population of the state according to the last or any succeeding federal census. Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed. All appointments shall be effective until adversely acted upon by the Senate. Provided, however, no trustee who is currently serving on the board or whose term has just expired, who has been previously confirmed by the Senate, shall be required to be reconfirmed for the new term under this section, once appointed by the Governor. A member may be appointed to serve a second term of 12 years, but no member shall be appointed to serve as trustee for more than a total of two terms. The first members, however, shall be eligible to serve for two full additional terms in addition to their initial terms. No trustee shall receive any pay or emolument other than his actual expenses incurred in the discharge of his duties as such. No member of the governing board or employee or student of any public postsecondary education institution, no elected or appointed official having the power of review of the Alabama State University budget, other than the Governor and no employee of the State of Alabama shall be eligible to serve on the board. No member shall serve past September 30 following his seventieth birthday.

(b) No trustee who is serving on the said board on April 30, 1986, shall lose his or her seat because of this section; provided, however, the Governor may re-designate the period of the term of these members so as to conform to the provisions of subsection (a).

**1.    Count One: Dr. Reed is exempt from the age limitation as a matter of state law, and the Governor's attempt to "re-designate" his term had no effect.**

In Count One, Plaintiff Reed first seeks a declaration that the age limitation in § 16-50-20(a) is inapplicable to him by the statute's own terms, since he was a member of the Board as of April 30, 1986.[1]  This would be an application of the first clause of § 16-50-20(b), the "exemption" clause, which provides that "No trustee who is serving on the said board on April 30, 1986, shall lose his or her seat because of this section …"

---

[1] As stated in the first Declaration of Plaintiff Reed (attached to Doc. 8), Dr. Reed has been a member of the Board continuously since before April 30, 1986.

2

Defendants, in prior briefing in this case, indicated that they did not contest our reading of the statute on this point. *See* Doc. 4, pp. 7-8 ("This provision appears to exempt certain trustees from the scope of the age restriction contained in subsection (a)."); Doc. 11, p. 2.

Plaintiff also seeks a declaration that the Governor's purported "re-designation" of his term, to end on September 30, 2008, was ineffective because the Governor does not have the power to take such action. Defendants' theory is that the Governor has such power under the second clause of § 16-50-20(b), the "re-designation of terms" clause: "provided, however, the Governor may re-designate the period of the term of these members so as to conform to the provisions of subsection (a)." So the remaining question in dispute on Count One is whether, even though the "exemption" clause exempts Dr. Reed from the age limitation in § 16-50-20(a), the "re-designation" clause gives the Governor the power (in the Governor's words, in prior briefing) the power to "enforce" that very same age limitation against him.

Contrary to Defendants' view, the "re-designation" clause of subsection (b) has a very limited application – and it has nothing to do with this case. The Governor's action purporting to "re-designate" Plaintiff Reed's term was legally a nullity, because the statute does not give the Governor any such power under the circumstances present here.

The best reading of the "re-designation" clause of § 16-50-20(b) is that the power of "re-designation" of "terms" concerns only the initial staggering of terms for then-existing Trustees following the 1986 amendment to the statute. It does not confer a more general power to "re-designate" terms at other times and for other reasons. As we will show, our interpretation in this respect is most consistent with (1) the language of § 16-

3

50-20 itself, (2) the history of the statute, (3) the remaining provisions of the statutory scheme regarding the Board; and (4) existing precedent about Gubernatorial power in regard to the Board. But first, it may be sufficient just to note that Defendants' reading would be quite a bizarre way to write a statute. Why would the Legislature exempt some Trustees from certain requirements, yet give the Governor the power to enforce all those same requirements? It just makes no sense; if that's what the Legislature wanted, it would not have exempted anyone in the first place. Note that the Governor doesn't suggest that the Legislature meant to leave it up to his whim, as to whether to bar some 70-year old Trustee from further service; so there is no reason to think that the Legislature wanted to rely on the ad hoc political preferences of the Governor in this regard. Instead, on the Governor's reading, it seems that the Legislature exempted and then immediately un-exempted. Why the Legislature would conceivably want to do that is never explained. Our reading, by contrast, at least has the virtue of making the statute mean something. Under our reading, subsection (b) serves a purpose: its first clause protects long-serving Trustees from ouster, while its second clause gives the Governor the power to ensure that Terms remain equally staggered.

      The language of the statute itself suggests that "re-designation" refers only to the initial staggering of terms of then-existing Trustees in 1986. When amending the statute in 1986, the Legislature provided that "Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed." This provision, on its face, was designed to

4

create an orderly and predictable degree and rate of turnover on the Board, such that a predictable and equal number of vacancies on the Board would occur every three years. Such a provision is, of course, quite common for multi-member deliberative bodies, to ensure continuity and efficiency of functioning.

The apparent reason for the "re-designation" clause ties in with this goal. One of the plain and undisputed effects of the first clause of § 16-50-20(b) was that all Trustees sitting at the time of the 1986 amendment would continue to serve following that amendment. The "re-designation" clause was therefore necessary in order to harmonize that provision with the staggered-terms provision of § 16-50-20(a). While all then-sitting Trustees would continue to serve, the Governor would have the power to "re-designate" their "terms" in a manner that comported with the staggered-terms provision of § 16-50-20(a), in order to obtain the benefits of continuity, efficiency, and predictability that were the goals of the staggered-terms provision.

By contrast, reading the "re-designation" clause more broadly, as Defendants would, will interfere irreparably with the Legislature's goal in the staggered-terms provision of § 16-50-20(a). And so, such a reading should be rejected. *See*, *e.g.*, *Proctor v. Riley*, 903 So.2d 786, 789-90 (Ala. 2004) (noting that this statutory scheme should be "consider[ed] … as a whole and ... construe[d] …reasonably so as to harmonize [its] provisions," and should be "read *in pari materia* in order to 'produce a harmonious whole.'") That is, if the Governor were construed to have the power to "re-designate" Plaintiff Reed's current term to make it last less than 12 years, then the Governor would thereby have been given a power that is in fatal conflict with the staggered-terms

5

provision of § 16-50-20(a). On Defendants' reading of the "re-designation" provision, the Board will no longer enjoy the stability and predictability of having an equal number of terms end every three years. Instead, on Defendants' view, a trustee appointed to the seat now held by Dr. Reed would hold office for twelve years from the September 30 following Dr. Reed's seventieth birthday. And if there were more trustees ousted by reason of the age limitation in the future, the staggering of terms would soon become practically random, based entirely on the happenstance of the ages of various past Trustees. This is clearly not what the Legislature provided for, in the staggered-terms provision. And this shows that the power of "re-designation" should not be read in Defendants' preferred way, as that would conflict with other language of § 16-50-20 itself.

Our interpretation in this regard is supported by other aspects of the statutory scheme, and specifically § 16-50-25. Section 16-50-25 provides that when a sitting Trustee leaves office during the statutorily-set length of his or her term, the person appointed to fill the resulting vacancy "shall hold office during the unexpired term." This provision, too, fits in with the staggered-term provision of § 16-50-20(a) that we have been discussing. It emphasizes and effectuates the Legislature's intention that "terms," after the initial staggering following the 1986 amendment, would last twelve years. Even when a Trustee becomes ineligible because of age (or other reason such as death or resignation), the starting and ending dates of the "term" remain the same, in order to continue the staggered-terms model in full effect. In other words, this shows the legislative intention that "terms" have a length that is independent of the particular

circumstances of the individual who happens to hold office during such term.  The "term" of a seat on the Board after 1986 is, and remains, 12 years.  The Legislature did not grant the Governor the power to make some terms shorter than that, after the initial staggering of terms following the 1986 amendment.

      The history of the statute also demonstrates that the power to "designate" terms has to do only with the staggering of terms in orderly fashion, and not with a more general Gubernatorial power that would work against that orderly staggering of terms.  That is, in the original 1975 version of the statute, and again in the 1983 version of the statute (both attached hereto as an Exhibit), the word "designate" was used in § 16-50-20 only in reference to the Gubernatorial power of staggering initial terms.  As stated in the 1975 version, "Of the first members appointed to the Board, one-third shall be designated by the Governor to serve until January 31, 1978, one-third until January 31, 1980, and one-third to serve until January 31, 1982."  The provision in the 1983 version was the same.  This history demonstrates what the Legislature had traditionally meant by "designation" of terms in regard to the Board of Trustees of Alabama State University.  It is reasonable to infer that this was what the Legislature again had in mind, in using the similar term "re-designate" in 1986: only the power to set initial terms, in furtherance of the staggered-terms goal of the statutory scheme.

      Our limited reading of the "re-designation" clause, finally, is most consistent with existing Alabama Supreme Court precedent on gubernatorial power with respect to Trustees of Alabama State University.  Among the Supreme Court decisions regarding this Board of Trustees is *Tucker v. Watkins*, 737 So.2d 443 (Ala. 1999).  That case

involved a gubernatorial claim of power to "rescind" a previous appointment to this Board – a claim quite similar to the present Governor's claim of power to reduce the term of office of a sitting Trustee. The Supreme Court resoundingly rejected that gubernatorial claim to power, in *Tucker*. The Court quoted and relied upon an Alaska decision holding that "Courts have uniformly held that an executive's power to reconsider an appointment ends when the executive takes the last act required to complete the appointment process." *Id.* at 445. The Court further quoted and relied upon the principle that "The rule established by cases considering the issue is that the last act of the executive is the act which places the appointee in office." *Id.* That rule should similarly guide the result in this case. Once Plaintiff Reed was placed in office by gubernatorial appointment, a subsequent Governor has no power to interfere with his service.[2]

For these reasons, the Court should reject Defendants' reading of the "re-designation" clause of § 16-50-20(b). The Governor has no power to "re-designate" Plaintiff Reed's term at this juncture. And, since Defendants have not disputed our reading of the exemption clause of § 16-50-20(b), this Court should hold that Plaintiff Reed is exempt from the statute's age limitation.

---

[2] The proper way to remove a Trustee is not through unilateral Gubernatorial action; it is instead through the legal mechanism of a writ of *quo warranto*, as in *Tucker* itself. So, *if* Plaintiff Reed was thought to be subject to the age limitation, a *quo warranto* action would be the way to seek his removal. But, as we have noted above, Defendants have correctly accepted that he is excepted from the age limitation by the first clause of § 16-50-20(a), so this possibility of a *quo warranto* action is purely hypothetical and counter-factual in this case.

**2.    Count Two: The age limitation in the statute is unconstitutional.**

Even if Dr. Reed is subject to the age limitation as a matter of state law (whether through the Governor's "re-designation," as the Governor suggests, or otherwise), then Dr. Reed is entitled to judgment in his favor because the age limitation in the statute is unconstitutional. It violates the Equal Protection command of the Fourteenth Amendment.

The age limitation in § 16-50-20 violates the Equal Protection command in two related but distinguishable ways. First, there is no rational basis for prohibiting persons over the age of seventy from serving on Alabama State University's Board of Trustees. Second, there is no rational basis for imposing such a rule on Trustees of Alabama State University and not on the Trustees of many other public universities in the State.

(A) There is no rational basis for decreeing that persons over the age of seventy may not serve on Alabama State University's Board of Trustees. The statute simply favors the younger over the older in blatant fashion, without any justification, and thereby violates the Equal Protection command.

In prior briefing in this case, Defendants suggested in effect that Supreme Court precedent allows a State to impose whatever age limit it prefers on any position or office. But that is not what Supreme Court precedent holds. Instead, the Supreme Court has inquired into the specific duties for the particular job in question, and has required a rational basis for the chosen age limitation as to the job in question. If the inevitable march of age was *always* a constitutionally-acceptable basis for a state classification, then the Supreme Court's decisions on the topic would be simple one-liners. But that is not

9

the way the Supreme Court has dealt with the question, in the cases that Defendants cite. *See Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395 (1991); *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939 (1979); *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562 (1976) (all discussing, at some length, the particular facts as to the job at issue).

And, once it comes to the specific duties of a Trustee of Alabama State University, there is nothing in the record in this case to demonstrate that there is any reason whatsoever to believe that the age-limitation is rational. Indeed, the Second Declaration of Dr. Joe L. Reed, which accompanies the summary judgment motion, explains facts about the nature of the role of Trustee, in a way that shows that the age limitation simply has no rational basis. This case is very different, therefore, from the cases upon which the Defendants rely.

Consider and contrast, for instance, *Gregory v. Ashcroft*. Before accepting that a mandatory retirement age for state court judges was rational and therefore constitutionally acceptable, the Supreme Court went through a substantial analysis. It noted the "demanding" nature of the job of being a state court judge. *Gregory*, 501 U.S. at 472, 111 S.Ct. at 2407. Then, importantly, the Court inquired as to whether other mechanisms were sufficient to remove judges who weren't up to the job. *Id.* (discussing whether mechanisms such as impeachment, voluntary retirement, and elections were sufficient to remove judges who no longer had the ability to serve capably). The Supreme Court upheld the rationality of the age limitation only after concluding that "[t]he people of Missouri rationally could conclude that the threat of deterioration at age 70 is sufficiently great, and the alternatives for removal sufficiently inadequate, that they

10

will require all judges to step aside at age 70." *Id.*, 501 U.S. at 473, 111 S.Ct. at 2408.

This case is very different from *Gregory*, in ways that show the irrationality of the age limitation. First, the part-time role of being a Trustee is much less "demanding" than being a state court judge;[3] there is nothing about it that would naturally tax the abilities of people over 70. (*See generally* Second Declaration of Dr. Joe L. Reed, accompanying the Motion for Summary Judgment). And second, there is no reason to believe that "the alternatives for removal [of those who should be removed are] sufficiently inadequate" to justify an across-the-board age limitation. *Id.* After all, one will not even reach age 70 as Trustee at Alabama State University unless the Governor has specifically decided, within the few years preceding that, that the particular appointee is up to the task. If the Governor has any doubts about whether the person will be up to the task for a twelve-year term, then the Governor can decide to appoint someone else instead.

This leaves, as conceivable justification for the age limitation, only the hypothetical assertion that some Trustee <u>might</u> quickly and unforeseeably become incompetent to serve at some time during his or her term following a Gubernatorial appointment. But the possibility of a rapid and unforeseeable decline after Gubernatorial appointment – and the possibility, beyond that, that a person suffering such a decline would refuse to resign from the Board – is a slim and purely speculative possibility. It is not a rational justification for classifying the populace into one favored class who may

---

[3] It is noteworthy in this regard that the age limitation in § 16-50-20(a) is even more stringent than the age limitation that applies to Alabama's Supreme Court Justices. That is, a Justice of the Alabama Supreme Court is allowed to serve for several years past the age of seventy, but is merely constrained for running for a new term after reaching the age of seventy. *See* Ala. Const., Amd. 328 § 6.16.

11

serve, and another disfavored class who may not. It does not rise anywhere near the level of justification that the Supreme Court has relied upon, in cases such as *Gregory*, to uphold age limitations.

If *any* state-mandated age discrimination could ever be held unconstitutional, this is surely it. The role of Trustee at ASU, it must be emphasized, is far from a full-time job. Many Trustees maintain demanding full-time jobs in addition to their voluntary service on ASU's Board. So, service on the Board cannot be anything as demanding as, for instance, the law enforcement or foreign service or judgeship positions at issue in *Gregory*, *Vance*, and *Murgia*. In fact, the governing statute requires only two meetings of the Board per year, and requires ample notice of any specially-called meetings between those times. *See* Ala. Code § 16-50-26.

Moreover, no one gets to serve on the Board at all, at any age, unless he or she has been specifically chosen by the Governor for the role. The Board is thus, by its very nature, made up of people who are comfortable with the world of politics and deliberation. There is no reason ever to believe that any Governor will choose a Trustee who is unable to stand the heat, or who is on his or her last legs.

So, again, there is nothing about the realities of the role of Trustee at ASU – nothing, even, in any way that a rational person could *view* or *perceive* the role – that specifically justifies dividing the populace into the favored young and the disfavored older. The only legal holding that would justify this age limitation would be a holding that age limitations are constitutionally permissible in any situation at all – even where the role is very far from a full-time occupation, even where the role requires no physical

12

exertion at all, even where incumbents are chosen for their suitability on a one-on-one basis by the Governor. But, as we have shown, that is simply not the law under *Gregory* and earlier cases.

(B) Moreover, there is no rational basis for imposing an age limit on Trustees of Alabama State University while not imposing such a limit on the Trustees of most other public universities in the State. The comparison is as follows:

| **Institution** | **Maximum allowed age for sitting Trustee** |
|---|---|
| University of Alabama | 70 (Ala. Const., Amd. 399) |
| Auburn University | 76 (Ala. Const., Amd. 670)[4] |
| Alabama A & M University | none |
| Alabama State University | 70 (the provision at issue here) |
| University of North Alabama | none |
| Jacksonville State University | none |
| University of West Alabama | none |
| University of Montevallo | none |
| University of South Alabama | none |
| Troy State University | none |
| Tuskegee University | none |

So, the question on this aspect of the case is whether there is a rational basis for requiring

---

[4] Amendment 670 provides 7-year terms for Auburn Trustees, and provides that no one can be appointed as Trustee after reaching age 70. Thus, a person could be appointed at 69 years and 364 days, and serve until 76 years and 364 days.

that Trustees of Alabama State cannot serve past age 70, while making no such requirement for Trustees of the many other similar universities listed above (and while allowing Auburn Trustees six more years beyond age 70).  And the answer is that there is no rational basis for this differential treatment.

In earlier briefing, Defendants urged that a comparison to other universities is irrelevant from a constitutional perspective.  Defendants are incorrect, as shown by Supreme Court precedent.  In *Gregory*, *Bradley*, and *Murgia*, the Court upheld mandatory-retirement provisions only after concluding *not only* that there was a rational basis in terms of the requirements of the particular job in question, *but also* that there was a rational basis for imposing an age limit on that job while imposing no such requirement on other comparable jobs.  That is, the Supreme Court undertook the precise sort of analysis that we are asking this Court to undertake, in this aspect of the case.  *See Gregory v. Ashcroft*, 501 U.S. at 473, 111 S.Ct. at 2407 ("This is also a rational explanation for the fact that state judges are subject to a mandatory retirement provision, while other state officials – whose performance is subject to greater public scrutiny, and who are subject to more standard elections – are not.  Judges' general lack of accountability explains also the distinction between judges and other state employees, in whom a deterioration in performance is more readily discernible and who are more easily removed."); *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939 (1979) (discussing at length why State Department Foreign Services Officers' jobs are different from other Civil Service Jobs, in a way that justifies having a mandatory retirement age for the former but not the latter); *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 315 n. 8, 96 S.Ct. 2562,

14

2568 n. 8 (1976) (holding that it was acceptable to impose a mandatory retirement age on state police officers but not on other law enforcement officers, where "[I]t has never been seriously disputed ... that the work of uniformed state officers is more demanding than that of other state, or even municipal, law enforcement personnel. It is this difference in work demands that underlies the job classification.")

So, in this portion of our claim we are asking the very same question that the Supreme Court has asked: is there a rational basis for treating Trustees at Alabama State University different from other people in similar positions? The answer is that there is no such rational basis. In earlier briefing, Defendants offered some putative rationales; but all of them were completely irrational, either because they were simply absurd or because they were based on allegations that could not possibly (as a matter of chronology) have been the Legislature's rationale.

As their first justification for imposing an age limitation at ASU but not at other similar schools, Defendants first said that there has been a series of reported decisions about the Alabama State Board of Trustees. (Defendants' Brief, Doc. 11, pp. 13-14). But many of those cases have simply been disputes about the membership of the Board – whether certain appointments were valid or not – and do not demonstrate that the role or duties of Board members are any more draining than the role or duties of members of other similar boards. While Defendants cited some litigation commenced against Board members over certain other sorts of disputes by disgruntled employees, that does not rationally demonstrate anything about the difficulty of duties of ASU Board members in particular – especially without any meaningful comparison with litigation involving other

15

schools.  Moreover, all the cases that Defendants cite were decided years (in nearly all cases, more than a decade) after the Legislature last reenacted the age limitation; so, there is absolutely no way that such litigation could possibly have been a rational basis for creating the invidious age classification.

Second, Defendants said that the Board of ASU has been "fraught with infighting." (Defendants' Brief, Doc. 11 p. 14).  Again, Defendants do not and cannot show that ASU is meaningfully different from any other institution's board in this regard – and especially cannot show even a rational possibility that the Legislature *could have* had any such putative distinction in mind.  The age classification has been in this statute since at least 1975, and was last reenacted in 1986.  To suggest that subsequent "infighting" (even if it may now exist) is a rational basis for the age classification is therefore a purely irrational anachronism.  Moreover, there is simply no rational connection between the existence of some "infighting" and a need to eliminate older Trustees.  Are older people supposedly less good at getting along, in the eyes of the State of Alabama?  Or at dealing with those who are hard to get along with?  One is left only to wonder at the irrationality of Defendants' position in this regard.

Finally, Defendants contended that ASU is different because it's in Montgomery, and Montgomery is the state capital.  From this, Defendants conjured the bald assertion that this is a rational basis for booting older people off the Board, on the grounds that (a) being in Montgomery means more political concerns, and (b) people over 70 can't handle political pressures as well as people under 70.  Neither part of that argument rises to the level of rationality, as a reason for treating ASU Trustees worse than others.  There is,

16

first, simply no basis for believing that the fact of being in the state capital will make service on this Board harder than service on other boards; Defendants' contention is a mere made-up assertion, without even any common sense grounding in believable fact. There is no reason to believe that members of ASU's board, in their capacity as such, would have any more frequent or difficult interaction with the Governor or the Legislature than those of any other university.[5]  Second, there is in any event no reason to believe that any political concerns that may arise by virtue of proximity to the capital will be meaningfully draining, in a way that is more taxing with age; again, Defendants' contention does not even pass the common sense test.[6]

In short, Defendants have come up with nothing that comes remotely close to what the Supreme Court has accepted (in *Gregory*, *Vance*, and *Murgia*) as justification for

---

[5] If it is contact with the Governor that is the supposed source of political pressure, the relevant fact is that the Governor is an ex officio member of many of the State's university Boards. *See* Ala. Code § 16-49-20 (Alabama A & M); § 16-51-3 (North Alabama); § 16-52-3(b) (Jacksonville State); § 16-53-3 (West Alabama); § 16-54-2 (Montevallo); § 16-55-2 (South Alabama); § 16-56-3 (Troy State).  So there is absolutely no reason to think that ASU Board members will have any more political pressure from the Governor than Trustees at those other schools. Nor is there any reason to think that members of ASU's Board, in their capacity as such, would have more contact with Legislators than would members of other Boards.  After all, members of ASU's Board live throughout the State, as do members of other boards; and the Legislature is not constantly in session, nor is the ASU Board; and every university has home-area Legislators with whom they must interact politically.  In short, Defendants' supposed concern about political pressure simply by virtue of being in Montgomery is patently absurd.

[6]  There is no reason whatsoever for anyone to think that well-connected and politically savvy people – well-connected and politically savvy enough to be appointed by the Governor to a university Board of Trustees in the first place – lose their ability to withstand political pressures at or around the age of 70.  While there may unfortunately be some longstanding age-related stereotypes on which legislators are allowed to rely (and to which courts will then defer), a state certainly isn't allowed to make up its own novel age-related stereotypes on the fly, where there is no rational basis for them.  The state's current contention – that older people, even those who gained appointment a few years earlier through politics, can't "do" politics – is just that sort of newly-constructed and completely-baseless generalization.

placing age limitations on some public servants but not others.  In each of those cases, the Supreme Court looked at actual facts about the duties of the public servants in the various categories, and found a real rational basis for distinguishing one group from another.  Defendants' suggestions, by contrast, are even beyond being tenuous; they are made up out of whole cloth and bear no rational relationship to the real world.  There is no simply basis on which the Legislature could have believed that Trustees of Alabama State University require more youth than Trustees of other universities.  This is, in itself, sufficient justification to hold that the statute violates the Equal Protection command, under *Gregory*, *Bradley*, and *Murgia*.

## CONCLUSION

For the reasons stated herein, the Court should enter judgment in favor of Dr. Reed.  The Court should issue appropriate declaratory and injunctive relief, and should award fees and expenses under 42 U.S.C. § 1988.

Respectfully submitted,
ATTORNEYS FOR PLAINTIFFS

s/J. Cecil Gardner
J. Cecil Gardner
M. Vance McCrary
THE GARDNER FIRM, P. C.
P. O. Box 3103
Mobile, Alabama 36602
Telephone: (251) 433-8100
Fax: (251) 433-8181
E-mail: cgardner@thegardnerfirm.com
            vmccrary@thegardnerfirm.com

> John B. Crawley, Esq.
> 8115 Amber Street
> Montgomery, AL 36117
> Telephone (334) 277-9045 or (334) 546-9045
> E-mail: jbcsjc@charter.net
>
> James H. Anderson, Esq.
> Beers, Anderson, Jackson, Patty,
> Van Heese & Fawal, P. C.
> P. O. Box 1988
> Montgomery, AL 36102-1988
> (334) 834-5311
> Fax: (334) 834-5362
> E-mail:  janderson@beersanderson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following**:    Scott Lee Rouse, Esq. , Kenneth Lamar Thomas, Esq., Kenneth Dallon Wallis, II. Esq. Christopher Kyle Whitehead, Esq.**

s/J. Cecil Gardner

19