**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA,**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| DR. JOE L. REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07-CV-190-WKW |
| | ) | |
| GOVERNOR BOB RILEY, in his official | ) | Removed from the Circuit Court |
| capacity, and ELTON DEAN, in his official | ) | of Montgomery County, Alabama |
| capacity as Chair of the Board of Trustees | ) | Case No. 03-CV-2007-900076.00 |
| of Alabama State University, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**BRIEF SUPPORTING DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT AND**
**BRIEF OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
_____

COME NOW Defendants Governor Bob Riley and Elton Dean (collectively "the Defendants"), by and through their respective counsel of record, and submit the following brief in support of their contemporaneously filed Motion to Dismiss the Plaintiff's First Amended Complaint. See Doc. 15. Said brief is also filed in response to and opposing Plaintiff's Motion for Summary Judgment. See Docs. 16-17:

ARGUMENT

I. **THE GOVERNOR HAS THE AUTHORITY TO RE-DESIGNATE THE PERIOD OF PLAINTIFF JOE REED'S TERM AS A MEMBER OF THE ALABAMA STATE UNIVERSITY BOARD OF TRUSTEES.**

Because Plaintiff Reed was serving on the Alabama State University Board of Trustees on April 30, 1986, the first phrase of section 16-50-20(b) of the Code of Alabama *generally* exempts him from the scope of the age restriction set forth in subsection (a) of that same statute. In Plaintiff Reed's case, however, this exemption

has been abrogated because the Governor has exercised his explicit statutory authority to re-designate the length of Plaintiff Reed's term as an Alabama State University trustee to ensure that he does not continue to serve in derogation of the age restriction set forth in subsection (a).[1]  See Doc. 5.  Though Plaintiff Reed did not seek a declaratory judgment regarding the Governor's re-designation authority in his initial complaint, he has since amended his complaint to properly bring this issue within the jurisdiction of this Court.  See Doc. 15, ¶¶ 7, 9.  Thus, the Governor's position regarding his authority under the latter half of subsection (b) is presented here.

Plaintiff Reed's interpretation of section 16-50-20(b) is as inconsistent as it is self-serving.  He is quick to claim the general exemption afforded by the initial phrase of subsection (b), as it preserves Plaintiff Reed's long-held seat on the Alabama State University Board of Trustees.  See Doc. 17, p. 2.  But even though he broadly interprets the exemption for his own benefit, Plaintiff Reed simultaneously seeks to ascribe such a "very limited application" to the Governor's power under that same statutory subsection that it would render that authority altogether meaningless.  See Doc. 17, p. 3.  The apparent duplicity in his legal analysis belies the true impetus for this lawsuit — that it is just a stratagem for Plaintiff Reed to extend his tenure on the Alabama State University Board of Trustees, regardless of what the law unambiguously provides.

According to Plaintiff Reed, the "best reading" of the latter part of subsection (b) is that the Governor's power to re-designate the length of trustees' terms applies only to

---

[1] The first phrase of subsection (b) provides that "[n]o trustee who is serving on the said board on April 30, 1986, shall lose his or her seat because of this section. . ." ALA. CODE § 16-50-20(b) (2001).  The second phrase of this subsection is the obvious counterpoint to the first.  It completes subsection (b) by stating that "the Governor may re-designate the period of the term of these members so as to conform to the provisions of subsection (a)." ALA. CODE § 16-50-20(b) (2001).  Subsection (a) is indisputably the source of the age restriction now challenged by Plaintiff Reed, as it plainly provides that "[n]o member shall serve past September 30 following his seventieth birthday." ALA. CODE § 16-50-20(a) (2001).

the staggered-terms provisions of subsection (a), and not to the age restriction that is also found there.  <u>See</u> Doc. 17, p. 3.  Though Plaintiff Reed embarks on a windy explanation of this interpretive theory, <u>see</u> Doc. 17, pp. 3-7, he is ultimately only attempting to obfuscate the plain language of subsection (b).  By venerating the staggered-terms provisions of the statute as he does, Plaintiff Reed would unjustifiably restrict — and even outright nullify — the Governor's statutory authority to enforce the age restriction set forth in subsection (a).  In sum, Plaintiff Reed's "best reading" of the statute patently contravenes the plain language of subsection (b) and, therefore, accepted canons of statutory construction militate against the adoption of his interpretation of the law.

The cardinal rule of statutory interpretation is neither disputable nor avoidable in this case.  As the Alabama Supreme Court has long held:

> "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.  Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.   If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."

<u>Austin v. Alabama Check Cashers Assoc.</u>, 936 So. 2d 1014, 1026 (Ala. 2005) (quoting <u>Ex parte Master Boat Builders, Inc.</u>, 779 So. 2d 192, 196 (Ala. 2000), and <u>IMED Corp. v. Systems Eng'g Assocs. Corp.</u>, 602 So. 2d 344, 346 (Ala. 1992)).   <u>Accord</u> <u>American Tobacco Co. v. Patterson</u>, 456 U.S. 63, 68 (1982); <u>U.S. v. Fisher</u>, 289 F.3d 1329, 1337-38 (11th Cir. 2002).

The Alabama Supreme Court has also held that "only when the language of the statute is ambiguous or uncertain will [it] resort to considerations of fairness or policy to ascertain the legislature's intent."   <u>Advertiser Co. v. Hobbie</u>, 474 So. 2d 93, 95 (Ala.

1985) (citing <u>Morgan Co. Bd. of Educ. v. Alabama Public School and College Auth.</u>, 362 So. 2d 850 (Ala. 1978)). This unwillingness to deviate from a statute's unambiguous text for policy reasons has likewise been expressed by the federal courts. As the Eleventh Circuit has held, "legislative history and [the] general purpose of the Act do not overcome its plain statutory language . . . [n]or can a general appeal to statutory purpose overcome the specific language of the Act, because the text of a statute is the most persuasive evidence of [legislative] intent." <u>National Coal Ass'n v. Chater</u>, 81 F.3d 1077, 1082 (11th Cir. 1996) (citing <u>Griffin v. Oceanic Contractors, Inc.</u>, 458 U.S. 564, 571 (1982)).

In this case, the language of section 16-50-20(b) is clear and unambiguous. Though the first phrase of this subsection generally grants an exemption to trustees who were serving on April 30, 1986, the latter phrase empowers the Governor to re-designate the length of those trustees' terms so as to conform them to the requirements of subsection (a) of the statute. By Plaintiff Reed's reckoning, however, the Governor's authority only extends to maintaining the staggered-terms provisions of subsection (a), and to nothing else. Yet, the clear language of subsection (b) does not limit the Governor's power in this way. Quite plainly, it says that "the Governor may re-designate the period of the term of these members *so as to conform to the provisions of subsection (a)*." ALA. CODE § 16-50-20(b) (emphasis added). Notably, the statute does not restrict the Governor's authority to conform trustees' terms only to certain aspects of subsection (a). Because the Legislature has expressed no intent to do something less, the Governor's power must be understood to extend to each of "the provisions of subsection (a)," which includes the age restriction challenged by Plaintiff Reed. Had the Legislature only intended to give the Governor authority to maintain the staggered-

terms provisions of subsection (a), it could have easily expressed that intent by inserting the phrase "staggered terms" ahead of the word "provisions" in subsection (b). While this is certainly the way Plaintiff Reed wishes to read the statute, it is not at all what the law actually provides. This Court should reject his "best reading" of section 16-50-20(b), as it attempts to inject limitations to the Governor's authority that are not expressed in the plain language of the statute itself.

Rationally, Plaintiff Reed should acknowledge that the Governor's authority to re-designate the lengths of trustees' terms extends to enforcing the age restriction set forth in subsection (a). But, while he eagerly accepts the notion that the first phrase of subsection (b) exempts him from the age restriction, he vehemently denies that the Governor's authority under that same subsection is of the same scope as the exemption. In essence, Plaintiff Reed seems to want his cake and eat it, too. If it were true that the Governor's authority under subsection (b) extends only to enforcing the staggered-terms provisions of the statute, as Plaintiff Reed asserts, then it would logically follow that the exemption itself is limited in the same way. There is nothing in subsection (b) that suggests these two phrases (which are only a semicolon apart in the syntax of the statute) have different scopes of operation. Yet, as inconsistent as it is, that is the position Plaintiff Reed takes.

Because of the inconsistency in Plaintiff Reed's argument, its adoption by this Court would produce an absurd result, by ascribing different scopes of application to two phrases found in the same sentence of a statutory provision. The law will not permit such a reading of a statute, as it has been held that a construction of a statute that produces absurd or unreasonable consequences is to be avoided. See Ex parte Watley, 708 So. 2d 890, 893 (Ala. 1997). Thus, rather than adopt Plaintiff Reed's

tortured and inconsistent reading of section 16-50-20(b), this Court should instead construe the scopes of both parts of subsection (b) so that they are consistent with one another.  See Tucker v. Molden, 761 So. 2d 996, 999 (Ala. 2000) ("when an expression in a statutory scheme allows two interpretations, one consistent with the remainder of the statutory scheme and the other inconsistent with the remainder of the statutory scheme, the courts will adopt the consistent interpretation and will reject the inconsistent one").  This, as has already been explained, would also comport with the plain language of the statute.

        To the extent the Governor's interpretation of section 16-50-20(b) might hamper the staggered-terms provisions of subsection (a), that is an insufficient reason for departing from the plain language of the statute.  As argued above, policy arguments and general appeals to a statute's broader purpose have no relevance where the statute's language is clear.  Hobbie, 474 So. 2d at 95; Chater, 81 F.3d at 1082.  In addition, nothing in section 16-50-20 supports Plaintiff Reed's apparent premise that maintaining the staggered terms of Alabama State University's trustees is of such paramount importance that it would justify nullifying the Governor's authority under the statute.  This is especially significant in that the Governor's power under subsection (b) is the only safeguard by which an otherwise exempt trustee could be subjected to the statute's age restriction.  See Ex parte E.J.M., 829 So. 2d 105, 109 (Ala. 2001) ("a conflict in statutory provisions should not be resolved in a way that nullifies safeguards").  Moreover, to the extent the Governor's subsection (b) authority might be inconsistent with the staggered-terms provisions of subsection (a), the Governor's authority must trump, as it is set forth at the terminus of the statute and is consequently the last expression of legislative intent.  Swint v. State Alcoholic Beverage Control Bd., 628 So.

2d 769, 772 (Ala. Civ. App. 1993) (quoting <u>Alabama State Bd. of Health ex rel. Baxley v. Chambers County</u>, 335 So. 2d 653, 655 (Ala. 1976), to observe that "[a] basic rule of statutory construction is that '[w]here two sections or provisions of an act are conflicting, the last in order of arrangement controls'").

Finally, Plaintiff Reed's argument is not supported by the decision in <u>Tucker v. Watkins</u>, 737 So. 2d 443 (Ala. 1999). In citing that case, Plaintiff Reed seems to suggest that, despite the plain language of section 16-50-20(b), the Governor can never affect an Alabama State University trustee's term of office once an appointment has been made. <u>See</u> Doc. 17, pp. 7-8. But this broad proposition has no credence, at least not where the Governor's section 16-50-20(b) re-designation authority is implicated. Significantly, the <u>Tucker</u> opinion did not address nor even mention the re-designation clause of section 16-50-20(b). For that reason alone, <u>Tucker</u> is altogether inapposite to the issues now before the Court.

The circumstances of <u>Tucker</u> also readily show that it is distinguishable from the present case. The controversy in <u>Tucker</u> stemmed from an attempt to rescind outright the appointments of two Alabama State University trustees. The decision to rescind these appointments seems to have been motivated primarily by political considerations, inasmuch as <u>Tucker</u> suggests no substantive reason for removing those trustees from their positions. That, however, is different from what the Governor has done regarding Plaintiff Reed's term. Rather than capriciously rescinding Plaintiff Reed's term, the Governor has only altered its length so that it conforms with the age restriction set forth in section 16-50-20(a). This is a critical distinction vis-à-vis <u>Tucker</u>, because section 16-50-20(b) specifically empowers the Governor to re-designate the lengths of trustees' terms to conform those terms to the requirements of section 16-50-20(a), including the

7

age restriction found there.  Again, such an explicit grant of gubernatorial authority was not in play in <u>Tucker</u>.  Thus, whatever issues were decided in <u>Tucker</u>, it did not dispose of the issues now confronting this Court.

Ultimately, much in this litigation depends on the construction given to the Governor's re-designation authority under section 16-50-20(b).  The plain language of the statute empowers the Governor to alter the lengths of trustees' terms so that such terms comply with all the strictures found in section 16-50-20(a).  Yet, Plaintiff Reed contends otherwise, attempting to artificially delimit the Governor's authority so that Plaintiff Reed can be immune from the requirements of the law and serve as an Alabama State University trustee well past his seventieth birthday.  The Governor's recent re-designation of the length of Plaintiff Reed's term has effectively mooted his claim for declaratory relief concerning his entitlement to the general exemption found in the first phrase of section 16-50-20(b).  <u>See</u> <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 67 (1997) (citing <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401 (1975), and <u>Steffel v. Thompson</u>, 415 U.S. 452, 459 n.10 (1974)); <u>Iron Arrow Honor Society v. Heckler</u>, 464 U.S. 67, 70-71 (1983).  Thus, all that remains to be decided under Count One of the Plaintiff's First Amended Complaint is whether and to what extent the Governor holds the authority, under the auspices of the second phrase of section 16-50-20(b), to re-designate the length of Plaintiff Reed's term as an Alabama State University trustee.   In construing the scope of the Governor's re-designation authority, the Defendants ask this Court to reject Plaintiff Reed's interpretation, as it is both inconsistent and contravenes the plain language of the statute.  The Defendants further request that Plaintiff Reed's Motion for Summary Judgment be denied and, instead, that the Defendants' Motion to Dismiss be granted regarding Count One of the Plaintiff's First Amended Complaint.

II.   **SECTION 16-50-20(a) OF THE CODE OF ALABAMA DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.**

In his First Amended Complaint and Motion for Summary Judgment, Plaintiff Reed contends that section 16-20-50(a) violates the Equal Protection Clause of the Fourteenth Amendment because it allegedly discriminates on the basis of age without any rational basis for doing so.   The Plaintiff further claims that the statute does so in "two related but distinguishable ways."   Doc. 17, p. 9.   The Plaintiff first contends that there is no rational basis for prohibiting persons over the age of 70 from serving on the Board.   In the second contention, the Plaintiff has completely changed his argument from the original complaint.   The Plaintiff initially argued that that the mandatory retirement age of 70 was unconstitutional because it is imposed on the trustees of Alabama State University and not on the trustees of any other public universities.   After realizing that this assertion was blatantly false, the Plaintiff now argues that the mandatory retirement age of 70 is unconstitutional because it is not imposed on the boards of trustees of all public universities in the state.   The Defendants will address the arguments individually.

A.   **There is a rational basis for prohibiting persons over the age of seventy from serving on the Board.**

The Plaintiffs have conceded that the age classification contained in section 16-50-20(a) is subject only to rational-basis scrutiny.   See Gregory v. Ashcroft, 501 U.S. 452, 470 (1991) ("This Court has said repeatedly that age is not a suspect classification under the Equal Protection Clause").   In applying the rational-basis test, courts give great deference to the actions of state legislatures.   Panama City Medical Diagnostic, Ltd. v. Williams, 13 F.3d 1541, 1545 (11th Cir. 2004) (stating that "[courts] must give

great deference to the [legislature] because lawmakers are presumed to have acted constitutionally 'despite the fact that, in practice, their laws result in some inequality'") (quoting McGowan v. Maryland, 366 U.S. 420, 425-26 (1961)).  This deference is a result of comity between the branches of government.  As the United States Supreme Court held in F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993):

> [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.  In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

Id. at 313 (citations omitted).  Furthermore, "[r]estraints on judicial review have 'added force' in cases, such as the one at bar, in which the legislature must engage in line-drawing."  Panama City, 13 F.3d at 1546 (quoting Beach Communications, 508 U.S. at 315).

Due to the deference afforded under rational-basis review, when statutes affect neither suspect classifications nor fundamental rights, courts never require legislatures to articulate specific reasons for enacting particular statutes.  See Williams v. Pryor, 240 F.3d 944, 948 (11th Cir. 2001) (quoting Beach Communications, 508 U.S. at 313-15).  In this context, the State bears no evidentiary burden in defending a challenged statute.  Thus, when a law is subjected to rational-basis scrutiny, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  Id.  Moreover, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends."  Heller v. Doe, 509 U.S. 312, 321 (1993).  In

contrast, "those attacking the rationality of the [statute] have the burden to *negative every conceivable basis which might support it.*"  Williams, 240 F.3d at 948 (quoting Beach Communications) (emphasis added in Williams).  Almost universally, this burden proves to be insurmountable, because "[a]lmost every statute subject to the very deferential rational basis scrutiny standard is found to be constitutional."  Id. (citing Panama City, 13 F.3d at 1546-47).

The Plaintiff argues that Gregory v. Ashcroft, 501 U.S. 452 (1991) requires this Court to perform an in-depth analysis of the particular job duties to be performed.   The Defendants strongly dispute that the Court performed any type of detailed analysis of a judge's "duties" in Gregory.  In fact, the Court specifically noted the public's general lack of knowledge regarding a judge's duties, stating that most citizens "never observe state judges in action, nor read judicial opinions."  Id. at 472.  Instead, the Court simply focused on rational reasons why the state may have wanted to impose mandatory retirement on judges at the age of 70.  Id. at 472-473.

As argued in previous briefs, the Gregory court noted that the age limitation in that case drew a line "to avoid the tedious and often perplexing decisions to determine which judges after a certain age are physically and mentally qualified, and those who are not." Id. at 471.  The same can be said for the mandatory retirement of university trustees at the age of 70.  Plaintiff Reed has failed to address this basis in any way in his filings.   The Gregory court also noted that "mandatory retirement increases the opportunity for qualified persons ... to share in the judiciary and permits an orderly attrition through retirement." Id. at 471.  Again, the same can be said for the mandatory retirement of Alabama State University trustees at the age of 70.  Plaintiff Reed also failed to address this basis in any way is his filings.  Finally, the Gregory court also noted

that the judges in question served an extensive term of 12 years, which made them less dependent on the will of the public.  Id. at 472.  Plaintiff Reed is also serving a 12-year term, so the same can again be said in this instance.  The Plaintiff has also failed to address this basis in any way in his filings.

This problem posed by 12-year terms is worthy of further discussion, because the Plaintiff notes that "one will not even reach age 70 as Trustee at Alabama State University unless the Governor has specifically decided, within the few years preceding, that the particular appointee is up to the task."  Doc. 17, p. 11.  This scenario, however, only demonstrates the problem that could be encountered by having a 12-year term without a mandatory retirement age.  Under the scenario posed by the Plaintiff, a person who appears "up to the task" could be appointed trustee at the age of 67.  However, this same person could easily develop serious age-related cognitive problems, such as senility or dementia, within a mere three or four years.  However, this same person would not be subject to removal from the Board for another eight to nine years. Resignation from the Board is typically not an appropriate solution to this problem, as proud and strong-willed persons can be slow to admit (even to themselves) that their minds are slipping.    Thus, as the Supreme Court noted in Gregory, "[v]oluntary retirement will not always be sufficient" "[n]or may impeachment - with its public humiliation and elaborate procedural machinery - serve acceptably..."  501 U.S. at 472.

The most significant aspect of  the Gregory decision, however, was that the Court held that the people could rationally conclude that "the threat of deterioration at age 70 is sufficiently great, and the alternatives for removal sufficiently inadequate, that they will require all judges to step aside at age 70."  Id. at 473.  Thus, the Court held that "[t]his classification does not violate the Equal Protection Clause."  Id.  Similarly, the

threat of deterioration at age 70 is sufficiently great in this case, as there are also inadequate alternatives for the removal of Alabama State University trustees.  In fact, the Plaintiff does not even cite alternatives for the removal of trustees, other than the expiration of their terms.  For these reasons, the age restriction found in section 16-50-20(a) is also rationally based and does not violate the Equal Protection Clause.

Finally, the Plaintiff attempts to argue that the threat of deterioration is not a factor because the duties and responsibilities of a trustee for Alabama State University are simply not demanding.  In fact, Plaintiff Reed even attaches his own affidavit, in which he attempts to convince this Court that the job of a trustee is a simple walk in the park that requires no more than a few hours of participation per month.  This is preposterous.  It is not a secret to even the most casual observer that service on the Board of Trustees for Alabama State University is likely the most demanding of any public university in the State of Alabama.  The overwhelming history of litigation involving the Alabama State University Board of Trustees is astounding.  See, e.g., Proctor v. Riley, 903 So. 2d 786 (Ala. 2004); Dickerson v. ASU, 852 So. 2d 704 (Ala. 2002); Byrd v. Lamar, 846 So. 2d 334 (Ala. 2002); Williams v. Williams, 786 So. 2d 477 (Ala. 2000); Reed v. Board of Trustees of ASU, 778 So. 2d 791 (Ala. 2000); Tucker v. Watkins, 737 So. 2d 443 (Ala. 1999); Watkins v. Board of Trustees for ASU, 703 So. 2d 335 (Ala. 1997); Watkins v. Board of Trustees for ASU, 697 So. 2d 465 (Ala. 1997); Dunn v. Board of Trustees for ASU, 628 So. 2d 519 (Ala. 1993); Ex Parte ASU, 571 So. 2d 301 (1990); Ex Parte ASU, 553 So. 2d 561 (Ala. 1989).[2]  The Plaintiff contends that this

---

[2] This is merely a recitation of cases that have ultimately been decided by the Alabama Supreme Court.  The number of cases that have been presented to the federal and state trial courts throughout Alabama during this same time period have been too vast to mention.

litigation history is irrelevant, because these cited cases occurred after the adoption of section 16-50-20 of the Code of Alabama.   However, the Defendants have never contended that the Legislature had these particular cases in mind when it enacted the statute.   Instead, the litigation history is simply offered as an example of the Legislature's proper foresight as to how demanding the job of a trustee can be.

Service on the Board has also been fraught with infighting.   It is also no secret to even casual observers that Plaintiff Reed has been squarely in the middle of the majority of this infighting.   Earlier this month, Plaintiff Reed published a detailed editorial in the *Montgomery Advertiser* calling for the firing of University President Joe Lee.  See Doc. 11.   In so doing, Plaintiff Reed accused Alabama State University Board of Trustees Chairman Elton Dean, a Defendant in this action, of doing "an about-face" regarding a decision the Board had allegedly made regarding the retention of President Lee, and further accused Chairman Dean of "lobbying other members" of the Board to advocate a position that Plaintiff Reed obviously did not favor.  In 2004, Trustee Oscar Crawley was escorted from the building by campus police after the Board of Trustees barred him from participating in a meeting of the Board.  See Proctor v. Riley, 903 So. 2d 786, 787 (Ala. 2004).  The Plaintiff argues that people over the age of 70 are no harder to get along with than younger people, but that is wholly irrelevant.   These examples of infighting are simply offered to demonstrate how difficult and demanding the job of a trustee at Alabama State University can be, especially when compared to other universities in the state.

It should also be noted that Alabama State University is located in the state capital of Montgomery.   Service as a trustee at a large public university located squarely within the seat of power in the state can logically and rationally be expected to be

complicated by constant political pressures.  The same political concerns would not be nearly as prevalent in towns such as Livingston, Montevallo, Florence, Athens, or Jacksonville.   This is an additional factor that makes service on the Alabama State University Board more demanding.[3]

Simply put, to argue that service on the Board of Trustees at Alabama State University is anything less than extremely demanding is wholly unfounded.   The Plaintiff argues that people over the age of 70 can handle political pressures as well as younger people.  However, the Legislature could rationally conclude that the threat of deterioration at age 70 is great, and could therefore rationally conclude that the ability to handle political pressures could be impaired past the age of 70.[4]  It does not matter that the notion is founded upon a generalization, nor does the notion have to be proven to be true.   In this regard, the Gregory court noted:

> The Missouri mandatory retirement provision, like all legal classifications, is founded on a generalization. It is far from true that all judges suffer significant deterioration in performance at age 70.  It is probably not true that most do.  It may not be true at all. But a State 'does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.'  Murgia, 427 U.S., at 316, 96 S. Ct., at 2568, quoting Dandridge v. Williams, 397 U.S. 471, 485, 90 S. Ct. 1153, 1161, 25 L. Ed. 2d 491 (1970). 'In

---

[3]  In anticipation of Defendants' argument, Plaintiff Reed has asserted in his brief that contact with or proximity to the Governor should have no bearing on a trustee's ability to serve. See Doc. 17, p. 17 n.5.  Defendants, however, have never presented their argument in this way. It is not contact with the Governor that may cause problems.  Rather, it is a trustee's proximity to the seat of government generally, and all the political machinations that may take place there, that could rationally have motivated the Legislature when it enacted the age restriction in section 16-50-20(a).  Moreover,

[4] The concern with trustees serving past age 70 does not center entirely on the notion that older persons are incapable of coping with political pressures.  See Doc. 17, p. 17 n.6. Actually, the converse could be true, inasmuch as the Legislature could have been concerned that persons who remain too long in the political arena may become more interested in maintaining their political power than in rendering public service.  Though this possible explanation for section 16-50-20(a)'s age restriction differs from those upheld in United States Supreme Court precedent, it nonetheless constitutes a rational basis for the statute and thus further supports the constitutionality of the law challenged by Plaintiff Reed in this case.

> an equal protection case of this type … those challenging the …
> judgment [of the people] must convince the court that the … facts
> on which the classification is apparently based could not reasonably
> be conceived to be true by the … decisionmaker." <u>Bradley</u>, 440 U.S.,
> at 111, 99 S. Ct., at 949.

501 U.S. at 473.

Essentially, Plaintiff Reed cannot establish the absence of a rational basis for requiring mandatory retirement at age 70 for trustees at Alabama State University.   It is well established that the burden is on the party challenging the statute to "negative every conceivable basis which might support it."  <u>Alabama State Federation of Teachers, AFL-CIO v. James</u>, 656 F.2d 193 (11th Cir. 1981) (citing <u>Madden v. Kentucky</u>, 309 U.S. 83, 88 (1940)).  Instead of doing this, however, Plaintiff Reed has chosen to simply hurl derisive descriptions of the Defendants' articulated bases for the section 16-50-20(a) age restriction in his brief.   Yet, his characterizing the Defendants' arguments as "inconceivable," a "bald assertion," "made up," "without common sense grounding in believable fact," or "made out of whole cloth and bearing no rational relationship to the real world" does not satisfy his burden of proof to prevail in this case.  This is especially true considering that the Supreme Court has in similar cases already accepted many of the same grounds articulated by Defendants as being sufficient, rational bases for statutory age restrictions.

> **B.    The mandatory retirement age of 70 is imposed on trustees of other public universities and the Alabama Commission on Higher Education.**

The Plaintiffs initially asserted in their complaint that no other public university in the State of Alabama imposes a mandatory retirement age of 70, and based their entire argument on the notion that Alabama State University trustees had been unconstitutionally "singled out" for mandatory retirement at age 70.    <u>See</u> Doc. 1, ¶¶ 11-

12.    Plaintiff Reed later realized (after the Defendants pointed out his glaring misstatement) that this assertion was blatantly false.  Now, he appears to want to withdraw that argument as if it were never made, and instead argue that the mandatory retirement age imposed by section 16-50-20(a)  is unconstitutional simply because it is not imposed on *all* public universities within the state.  The Plaintiff's new argument flies directly in the face of the argument made by the Plaintiff only two months ago. Regardless, the new argument made by the Plaintiff is just as unfounded as his original one was.

The terms for members of the Board of Trustees for the University of Alabama are governed by Amendment 399 to the Alabama Constitution of 1901.    This amendment, in pertinent part, provides:

> Successors to the terms of the existing and additional trustees shall hold office for a term of six years, and shall not serve more than three consecutive full six year terms on the board; *provided however that a trustee shall retire from the board and vacate office at the annual meeting of the board following that trustee's seventieth birthday.*

ALA. CONST. 1901, amend. 399 (emphasis added).  The terms for members of the Board of Trustees for Auburn University are similarly governed by Amendment 670 to the Alabama Constitution of 1901.  This amendment, in pertinent part, provides:

> A trustee shall hold office for a term of seven years, and may serve no more than two full seven-year terms of office.  Appointment and service for a portion of an unexpired term shall not be considered in applying the two-term limit.   Each member of the board of trustees as constituted on the date this amendatory language is ratified may serve the remainder of his or her current term and shall be eligible, if otherwise qualified, to serve for no more than two additional seven-year terms.   *No person shall be appointed as a member of the board of trustees after having reached 70 years of age.*

ALA. CONST. 1901, amend. 670 (emphasis added).  An educational entity that is similar to boards of trustees for public universities is the Alabama Commission on Higher

Education.   The terms of commission members are governed in part by section 16-5-2

of the Alabama Code.    This statute also mandates retirement at age 70, stating as

follows:

> No member of the commission shall be on the governing boards, be
> employed by or directly connected with any institution of higher
> education in the state, the State Department of Education or any
> county or other local board of education.   *No member of the
> commission shall serve past June 30th following his seventieth
> birthday.*

ALA. CODE § 16-5-2(b) (2001) (emphasis added).

Clearly, Alabama State University is not the only public university in the state

that imposes mandatory retirement for trustees at age 70.   Plaintiff Reed attempts to

split hairs by noting that Auburn University prohibits appointments past the age of 70

rather than requiring retirement at age 70.   However, trustees at Auburn University only

serve 7-year terms as opposed to the 12-year terms served by Alabama State University

trustees, so the difficulties posed by removal from office are nowhere near as prevalent.[5]

The Alabama Commission on Higher Education, which is a governing body that is

strikingly similar to public university boards of trustees, also mandates retirement at

age 70.    Obviously, then, there are similar boards in this state which do impose

mandatory retirement at age 70.   The Plaintiff's previous argument that it would be

unconstitutional to impose mandatory retirement on only "one board" and not others

would have been weak, even if it were true.   The Plaintiff's "new argument," that it is

---

[5] The Plaintiff also offers a bizarre illustration of how a person could be appointed trustee at
Auburn at the age of 69 years and 364 days, and serve until age 76.  If the Court wishes to
split hairs to this degree, it could be said that an Alabama State University trustee could reach
the age of 69 years and 364 days on the same day as the annual meeting of the Board on
January 1.  Then, if next annual meeting could be delayed until December 31 of the following
year, this would allow this trustee to serve until nearly the age of 72.  This type of hair-
splitting, however, is best left to the deference of the Legislature and should not be made fodder
for litigation in the courts.

unconstitutional to impose mandatory retirement on "some boards," is completely meritless.

Finally, the treatment of trustee terms at other public universities is irrelevant, because legislatures can implement regulations incrementally and need not legislate to the furthest possible extent.  <u>Williamson v. Lee Optical</u>, 348 U.S. 483, 489 (1955) (holding that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind" and that "[t]he legislature may select one phase of one field and apply a remedy there, neglecting the others"); <u>see also</u> <u>Beach Communications</u>, 508 U.S. at 316 (citing <u>Williamson</u>); <u>Panama City</u>, 13 F.3d at 1546 (citing both <u>Williamson</u> and <u>Beach Communications</u>).  Regardless of whether statutes controlling other state universities' boards of trustees restrict the ages of the members of those boards, the decisions in <u>Gregory</u>, <u>Bradley</u>, and <u>Murgia</u> foreclose any argument that the Alabama Legislature could not implement such restrictions if it desired to do so.  Even if the Legislature had chosen to first implement such a measure with Alabama State University, it would not render it violative of equal protection. <u>Williamson</u> and its progeny instruct that the Legislature did not have to act to the fullest extent to satisfy the Equal Protection Clause.  Rather, it was free to regulate incrementally, first testing a trustee age restriction at Alabama State University or other institutions.  Then, if the Legislature later deemed it prudent, it could undertake to implement similar restrictions for other boards of trustees across the state.  Thus, the "all-or-nothing" approach that Plaintiff Reed apparently advocates finds no support, either in the Constitution or in equal protection jurisprudence.

## CONCLUSION

For the foregoing reasons, the Defendants request that Plaintiff Reed's Motion for Summary Judgment be denied. The Defendants further request that this Honorable Court grant their Motion to Dismiss and enter judgment in their favor dismissing with prejudice all the claims of Plaintiff Reed in this action.

Submitted this 27th day of June 2007.

Respectfully submitted,

**/s/ Kenneth D. Wallis, II**
Kenneth D. Wallis, II (WAL064)
Chief Legal Advisor
Office of the Governor

**/s/ Scott L. Rouse**
Scott L. Rouse (ROU010)
Deputy Legal Advisor
Office of the Governor

**ADDRESS OF COUNSEL:**
Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax

**/s/ Kenneth L. Thomas**
Kenneth L. Thomas (THO043)
Attorney for Defendant Elton Dean

**/s/ Christopher K. Whitehead**
Christopher K. Whitehead (WHI105)
Attorney for Defendant Elton Dean

**ADDRESS OF COUNSEL:**
Thomas, Means, Gillis & Seay, P.C.
P. O. Drawer 5058
Montgomery , AL 36103-5058
(334) 270-1033 Phone
(334) 260-9396 Fax

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of June 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following attorneys:

> J. Cecil Gardner, Esq.
> M. Vance McCrary, Esq.
> James H. Anderson, Esq.
> John B. Crawley, Esq.

> **/s/ Scott L. Rouse**
> Scott L. Rouse (ROU010)
> Deputy Legal Advisor
> Office of the Governor

**ADDRESS OF COUNSEL:**
Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax