IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
**Northern Division**

| | |
|---|---|
| DR. JOE L. REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:07-CV-190-WKW |
| | ) |
| GOVERNOR BOB RILEY, in his official | ) |
| capacity, and ELTON DEAN, in his official | ) |
| capacity as Chair of the Board of Trustees | ) |
| of Alabama State University, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Plaintiff Dr. Joe L. Reed respectfully submits this reply brief in support of his

motion for summary judgment. Plaintiff will not be filing a separate brief in opposition to

the motion to dismiss, since judgment is due to be granted in Plaintiff's favor (and so, by

the same token, the case should not be dismissed); upon the filing of this brief, both

motions will be ready to be taken under submission.

## 1.    The Court should enter judgment in favor of Plaintiff Reed on Count One.

On Count One, Plaintiff Reed seeks a ruling that the age limitation of Ala. Code §

16-50-20(a) is inapplicable to him because he has been in continuous service on the

Board since before April 30, 1986 – and that Governor Riley did not have the power

under § 16-50-20(b) to "re-designate" Plaintiff's term in order to impose on him, or

enforce against him, the age limitation of § 16-50-20(a). Defendants continue to admit that the first clause of § 16-50-20(b) does indeed exempt those like Dr. Reed from the age limitation (Defendants' Brief, Doc. 21, p. 1). But Defendants say that the second clause of § 16-50-20(b) then gives the Governor the power to "enforce" that same limitation on Dr. Reed and those like him. (*Id.*, p. 3).

The parties' briefs have thus disclosed three possible ways of reading § 16-50-20(b). First, it would be possible to read that subsection *not* as exempting pre-1986 Trustees from the age limitation. On this view, both the first ("exemption") clause and the second ("re-designation") clause would have nothing to do with the age limitation, but would have to do only with the staggering of terms. But all parties recognize that this is not, in fact, what the Legislature intended or what the statute means. So, the Court certainly should not adopt this reading.

Second is the way we read the statute – that the "exemption" clause exempts pre-1986 Trustees such as Dr. Reed from the age limitation as well as from other limitations in § 16-50-20(a), and the "re-designation" clause speaks only to designation of terms in the sense of their initial designation after the 1986 amendment to the statute (under § 16-50-20(a)) as being of 3, 6, 9, or 12 years duration, for purposes of ensuring a predictable and settled staggering of terms. We explained the reasons why this is the best reading in our earlier brief.

Third is Defendants' proposed reading. They agree that the "exemption" clause exempts pre-1986 Trustees such as Dr. Reed from the age limitation as well as from other

2

limitations in § 16-50-20(a). But, they say, the "re-designation" clause nonetheless gives the Governor the power to "enforce" all such limitations including the age limitation.

Defendants' reading stumbles, first, over the fact that it would be quite a bizarre way to write a statute. Why would the Legislature exempt some Trustees from certain requirements, yet give the Governor the power to enforce all those same requirements? It just makes no sense; if that's what the Legislature wanted, it would not have exempted anyone in the first place. Note that the Governor doesn't suggest that the Legislature meant to leave it up to his whim, as to whether to bar some 70-year old Trustee from further service or not; so there is no reason to think that the Legislature wanted to rely on the ad hoc political preferences of the Governor in this regard. Instead, on the Governor's reading, it seems that the Legislature exempted and then immediately un-exempted. Why the Legislature would conceivably want to do that is never explained. Our reading, by contrast, at least has the virtue of making the statute mean something. Under our reading, subsection (b) serves a purpose: its first clause protects long-serving Trustees from ouster, while its second clause gives the Governor the power to ensure that Terms remain equally staggered.

In arguing for their odd and pointless interpretation, Defendants rely almost solely on the theory that it is a "plain language" interpretation of a supposedly unambiguous provision. But Defendants are wrongly trying to take just a few words in isolation. They are focusing all their thinking on the words "the provisions of subsection (a)," as though those words by themselves answer the question presented in this part of the case, and are

3

failing to address the context in which those words appear. But that is not how to read a statute. As the Supreme Court reaffirmed just this year, a search for clarity or ambiguity in statutes cannot take words in isolation, but must consider them in the context of the statute as a whole.

> [S]tatutory "ambiguity is a creature not [just] of definitional possibilities but [also] of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118, 115 S. Ct. 552, 130 L. Ed. 2d 462 (1994). *See also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-133, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000) ("meaning -- *or ambiguity* -- of certain words or phrases may only become evident when placed in context" (emphasis added)).

*Zuni Public School Dist. No. 89 v. Dep't of Education*, ___ U.S. ___, 127 S.Ct. 1534, 1546 (2007) (bracketed material in original).

Seen in the context of the entire statutory scheme, § 16-50-20(b) certainly does not "unambiguously" or "plainly" mean that the Governor can enforce the age limitation even against those who are exempted from that limitation. Among other sources of (at least) ambiguity about this, are the words "re-designate" and "terms." In the context of this statute, those words do not "plainly" or "unambiguously" refer to the length of a particular person's eligibility or service. Instead, they could (and, we submit, plainly do) refer to the length of *terms*, and to particular reasons for setting the length of such terms, as a matter entirely separate from the circumstances that might render a particular incumbent unable to serve out an entire term. Because this interpretation would be consistent with the common meanings of the words used, this interpretation is not foreclosed by Defendants' "plain language" argument. On the contrary, if any reading is supported by a "plain language" argument it is ours, since the statute's plain language

4

draws a clear distinction between "terms" (which are of fixed length) and "positions" or "seats" (which may be lost even before a term ends, through death or ineligibility). To say that "terms" can be "re-designated," then, most "plainly" would mean being re-designated as being of 3, 6, 9, or 12 years on a one-time basis in 1986 – not being re-designated as being of some entirely random length due to the happenstance of individual incumbents' circumstances.

Aside from their incorrect "plain language" argument, Defendants' only substantive argument is that interpreting the "re-designation" clause of § 16-50-20(b) is necessary because otherwise there is no way to "enforce" the age limitation of § 16-50-20(a) against Dr. Reed. (E.g., Defendants' Brief, p. 3). This argument has no weight whatsoever, though, because it completely begs the question. That is, it *assumes* that the Legislature intended that there be some way to "enforce" the age limitation against those, like Dr. Reed, who were in service on the Board prior to April 30, 1986. It makes this *assumption* despite the agreed fact that the "exemption" clause of § 16-50-20(b) exempts such people from the age limitation. There is no basis for the *assumption* that the Legislature intended that the age limitation be enforced against such people. The question whether the Legislature had that intent, or not, is simply another way of stating the question that is at the core of the current dispute about Count One. So, Defendants' argument in this regard is merely the equivalent of saying "If the Court assumes that we are right about legislative intent, then we are right."

For these reasons, the Court should accept the parties' agreement that the first

5

clause of § 16-50-20(b) exempts Plaintiff from the age limitation in § 16-50-20(a). And the Court should further hold that the "re-designation of terms" clause of § 16-50-20(b) did not give the Governor the power to impose that same age limitation on Plaintiff.

**2.** **The Court should enter judgment in favor of Plaintiff Reed on Count Two, because the age limitation violates the Equal Protection clause.**

Count Two is the Equal Protection claim. The Court should enter judgment in favor of Dr. Reed, holding that the age limitation violates Equal Protection doctrine.[1]

In considering Count Two, the Court has undisputed evidence before it, in the form of the Second Declaration of Plaintiff Reed. (Doc. 16, attachment 1). Defendants have presented literally no evidence whatsoever, and specifically have presented utterly no evidence to refute a single word in that Declaration. Accordingly, the facts stated in that Declaration are the facts in this case. And they, along with the governing law, demonstrate that judgment is to be entered in favor of Plaintiff on Count Two.

As the parties' briefs have demonstrated, there are two aspects of the Equal Protection challenge: (a) the irrationality of imposing the age restriction on Trustees of Alabama State while not imposing it on Trustees of similar universities; and (b) the irrationality of the age restriction in general, even leaving aside the comparison to other universities. As to both aspects of Count Two, Defendants' arguments lack merit.

    A.    Irrationality in comparison to other similar Boards of Trustees.

The question on this aspect of the case is whether there is a rational basis for requiring that Trustees of Alabama State cannot serve past age 70, while making no such

---

[1] If the Court enters judgment for Dr. Reed on Count One, then the Court should also issue its holding on Count Two, striking down the age limitation, as an alternative holding.

6

requirement for Trustees of the many other similar universities discussed in our main brief (and while allowing Auburn Trustees six more years beyond age 70). And the answer is that there is no rational basis for this differential treatment.

Defendants still contend that the differential treatment is irrelevant. (Defendants' Brief, Doc. 21, p. 19). They contend that this case is governed by the aphorism that a legislature is entitled to address a perceived problem one increment at a time, without running afoul of Equal Protection Doctrine. But – as demonstrated by the Eleventh Circuit case that Defendants themselves cite – this aphorism tends to be applied in cases "involving economic classifications" and cases in which the legislature "must engage in line-drawing." *Panama City Medical Diagnostic v. Williams*, 13 F.3d 1541, 1545-46 (11th Cir. 1994). This is not a case involving economic classifications. And it is not a case where the Legislature *had* to draw a line somewhere. (The absence of necessity of line-drawing is demonstrated by the fact that the Legislature has drawn no such lines at other schools). It is, instead, a classification in which the Legislature simply divided the populace into the favored young and disfavored older.

So, rather than being governed by *Panama City Medical Diagnostic*, this case is governed by the mode of analysis that the Supreme Court utilized in *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395 (1991), *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939 (1979), and *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307,  96 S.Ct. 2562 (1976).  In those cases, dealing with age classifications, the Supreme Court did *not* say that a legislature has carte blanche to impose age limitations on some jobs but not others, as a so-called

7

"incremental" approach. Instead, the Supreme Court has inquired on a fact-specific basis as to whether there is a justification for such differential treatment. This Court should apply that same analysis, rather than declaring it irrelevant as Defendants urge.

While Defendants now belatedly attempt to justify the differential treatment as between similar schools, their justifications are complete irrationality. The statutes themselves do not suggest or imply any possible reason for the difference in treatment of ASU Trustees versus other trustees. While it is true that Defendants are entitled to offer possible rationales even without evidence that the Legislature was actually motivated by such rationales, there are nonetheless legal limits on how creative Defendants can be in this respect. One such limit is that Defendants cannot have the age limitation upheld on the basis of some putative rationale that *could not possibly have been* a legislative justification for it, at the time of enactment. And another such limit, as inherent in the very nature of "rational basis" review, is that the proposed rationale must actually be a rational justification for the difference in treatment.

> The first step . . . is identifying a legitimate government purpose -- a goal --
> which the enacting government body <u>could have been</u> pursuing. The actual
> motivations of the enacting governmental body are entirely irrelevant . . . .
> The second step of rational-basis scrutiny asks whether a rational basis
> exists for the enacting governmental body to believe that the legislation
> would further the hypothesized purpose. The proper inquiry is concerned
> with the existence of a conceivably rational basis, not whether that basis
> was actually considered by the legislative body. As long as reasons for the
> legislative classification <u>may have been</u> considered to be true, and the
> relationship between the classification and the goal is not so attenuated as to
> render the distinction arbitrary or irrational, the legislation survives rational-
> basis scrutiny.

*National Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1245 (11th Cir. 2003),

8

quoting *Joel v. City of Orlando*, 232 F.3d 1353, 1358 (11th Cir. 2000) (emphasis supplied, ellipses in original).

As a supposed justification for imposing an age limitation at ASU but not at other similar schools, Defendants say that there has been a series of reported decisions about the Alabama State Board of Trustees. (Defendants' Brief, pp. 13-14). As we pointed in out in our earlier brief, the citation of those cases does not even demonstrate that service on this Board *is* more demanding than service on any other Board – and certainly does not demonstrate that the Legislature could have so believed, since nearly all such cases came *after* the Legislative enactment. Backing away in light of these points, the Defendants now merely claim that the citation of these cases "is simply offered as an example of the Legislature's proper foresight as to how demanding the job of a trustee can be." (*Id.*, p. 14). But there is absolutely no basis, in the citation of this past litigation, for any rational belief on the Legislature's part that service on the Alabama State Board was *more* demanding than service at other universities. Nor can Defendants supply the necessary rational basis simply by *saying in their brief* (p. 13) that service at Alabama State University is more difficult. There is no evidence that the lawyers' statement is true, nor even any evidence that the Legislature had a basis for believing that the lawyers' statement was true. It is as true in this area of law, as in any other, that lawyers' statements in briefs are not evidence.

Second, Defendants say that the Board of ASU has been "fraught with infighting." (Defendants' Brief, p. 14). As we pointed out in our summary judgment brief,

9

Defendants do not and cannot show that ASU is meaningfully different from any other institution's board in this regard – and especially cannot show even a rational possibility that the Legislature *could have* had any such putative distinction in mind. Moreover, there is simply no rational connection between the existence of some "infighting" and a need to eliminate older Trustees. Defendants' position is just not rational, as a basis for discriminating on the basis of age at ASU.

Finally, Defendants contend that ASU is different because it's in Montgomery, and Montgomery is the state capital. (Defendants' Brief, pp. 14-15). As we pointed out in our summary judgment brief, this makes no sense whatsoever. Defendants now say that there are not concerned that proximity to the Governor will make the job taxing. (*Id.*, p. 15). Nor do they refute our point that every Trustee of every university must deal politically with the Legislature, too, and that there's nothing special about ASU in this regard. Instead, it seems that Defendants think that somehow just *being in Montgomery* itself is especially hard for people over 70. The irrationality is apparent.

As we will see below, it is Defendants' general contention that age brings the threat of age-related dementia, and that this is why an age limitation is constitutionally permissible. But other than that contention – and it is one that would equally well apply to any other university – Defendants have offered absolutely no rational assertion about any sort of ability that tends to be lost at or around age 70. If the possibility of age-related dementia – or, even short of that, some substantial loss of acuity – were a good enough reason for an age limitation at ASU, it would be reason also for such a limitation

10

at every other university. There is nothing about ASU in specific, as contrasted with other schools where there is no age limitation on Trustees, that correlates with any rationally acceptable generalization about the abilities of older people.

In short, Defendants have come up with nothing that comes remotely close to what the Supreme Court has accepted (in *Gregory*, *Vance*, and *Murgia*) as justification for placing age limitations on some public servants but not others. In each of those cases, the Supreme Court looked at actual facts about the duties of the public servants in the various categories, and found a real rational basis for distinguishing one group from another. Defendants' suggestions, by contrast, are even beyond being tenuous; they are made up out of whole cloth and bear no rational relationship to the real world.

B.    Irrationality of the age limitation, even apart from comparison to other schools.

Finally, even if one looks at ASU alone (rather than in comparison to other schools), the imposition of the age limitation is likewise completely irrational. As supposed grounds for the age limitation, Defendants rely only (Brief, pp. 11-13, 15) on the general assertion that some people's faculties deteriorate with age, and that the age limitation is therefore rational.

Their first specific argument in this regard is that age-related dementia might strike (*id.*, p. 12). But this is not enough to constitute a rational basis for age discrimination, as demonstrated by cases such as *Gregory*, *Vance*, and *Murgia*. If that general assertion were enough, then those cases would have required no analysis whatsoever, and no discussion of the particular jobs at issue in those cases. The Supreme Court would have

11

decided *Vance* by saying "Constitutional. *See Murgia*." And it would have decided *Gregory* by saying "Constitutional. *See Vance* and *Murgia*." And it would have said, in one or all of those cases, "A state can impose mandatory retirement whenever it wants as to whatever jobs it wants, because a state can rationally decide that doing so is bureaucratically easier than making particular judgments as to whether particular people have become mentally incapacitated." But that is not what the Supreme Court did. Instead, the Supreme Court inquired into the particulars of the situation – deferentially, to be sure, but still with specificity and not on a rubber-stamp basis.

The Supreme Court has not confined its analysis to asking whether a person with age-related dementia might be unsuited for the job in question, because the answer to that question would be the same no matter what the job is. Instead the Court has asked whether there is something about the aging process more broadly that would reasonably be seen to render more people unsuited for the job as they age – and whether this is a sufficient problem, and the alternatives sufficiently unacceptable, so as to permit the age-classification. That is what the Court should do in this case, as well. The fact is that there is nothing about the role of ASU Trustee that makes older people unsuited to the task.[2]

---

[2] We also note that, if some member of the Board of Trustees of any state university did suffer from age-related dementia or other mentally-debilitating condition that actually made him or her incapable of performing the job, then impeachment is available in the very unlikely situation where the person refused to resign. Such trustees are, for at least some legal purposes, officers of the State. *See* Opinion of the Attorney General, No. 2003-186, 2003 Ala. AG LEXIS 139 ("[A] member of the board of trustees [of Auburn University] holds an office with the State of Alabama.") So, presumably trustees are subject to impeachment under Ala. Code § 36-11-1(a).

The Supreme Court in *Gregory* held that an age limitation was acceptable for state judges because impeachment might be an unacceptable alternative *in that particular situation.* The present situation is different, both because of the lower public profile of university trustees as compared to that of judges, and because of the relatively rareness of any trustee losing the ability

12

True enough, some people suffer age-related dementia at some point during the aging process. If that is enough to justify this age discrimination, it is enough to justify every age discrimination. It would, equally well, justify a decree that no one over 60 can even be a typist in any public office – because some people tend to start losing their abilities around the age of 60, and it's somewhat hard to get rid of them when they do. If the Court recognizes *any* limits on when a State can discriminate against older people, this is the case to put that recognition into practice.

Defendants' second argument in this regard is that older people can't "handle political pressures." (Brief, p. 15). Or wait – their argument then becomes, on the other hand, that older people might relish the world of political pressures too much? (Brief, p. 15 n. 4). Whichever way Defendants try to go with this one – whether it's that politics is too much for the old, or the old are too much into politics – they are merely spouting irrational made-up-on-the-spot age-discriminatory generalizations without a shred of factual basis.

So, again, there is nothing about the realities of the role of Trustee at ASU – nothing, even, in any way that a rational person could *view* or *perceive* the role – that specifically justifies dividing the populace into the favored young and the disfavored older. The undisputed facts, in Plaintiff Reed's second declaration, show that there is

to do the job. The Alabama Legislature has deemed impeachment to be the appropriate way of removing disabled trustees at *every* university in the state – for those whose disability strikes before age 70 everywhere, and for those whose disability strikes after 70 nearly everywhere. There is no rational reason to believe that trustees at Alabama State become disabled more often than those at other schools, such that somehow the impeachment method that is acceptable everywhere else becomes unacceptable for older trustees at ASU.

13

nothing about this role that becomes too difficult with age. The only legal holding that would justify this age limitation would be a holding that age limitations are constitutionally permissible in any situation at all – even where the role is very far from a full-time occupation, even where the role requires no physical exertion at all, even where incumbents are chosen for their suitability on a one-on-one basis by the Governor. But, as we have shown, that is simply not the law under *Gregory* and earlier cases.

## Conclusion

For these reasons and the reasons explained in our earlier brief, the Court should enter judgment in Plaintiff Reed's favor, along with appropriate declaratory and equitable relief.

Respectfully submitted,
ATTORNEYS FOR PLAINTIFFS

s/J. Cecil Gardner
J. Cecil Gardner
M. Vance McCrary
THE GARDNER FIRM, P. C.
P. O. Box 3103
Mobile, Alabama 36602
Telephone: (251) 433-8100
Fax: (251) 433-8181
E-mail: cgardner@thegardnerfirm.com
        vmccrary@thegardnerfirm.com

John B. Crawley, Esq.
8115 Amber Street
Montgomery, AL 36117
Telephone (334) 277-9045 or (334) 546-9045
E-mail: jbcsjc@charter.net

14

James H. Anderson, Esq.
Beers, Anderson, Jackson, Patty,
Van Heese & Fawal, P. C.
P. O. Box 1988
Montgomery, AL 36102-1988
(334) 834-5311
Fax: (334) 834-5362
E-mail:  janderson@beersanderson.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2007, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:

Scott Lee Rouse
Kenneth Lamar Thomas
Kenneth Dallon Wallis, II
Christopher Kyle Whitehead

s/J. Cecil Gardner

15