IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| DR. JOE L. REED,  )   )  Plaintiff,  )   )  v.  )   )  GOVERNOR BOB RILEY, in his official  ) capacity, and ELTON DEAN, in his official  ) capacity as Chair of the Board of Trustees  ) of Alabama State University,  )   )  Defendants.  ) | CIVIL ACTION NO. 2:07-CV-190-WKW   Removed from the Circuit Court of Montgomery County, Alabama Case No. 03-CV-2007-900076.00 |

_____

**DEFENDANTS' REPLY BRIEF SUPPORTING
MOTION TO DISMISS AMENDED COMPLAINT**
_____

COME NOW Defendants Governor Bob Riley and Elton Dean (collectively "the Defendants"), by and through their respective counsel of record, and submit this reply brief supporting their Motion to Dismiss First Amended Complaint. (Doc. 20). This brief supplements the arguments already advanced by Defendants in their principal brief (Doc. 21) and responds to the arguments asserted by Plaintiff Reed in his most recent brief in this case. (Doc. 22) For the following reasons, the Defendants' Motion to Dismiss First Amended Complaint is due to be granted, and Plaintiff Reed's Motion for Summary Judgment should be denied.

ARGUMENT

I.  THE PLAIN LANGUAGE OF SECTION 16-50-20(b) SUPPORTS THE GOVERNOR'S AUTHORITY TO RE-DESIGNATE THE PERIOD OF PLAINTIFF JOE REED'S TERM AS A TRUSTEE.

In his most recent brief, Plaintiff Reed argues that section 16-50-20(b) is susceptible to three different interpretations. See Doc. 22, pp. 2-3. Under two of these,

including the one advocated by the Defendants, both halves of this statutory subsection are given consistent scopes of operation. See id. By the other interpretation, however, the exemption clause of section 16-50-20(b) would be given a much broader purview than that of the re-designation clause, even though those clauses are found within the same sentence and are separated by a mere semicolon. Plaintiff Reed, of course, would have the Court adopt this inconsistent reading of section 16-50-20(b), because it is the only interpretation that would allow him to retain his position as a trustee at Alabama State University.

      After laying out the possible ways to read section 16-50-20(b), Plaintiff Reed then embarks on a lengthy discourse attempting to explain why his interpretation best comports with the plain language of the statute. See Doc. 22, pp. 3-6. In doing so, he questions the legislative policy implications of the Defendants' position, baselessly accuses the Defendants of reading section 16-50-20(b) out of context, and conclusorily asserts that the Defendants' interpretation is "odd and pointless." See Doc. 22, pp. 3-4. Ultimately, though, Plaintiff Reed's argument only demonstrates the correctness of the Defendants' position. He never says how it is possible to give different scopes of operation to two statutory clauses contained in the same sentence, and he never explains why maintaining trustees' staggered terms is such an important interest that it should completely override the Governor's authority under the statute. Most telling, though, is Plaintiff Reed's attempt to inject ambiguity into the statute by parsing the meanings of "re-designate" and "terms." See Doc. 22, p. 4. The thrust of this particular argument is unclear to the Defendants, but the lack of clarity in Plaintiff Reed's argument cannot signify that the statute itself is ambiguous.

      As was argued in the Defendants' principal brief, the plain language meaning of

2

section 16-50-20(b) is manifest.  See Doc. 21, pp. 1-8.  Though Plaintiff Reed has in several ways attempted to contort the meaning of the statute, his efforts are unavailing.  It is clear and rational to conclude that the latter half of section 16-50-20(b) empowers the Governor to re-designate the lengths of trustees' terms to ensure that those terms comport with ***all*** the requirements of section 16-50-20(a), including the age restriction now challenged by Plaintiff Reed.  Had the Legislature intended to limit the extent of the Governor's authority under the statute, as Plaintiff Reed attempts to interpret it, the Legislature could easily have done so, but it simply did not.  Thus, this Court should hold that the Governor has validly exercised his authority to re-designate Plaintiff Reed's term in accordance with section 16-50-20(b) and enter a judgment dismissing Count One of the Plaintiff's First Amended Complaint.

II. **SECTION 16-50-20(a) OF THE CODE OF ALABAMA DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.**

   A. **Plaintiff Reed's arguments wrongly suggest that the age restriction set forth in section 16-50-20(a) must be subjected to something greater than rational-basis review.**

From the beginning of this lawsuit, Plaintiff Reed has admitted that the age restriction that he challenges is subject only to rational-basis scrutiny.  See Doc. 1, ¶¶ 11-12 (averring in his original complaint that the age classification in the challenged statute lacks a "rational basis").  Throughout this litigation, he has never expressly asserted that his challenge to section 16-50-20(a) is subject to anything but rational-basis review.  See, e.g., Doc. 15, ¶¶ 11-12; Doc. 17, pp. 9, 13-15; Doc. 22, p. 6 (admitting that the proper standard in this case is rational-basis review).  Indeed, Plaintiff Reed is clearly constrained to articulate his arguments in this way, as the United States Supreme Court "has said repeatedly that age is not a suspect classification under the Equal Protection

Clause." Gregory v. Ashcroft, 501 U.S. 452, 470 (1991). Despite this, in his most recent arguments Plaintiff Reed at least implies that this Court must subject section 16-50-20(a) to a more rigorous review than precedent requires. This is simply wrong.

Plaintiff Reed's sly attempt to elevate the standard of review in this case is illustrated by the fact that a key component of his equal protection argument is the insistence that this Court must conduct an exacting review of the "specific duties of a Trustee of Alabama State University." Doc. 17, p. 10; see also Doc. 22, pp. 7-8 (arguing that "the Supreme Court has inquired on a fact-specific basis as to whether there is a justification for . . . differential treatment" in age discrimination cases). Plaintiff Reed asserts that this comports with Gregory, which he interprets to require a court to undertake "a substantial analysis" of the nature of any job that is affected by an age restriction. See Doc. 17, p. 10. Plaintiff Reed's ploy becomes more transparent, however, when he openly criticizes the Defendants for failing to produce evidence supporting their equal protection arguments. See Doc. 22, pp. 6, 9; see also Doc. 17, p. 10. Based on this, he claims an evidentiary victory by touting that his own declaration has gone unrefuted. See Doc. 22, p. 6.

Plaintiff Reed's arguments are antithetical to the great deference that is afforded state legislatures under rational-basis review. See Panama City Medical Diagnostic, Ltd. v. Williams, 13 F.3d 1541, 1545 (11th Cir. 2004) (stating that "[courts] must give great deference to the [legislature] because lawmakers are presumed to have acted constitutionally 'despite the fact that, in practice, their laws result in some inequality'"); see also F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313 (1993) ("equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices"). Likewise, Plaintiff Reed's attempt to place an evidentiary burden on the

Defendants in this case is misplaced. Though he suggests that the Defendants have failed in their arguments by not presenting evidence, the law is clear that the Defendants bear no such burden of proof. Under rational-basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." Williams v. Pryor, 240 F.3d 944, 948 (11th Cir. 2001). This confirms that the Defendants are not required to present any evidence at all to support their legal arguments. Moreover, under rational-basis review, the factual evidence offered by Plaintiff Reed in the form of his declaration is altogether irrelevant.

In sum, the law is clear that this Court need not subject section 16-50-20(a) to the heightened scrutiny that Plaintiff Reed suggests is required. Similarly, precedent also shows that the Defendants bear no evidentiary burden in defending the constitutionality of the challenged age restriction in this case. That being so, this Court should disregard Plaintiff Reed's invitation to conduct a "a substantial analysis" of the job duties of an Alabama State University trustee. See Doc. 17, p. 10. This Court should also ignore Plaintiff Reed's arguments concerning his evidence or the Defendants' purported lack thereof. Instead, this Court ought to focus on the many rational bases that the Defendants have asserted in support of the statute challenged in this case. This Court should also recognize that Plaintiff Reed, while accusing the Defendants of failing to carry an evidentiary burden they do not even have, has simultaneously failed to discharge his own burden of negating the rational bases proffered by the Defendants.

> **B.  The Plaintiff has failed to negate every conceivable basis which might support the statute as required by <u>F.C.C. v. Beach Communications, Inc.</u>, 508 U.S. 307 (1993), and <u>Williams v. Pryor</u>, 240 F.3d 944 (11th Cir. 2001).**

Throughout his pleadings, Plaintiff Reed repeatedly relies on the decisions in <u>Gregory v. Ashcroft</u>, 501 U.S. 452 (1991), <u>Vance v. Bradley</u>, 440 U.S. 93 (1979), and <u>Mass. Bd. of Retirement v. Murgia</u>, 427 U.S. 307 (1976), to support his position that the mandatory retirement provision of section 16-50-20(a) is unconstitutional. Ironically, the mandatory retirement provisions cited in each of those cases were fully affirmed as constitutional. In fact, the Plaintiff does not cite a single case in any of his pleadings wherein a mandatory retirement provision was stricken as unconstitutional. His inability to cite such a case is a clear demonstration of the great deference that the courts afford legislatures in deciding issues such as these. The Defendants do not contend, as Plaintiff Reed suggests they do, that this means no analysis is to be performed by the Court regarding the potential reasons for enacting mandatory retirement provisions. Much to the contrary, the Defendants have offered a litany of rational bases for the mandatory retirement provision now challenged by Plaintiff Reed. Moreover, these are ***identical*** to the bases that were fully upheld in the case law cited by the Plaintiff.

As argued in previous briefs, the <u>Gregory</u> court noted that the age limitation in that case drew a line "to avoid the tedious and often perplexing decisions to determine which judges after a certain age are physically and mentally qualified, and those who are not." 501 U.S. at 471. The same can be said for the mandatory retirement of trustees at age 70. The Plaintiff still has not addressed this basis in any way in his filings. In fact, the Plaintiff erroneously implies in another portion of his latest brief that "line drawing"

is only allowed in cases "involving economic classifications." See Doc. 22, p. 7. To the contrary, the Gregory court specifically noted that line drawing in age-related cases is appropriate. 501 U.S. at 471. The Gregory court also noted that "mandatory retirement increases the opportunity for qualified persons . . . to share in the judiciary and permits an orderly attrition through retirement." Id. Again, though, the same can be said for the mandatory retirement of university trustees at age 70. But the Plaintiff still has not addressed this basis in any way is his filings. The Gregory court also noted that the judges in question served an extensive term of 12 years, which made them less dependent on the will of the public. Id. at 472. Plaintiff Reed is also serving a 12-year term, and so the same can again be said in this instance.

      The Defendants have elaborated further on this point, noting that a person could be appointed trustee at Alabama State University and develop age-related cognitive problems within a few years, and still have several years remaining on his or her term. The Plaintiff addressed this point in his latest filing, but his argument flies directly in the face of the holding in Gregory. Specifically, the Plaintiff argues that this problem can be resolved by impeachment in the event that the trustee would not voluntarily retire. However, the Supreme Court specifically stated in Gregory that "[v]oluntary retirement will not always be sufficient . . . [n]or may impeachment-with its public humiliation and elaborate procedural machinery-serve acceptably. . ." Id. at 472. The Plaintiff then argues that impeachment from the Alabama State University Board of Trustees is acceptable, because it involves a "lower public profile" compared to judges. See Doc. 22, p. 12 n.2. This is simply wrong. Impeachment proceedings for state officers such as university trustees would culminate in a public trial before the Alabama Supreme Court. See Ala. Code § 36-11-1 through -25 (2001). There can be no doubt

7

that public impeachment proceedings for a figure such as Dr. Joe Reed would be a media circus. As such, it would likely serve as the lead story for many newspapers and television stations throughout the state for each day of the trial. Accordingly, the Plaintiff's argument is wholly unfounded and contradicts the holding in Gregory.

Most importantly, Gregory held that the people could rationally conclude that "the threat of deterioration at age 70 is sufficiently great, and the alternatives for removal sufficiently inadequate, that they will require all judges to step aside at age 70. This classification does not violate the Equal Protection Clause." 501 U.S. at 473. Likewise, the threat of deterioration at age 70 is sufficiently great in this instance as well, and there are also inadequate alternatives for removal of Alabama State University Trustees. This simply cannot be refuted by Plaintiff Reed.

As the Defendants have previously noted, it is well established that the burden is on the party challenging the statute to "negate every conceivable basis which might support it." Williams v. Pryor, 240 F.3d 944, 948 (11th Cir. 2001) (citing F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993)). The Defendants have offered four separate bases in the preceding paragraphs which have already been found to be rational and therefore constitutional by the United States Supreme Court. Speaking of these exact four separate bases, the Gregory court specifically held that "[a]ny *one* of these explanations is sufficient to rebut the claim that the 'varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [people's] actions were irrational.'" 501 U.S. at 471-72 (citing Bradley, 440 U.S. at 97) (emphasis in Gregory). Under this clearly established precedent, the inquiry terminates here and the statute is due to be upheld.

    **C.**    **The Plaintiff's argument that the mandatory retirement provision of 16-50-20(a) is unconstitutional because it is not imposed on the boards of trustees for all public universities in the state is meritless and irrelevant.**

The Plaintiff still maintains his "new argument" that this Court is somehow allowed to find the mandatory retirement provision of 16-50-20(a) unconstitutional simply because it is not imposed on the boards of trustees of *all* public universities in the state. Ignoring for the moment that this "new argument" directly contradicts the Plaintiff's "first argument" that the ASU Board had been unconstitutionally singled out, there is not a case on record which even remotely implies that a mandatory retirement provision is unconstitutional if it is applied to the boards of trustees for some rather than all public universities in the state. The Plaintiff does not cite such a case. Furthermore, the Plaintiff's insistence upon an evidentiary examination of other boards of trustees is erroneous, and is reflective of his improper attempt to change the standard of review for his claim from rational basis to strict scrutiny.

Despite the fact that there is no requirement that they do so, the Defendants have offered several obvious differences between service on the Alabama State University Board of Trustees and some of the other universities in the state which could rationally explain why the Legislature would treat service on the Alabama State University board differently. Some examples include political difficulties associated with the location of university in the state capital, and the demanding aspects of service on the Alabama State University board as demonstrated by the litigation history of the board and its history of infighting.

In response, the Plaintiff still contends that service on the board is not physically demanding, and even offers an affidavit from the Plaintiff stating that service on the

board only requires a few hours per month of service. Once again, the Plaintiff wrongfully urges this Court to review outside evidence in direct contravention of the rational-basis review standard. In asking the Court to review the affidavit, the Plaintiff also erroneously chooses to examine whether the job is physically demanding, while completely ignoring whether the job is mentally demanding. Alabama State is a major public university with over 5,000 students and an annual budget in excess of 84 million dollars. The Board of Trustees is the sole governing authority of the university. The decisions made by the Board are of paramount importance to the university. Regardless of whether the decisions rendered by the Board take three hours, three months, or three minutes, the university is entitled to have these important decisions made rationally and without concerns of the "threat of deterioration" on the part of the trustees. Gregory, 501 U.S. at 473. Furthermore, the concerns regarding political pressures and infighting only add to how mentally demanding the job is. Accordingly, the mandatory retirement provision of 16-50-20(a) is due to be upheld.

      Finally, the treatment of terms at other public universities is irrelevant, because legislatures can implement regulations incrementally and need not legislate to the furthest possible extent. Williamson v. Lee Optical, 348 U.S. 483, 489 (1955) (holding that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind" and that "[t]he legislature may select one phase of one field and apply a remedy there, neglecting the others"). Regardless of whether statutes controlling other state universities' boards of trustees restrict the ages of the members of those boards, the decisions in Gregory, Bradley, and Murgia foreclose any argument that the Legislature could not implement such restrictions if it desired to do so. Even if the Legislature chose to first implement such a measure with Alabama

State University, it would not render it violative of equal protection.  <u>Williamson</u> instructs that the Legislature did not have to act to such an extent to satisfy the Equal Protection Clause.  Rather, it was free to regulate incrementally, first testing a trustee age restriction at Alabama State University and, if the Legislature later deemed it prudent, it could then undertake to implement similar restrictions for other boards of trustees.  Thus, the "all-or-nothing" approach that the Plaintiffs apparently advocate finds no support, either in the Constitution or in equal protection jurisprudence.

## CONCLUSION

For the foregoing reasons, the Defendants request that Plaintiff Reed's Motion for Summary Judgment be denied.  The Defendants further request that this Honorable Court grant their Motion to Dismiss and enter judgment in their favor dismissing with prejudice all the claims of Plaintiff Reed in this action.

Submitted this 12th day of July 2007.

Respectfully submitted,

**/s/ Kenneth D. Wallis, II**
Kenneth D. Wallis, II (WAL064)
Chief Legal Advisor
Office of the Governor

**/s/ Scott L. Rouse**
Scott L. Rouse (ROU010)
Deputy Legal Advisor
Office of the Governor

**ADDRESS OF COUNSEL:**
Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax

                    **/s/ Kenneth L. Thomas**
                    Kenneth L. Thomas (THO043)
                    Attorney for Defendant Elton Dean

                    **/s/ Christopher K. Whitehead**
                    Christopher K. Whitehead (WHI105)
                    Attorney for Defendant Elton Dean

**ADDRESS OF COUNSEL:**
Thomas, Means, Gillis & Seay, P.C.
P. O. Drawer 5058
Montgomery , AL 36103-5058
(334) 270-1033 Phone
(334) 260-9396 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following attorneys:

    J. Cecil Gardner, Esq.
    M. Vance McCrary, Esq.
    James H. Anderson, Esq.
    John B. Crawley, Esq.

                    **/s/ Scott L. Rouse**
                    Scott L. Rouse (ROU010)
                    Deputy Legal Advisor
                    Office of the Governor

**ADDRESS OF COUNSEL:**
Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax