IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOE L. REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:07-cv-0190-WKW [wo] |
| | ) | |
| BOB RILEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the plaintiff's Motion for Summary Judgment (Doc. # 16) and the defendants' Motion to Dismiss First Amended Complaint (Doc. # 20). Both motions have been fully briefed and are ripe for consideration. For the reasons set forth below, the plaintiff's motion for summary judgment is due to be denied, and the defendants' motion to dismiss is due to be granted.

## I.  PROCEDURAL HISTORY

This lawsuit concerning seats on the Board of Trustees (the "Board") of Alabama State University ("ASU") originated in the Circuit Court of Montgomery County, Alabama, on February 2, 2007, and was brought by William Clark, Thomas Figures, and Dr. Joe L. Reed ("Reed"). (Doc. # 1-2.)  On March 2, 2007, it was removed to this court by Governor Bob Riley ("Governor Riley") and Elton Dean ("Dean") as defendants sued in their official capacities as Governor of the State of Alabama and chair of the Board of ASU, respectively. (Doc. # 1.)  The court issued an order (Doc. # 13) on June 6, 2007, that denied the plaintiffs'

motion to remand, granted the defendants' motion to dismiss as to every plaintiff except Reed, and ordered Reed to file an amended complaint. On June 13, 2007, Reed filed his First Amended Complaint (Doc. # 15) and moved for summary judgment (Doc. # 16). The defendants filed a motion to dismiss[1] (Doc. # 20) the First Amended Complaint on June 27, 2007, which also served as their response to Reed's summary judgment motion. One day later, Reed filed a reply brief (Doc. # 22) in support of his summary judgment motion.[2] Finally, on July 12, 2007, the defendants filed a reply brief (Doc. # 24) in support of their motion to dismiss. The material facts are not in dispute, the issues have been fully briefed, and the case is now ripe for final disposition.

## II.  FACTS

Reed has been a trustee of ASU since before April 30, 1986. (First Reed Decl. 1.) Soon after the statute governing the Board was amended in 1986, Reed's term was designated by the then-Governor to be a twelve-year term pursuant to Alabama Code § 16-

---

[1]  Although the defendants have provided two documents – Governor Riley's letter to Reed (Doc. # 5) and Reed's op-ed article (Doc. # 11-2) – that were not attached to the complaint, they are more properly construed as responses to the plaintiff's summary judgment motion. Therefore, the court will consider them as such without converting the motion to dismiss into one for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure. Even if they were in support of the motion to dismiss, neither document's authenticity is in dispute and both are central to the plaintiff's claim. Under these circumstances, a court may consider the documents without converting the motion to dismiss into one for summary judgment under the "incorporation by reference" doctrine. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

[2]  Reed declined to file a separate brief in opposition to the defendants' motion to dismiss but agrees both motions are ready for the court to take under submission. (Doc. # 22, at 1.)

2

50-20(b). (*Id.*) On February 1, 1999,[3] he was reappointed to serve another twelve-year term on the Board. (*Id.*) On September 13, 2008, Reed will turn seventy years old.[4] (First Am. Compl. ¶ 6.) Because the statute governing the Board contains an age limitation of seventy years, Reed is now in danger of losing his seat. Furthermore, five days after removing this case, Governor Riley – who also serves as the *ex officio* president of the Board – informed Reed in a letter that he was "re-designating the period of [Reed's] term so that it will expire on September 30, 2008."[5] (Doc. # 5.) In order to remain on the Board past September 30, 2008, Reed must show either (1) that he is exempt from the age limitation provision and the Governor does not have authority to re-designate his term, or (2) that the age limitation provision is unconstitutional.

In support of his argument that the age limitation provision is unconstitutional, Reed claims the role of a trustee "is far less than a full-time job" and that "[i]t is not physically demanding in the slightest." (Second Reed Decl. 1.) He claims the job is not time-consuming, noting that it "merely requires . . . a few hours per month of reading and

---

[3] Although Governor Riley's letter (Doc. # 5) to Reed states that he was reappointed on July 27, 1999, and that he has not continuously served on the Board, the court must take Reed's version of the facts as true at this stage of the proceedings as to the motion to dismiss. Also, whether he served continuously on the Board is immaterial in light of the court's determination that his claimed exemption does not apply to the age limitation provision.

[4] The court mistakenly stated Reed's seventieth birthday was September 13, 2007, in its previous order. (Doc. # 13, at 2.)

[5] As explained in greater detail below, the age limitation provision restricts a trustee from serving on the Board "past September 30 following his seventieth birthday." Ala. Code § 16-50-20(a) (1975).

discussion." (*Id.*)  The defendants counter these assertions in part by submitting an op-ed article authored by Reed and published in the *Montgomery Advertiser* on Sunday, May 13, 2007, to argue that the job is demanding.  (Doc. # 11-2.)  They present the article, with its headline stating, "President's Deficient Leadership Damaging to ASU," as an example of the in-fighting they claim is common on the ASU Board.  (*Id.*)  In the article, Reed identifies the two most important trustee duties as "protect[ing] the integrity of the university and select[ing] a quality president." (*Id.*)  From there, he goes on to criticize the ASU president and to state his case for new leadership.  (*Id.*)  In addition to Reed's op-ed article, the defendants point to the fact that ASU is a "major public university with over 5,000 students and an annual budget in excess of 84 million dollars."  (Doc. # 24, at 10.)

## III.  JURISDICTION

Because this case arises under 42 U.S.C. § 1983, the court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).  The court exercises supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

## IV.  STANDARD OF REVIEW

### A.    *Motion to Dismiss*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint "requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007).  Factual allegations

in a complaint need not be detailed but "must be enough to raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true (even

if doubtful in fact)."  *Id.* at 1964-65 (citations omitted); *see also Hill v. White*, 321 F.3d 1334,

1335 (11th Cir. 2003) (stating that the court accepts the allegations in the complaint as true

and construes them in the light most favorable to the plaintiff).  The court does "not require

heightened fact pleading of specifics, but only enough facts to state a claim to relief that is

plausible on its face."  *Twombly*, 127 S. Ct. at 1974.  Failure to state a claim for relief results

in the dismissal of the complaint.  Fed. R. Civ. P. 12(b)(6).

**B.**    ***Motion for Summary Judgment***

Summary judgment should be granted only "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c).  Under Rule 56, the moving party "always bears the initial responsibility of informing

the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  "[T]he court must view all evidence and make all reasonable inferences in favor of

the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.

1995).  The movant can meet this burden by presenting evidence showing there is no genuine

issue of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 322-23. Because neither party raises a genuine issue of material fact, the court considers the case to be submitted on the briefs as a question of whether the movant is entitled to judgment as a matter of law.

## V. DISCUSSION

### A.    Introduction

The first count of Reed's complaint is brought under Alabama's Declaratory Judgment Act, Ala. Code §§ 6-6-220 through -232, and requires an interpretation of the Alabama statute[6] that regulates the qualifications and terms of office for the Board at ASU. *See* Ala.

---

[6] The statute in its entirety reads as follows:

(a) There is hereby created a Board of Trustees for Alabama State University, the state educational institution at Montgomery, Alabama. The board of trustees shall consist of two members from the congressional district in which the institution is located and one member from each of the other congressional districts in the state as constituted on October 6, 1975, and who shall reside in that district, four members from the state at large who shall reside in different districts, and the Governor, who shall be ex officio president of the board. Except for a trustee at large, the position of any trustee shall be vacated at such time as he shall cease to reside in the district from which he was appointed. The trustees shall be appointed by the Governor, by and with the advice and consent of the Senate, in such manner that the membership shall consist of at least a majority who are alumni and who have received a bachelor's degree from the said university; at least one-half of the board shall be from the prevailing minority population of the state according to the last or any succeeding federal census. Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed. All appointments shall be effective until adversely acted upon by the Senate. Provided, however, no trustee who is currently serving on the board or whose term has just expired, who has been previously

6

Code § 16-50-20.  Reed seeks a declaration that the statute's age limitation does not apply to trustees, like himself, who served on the Board at the time of the statute's last amendment; a declaration that Governor Riley did not have the power to "re-designate" his term in order to enforce the age limitation of subsection (a); and a declaration that he may remain on the Board after the September 30 following his seventieth birthday.  (First Am. Compl. ¶ 9.) Reed's second count argues that even if he is subject to the age limitation, it is unconstitutional and unenforceable because it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  (*Id.* ¶ 10.)

Before embarking on an analysis of the statute, it is necessary to identify and examine its relevant portions.  The statute consists of two subparagraphs, (a) and (b).  In its 425 words, subparagraph (a) does many things without divisional breakdown.  It establishes the

---

confirmed by the Senate, shall be required to be reconfirmed for the new term under this section, once appointed by the Governor.  A member may be appointed to serve a second term of 12 years, but no member shall be appointed to serve as trustee for more than a total of two terms.  The first members, however, shall be eligible to serve for two full additional terms in addition to their initial terms.  No trustee shall receive any pay or emolument other than his actual expenses incurred in the discharge of his duties as such.  No member of the governing board or employee or student of any public postsecondary education institution, no elected or appointed official having the power of review of the Alabama State University budget, other than the Governor and no employee of the State of Alabama shall be eligible to serve on the board.  No member shall serve past September 30 following his seventieth birthday.

(b) No trustee who is serving on the said board on April 30, 1986, shall lose his or her seat because of this section; provided, however, the Governor may re-designate the period of the term of these members so as to conform to the provisions of subsection (a).

Ala. Code § 16-50-20 (1975).

7

Board, sets qualifications for its members, provides for twelve-year terms renewable at staggered intervals, and restricts service on the Board to those under seventy years old, among other things. *See* Ala. Code § 16-50-20(a). The age limitation provision is the very last sentence of subsection (a) and states that "[n]o member shall serve past September 30 following his seventieth birthday." *Id.* The staggered term provision states that "[t]rustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed." *Id.* Terms of service on the Board are capped at twelve years and "no member shall be appointed to serve as trustee for more than a total of two terms." *Id.* However, an exception provides that "the first members[7] . . . shall be eligible to serve for two full additional terms in addition to their initial terms." *Id.*

Although subsection (b) has the advantage of brevity over subsection (a), any such advantage is squandered by the confusion that it sows in just a few words. Subsection (b) consists of one sentence with two clauses and states in full, "No trustee who is serving on the said board on April 30, 1986,[8] shall lose his or her seat because of this section; provided, however, the Governor may re-designate the period of the term of these members so as to

---

[7] It appears this term refers to Board members who served at the time the statute was first enacted in 1975. It is unclear when Reed first joined the Board, except that it was before April 30, 1986. (First Reed Decl. 1.) Regardless, the question of whether Reed is a "first member" is not before the court.

[8] These members will be referred to as the "1986 trustees."

conform to the provisions of subsection (a)." Ala. Code § 16-50-20(b). The first clause of subsection (b) will be referred to as the "exemption provision," and the second clause as the "re-designation provision."

**B.    *Interpretation of Alabama Code Section 16-50-20***

Reed argues that, as a 1986 trustee, the exemption provision in subsection (b) absolutely shields him from the age limitation provision of subsection (a). The defendants agree with Reed's broad interpretation of the exemption provision, but argue that it is modified by the re-designation provision that they claim allows the Governor to enforce the age limitation provision through a re-designation of a 1986 trustee's term. Reed counters with a narrow interpretation of the re-designation provision and argues it was only a one-time power for the Governor to use in order to effectuate the staggered term provision of subsection (a) that was added in 1986. In effect, Reed urges a "broad/narrow" view: a broad interpretation of the exemption provision and a narrow interpretation of the re-designation provision. The defendants argue a "broad/broad" view: a broad interpretation of both the exemption and re-designation provisions. As explained below, neither side's interpretation of the statute is entirely correct because a "narrow/narrow" view comports most closely with the intent of the Legislature.

One possible interpretation of the exemption provision is that it should be read narrowly so that it applies only to the changes made to the statute in 1986. Both sides recognize, and argue against, this narrow construction of the exemption provision and urge

the court to refrain from taking this path.[9]  While it may be curious at first blush to find the

parties in agreement, both sides are in unique positions such that even though they remain

adversaries, neither desires this narrow interpretation of the exemption clause to prevail.[10]

Regardless of the parties' invitations, the court finds that an interpretation of the exemption

provision is necessary to the task at hand and that a narrow reading is correct.

When courts are faced with issues of statutory interpretation, the Alabama Supreme

Court has long held:

> "The fundamental rule of statutory construction is to ascertain and give effect
> to the intent of the legislature in enacting the statute. Words used in a statute
> must be given their natural, plain, ordinary, and commonly understood
> meaning, and where plain language is used a court is bound to interpret that
> language to mean exactly what it says.  If the language of the statute is
> unambiguous, then there is no room for judicial construction and the clearly
> expressed intent of the legislature must be given effect."

*Austin v. Ala. Check Cashers Ass'n*, 936 So. 2d 1014, 1026 (Ala. 2005) (quoting *Ex parte*

---

[9]  Reed states this view would mean both clauses "would have nothing to do with the age limitation, but would have to do only with the staggering of terms.  But all parties recognize that this is not, in fact, what the Legislature intended or what the statute means.  So, the Court certainly should not adopt this reading."  (Doc. # 22, at 2.)  The defendants "agree that [the exemption provision] generally exempts [Reed] from the scope of the age restriction" and that "there is no need for this Court to construe the first phrase of subsection (b)."  (Doc. # 11-1, at 2.)

[10]  In addition to politics, lawsuits sometimes create strange bedfellows.  Reed surely recognizes a narrow reading of the exemption provision eviscerates his strongest argument, thereby leaving him in the weak position of having to defeat the age limitation provision of the statute armed with only rational basis scrutiny.  More curiously, the defendants do not seize the narrow interpretation as even an alternative legal strategy for subjecting Reed to the age limitation provision.  Only when one realizes that a narrow reading of both clauses of subsection (b) – thereby limiting gubernatorial power – would be inconsistent with the defendants' broad reading of the re-designation provision – thereby expanding gubernatorial power – does the defendants' omission of a narrow construction argument reveal itself as perhaps a strategy of another kind.

*Master Boat Builders, Inc.*, 779 So. 2d 192, 196 (Ala. 2000)). "The intent of the Legislature in adopting a statute may be gleaned from considering the language used, the reason and necessity for the statute, and the goals the Legislature sought to accomplish." *Ex parte Krothapalli*, 762 So. 2d 836, 838 (Ala. 2000). "[O]nly when the language of the statute is ambiguous or uncertain will the court resort to considerations of fairness or policy to ascertain the legislature's intent." *Advertiser Co. v. Hobbie*, 474 So. 2d 93, 95 (Ala. 1985).

The court finds that the use of the term "section" in the exemption provision, combined with the terminology of the second clause, creates ambiguity in the meaning of the statute. If "section" is read broadly to include all of section 20 of Title 16, Chapter 50 – both subparagraphs (a) and (b) – it creates internal inconsistencies and superfluous language in contradiction to the canons of statutory interpretation. *See Ex parte Uniroyal Tire Co.*, 779 So. 2d 227, 236 (Ala. 2000) (stating presumption against superfluous words or provisions). For example, if the exemption provision applies to section 20 in its entirety, it would essentially grant a lifetime appointment to the 1986 trustees.[11] This would be an absurd result considering the care with which the statute sets up term limits, term lengths, and age limits. *See Ex parte Watley*, 708 So. 2d 890, 893 (Ala. 1997) ("'It is fundamental . . . that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the

---

[11] Subsection (a) states that "no member shall be appointed to serve as trustee for more than a total of two terms." Ala. Code § 16-50-20(a). Yet, if the exemption clause is read broadly, a 1986 trustee could argue that because the two term limit is contained within section 20, it cannot cause him to lose his seat.

purposes and policies of the act in question.'" (quoting *Ex parte Meeks*, 682 So. 2d 423, 428 (Ala. 1996))).

A broad reading of both clauses of subsection (b), as the defendants suggest, also produces a bizarre statutory scheme.  If the Legislature intended the first clause to exempt 1986 trustees from the age limitation provision, as both parties argue, it defies logic to turn around in the very same sentence and provide the Governor with authority to enforce the age limitation provision.  This, in Reed's words, would mean "the Legislature exempted and then immediately un-exempted."  (Doc. # 17, at 4.)

Furthermore, the phrase beginning the second clause, "provided, however," links the exemption provision to the re-designation provision.  The two clauses are also linked by the phrase, "of these members," in the re-designation provision, which clearly references the 1986 trustees of the first clause.  These links between the two clauses of the same sentence are important because they provide textual context to the scope of subsection (b) as a whole.  As the defendants acknowledge, "[t]here is nothing in subsection (b) that suggests these two phrases (which are only a semicolon apart in the syntax of the statute) have different scopes of operation."  (Doc. # 21, at 5.)

The re-designation provision uses much of the same terminology as the staggered term provision of subsection (a).  *Compare* Ala. Code § 16-50-20(a) (using the phrase "period of terms designated by the appointing authority" and designating the Governor as the appointing authority) *with id.* § 16-50-20(b) (using the phrase "the Governor may re-designate the period

of the term"). Furthermore, prior to the introduction of subsection (b) to the statute, the only usage of the term "designate," or derivatives thereof, was in reference to the gubernatorial power of staggering terms. *See, e.g.,* Act of July 18, 1983, No. 573, § 1, 1983 Ala. Acts 878, 879 ("Of the first members appointed to the board, one third shall be designated by the governor to serve until . . . ."). Therefore, the terminology of the re-designation provision indicates it may be limited to the staggered term provision of subsection (a), which in turn indicates the exemption provision may be similarly limited.[12] *See Tucker v. Molden*, 761 So. 2d 996, 999 (Ala. 2000) ("Under standard rules of statutory construction, when an expression in a statutory scheme allows two interpretations, one consistent with the remainder of the statutory scheme and the other inconsistent with the remainder of the statutory scheme, the courts will adopt the consistent interpretation and will reject the inconsistent one.").

While these ambiguities may not be so great as to warrant a narrow interpretation of the exemption provision by themselves, they at least muddy the intent of the Legislature sufficiently to necessitate a further step in the interpretive process through the use of extrinsic tools such as legislative history. Ultimately, it is this history that most strongly persuades the court that a narrow interpretation of both clauses comports with the intent of the Legislature.

Prior to 1986, there was no subsection (b) and no exemption or re-designation

---

[12] As the defendants correctly note, "If it were true that the Governor's authority under subsection (b) extends only to enforcing the staggered-terms provisions of the statute, . . . then it would logically follow that the exemption itself is limited in the same way." (Doc. # 11-1, at 6.)

provisions. *See* Act of July 18, 1983, No. 573, § 1, 1983 Ala. Acts 878, 879. At this time, the statute contained its much simpler, original term staggering provision that divided the Board into three classes "as nearly equal as may be, so that one third shall be appointed biennially." *Id.* Also, as it has been since originally enacted in 1975, the age limitation provision was present in the exact language used today. *See id.*; *see also* Act of Oct. 6, 1975, No. 790, § 1, 1975 Ala. Acts 1581, 1581 (codified as amended at Ala. Code § 16-50-20(a) (1975)).

In 1986, the Legislature saw fit to amend the statute so as to provide a more sophisticated term staggering mechanism, which remains in effect, and to increase trustee term lengths from six years to twelve years. *See* Act of Apr. 30, 1986, No. 540, § 1, 1986 Ala. Acts 1051, 1052 (codified at Ala. Code § 16-50-20(a) (1975)). The new staggering provision of 1986 threw the old six-year terms with three biennial appointment classes out the window and replaced them with "terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority." Ala. Code § 16-50-20(a). It is at the time of these staggered term amendments that subsection (b) was added to the statute. Because the exemption provision of the new subsection (b) required the 1986 trustees to retain their seats, each of their old six-year terms had to be converted to a three, six, nine, or twelve year term in order to launch the new staggered term scheme. The re-designation provision of subsection (b) was therefore necessary to empower the Governor, as the appointing authority referenced in subsection (a),

to "re-designate the period of the term [of the 1986 trustees] so as to conform to the provisions of subsection (a)." *Id.* § 16-50-20(b). This suggests the re-designation provision was intended to apply only with respect to effectuating the staggered term provision of subsection (a) that was established by the amendments of 1986.[13]

In addition to the context of subsection (b)'s hand-in-hand creation with that of the new staggered term mechanism, the text of the original enabling act of the 1986 amendments strongly supports a narrow interpretation of both clauses. Instead of the statutory language ensuring the 1986 trustees would not lose their seat "because of this *section*," *id.* (emphasis added), the enabling act uses the language "because of this *act*." Act of Apr. 30, 1986, No. 540, § 1, 1986 Ala. Acts 1051, 1052 (emphasis added). As the effect of the *act* was primarily[14] to amend the staggered term mechanism, thereby leaving intact most of the original code *section*, the Legislature's use of the term "act" is significant. It connotes a desire to ensure sitting trustees would not lose their seat due to the term changes wrought by the 1986 amendments to the staggered term provision – not a desire to completely immunize them against the pre-existing age limitation provision.

This narrow view of the re-designation provision also comports with the related

---

[13] Indeed, Reed states this re-designation power was used in exactly this manner in 1986 to change his original term to one of twelve years. (First Reed Decl. 1.)

[14] Besides the new staggered term scheme and term length, the only other changes made by the act increased the number of at-large trustees by two, and required a majority of the Board to consist of alumni and at least half to consist of "the prevailing minority population of the state." *See* Act of Apr. 30, 1986, No. 540, § 1, 1986 Ala. Acts 1051, 1052 (codified at Ala. Code § 16-50-20(a) (1975)). The act did not change the age limitation provision at all. *See id.*

15

statutory scheme governing the Board. The statute concerning vacancies of Board seats requires that "[a] trustee appointed to fill a vacancy . . . shall hold office *during the unexpired term*," Ala. Code § 16-50-25 (emphasis added), and it must be read *in pari materia* with Section 16-50-20. *Watkins v. Bd. of Trs. of Ala. State Univ.,* 703 So. 2d 335, 338 (Ala. 1997). This language makes it clear that even if a trustee were to die, or leave the Board for any other reason, his term would not expire. In other words, the twelve year terms, once established by the 1986 amendments, continue unaltered so as to preserve the carefully crafted staggering effect. Were it not so, "the staggering of terms would soon become practically random, based entirely on the happenstance of the ages of various past Trustees." (Doc. # 17, at 6.) Therefore, construing the two statutes together, a broad reading of the re-designation provision would allow the Governor to alter the length of a Board term in direct conflict with § 16-50-25's expectation that terms shall continue "unexpired."

The defendants' last remaining argument for a broad re-designation provision is that without it, "there could be no way to enforce the subsection (a) age restriction against Plaintiff Reed." (Doc. # 11-1, at 3 n.3.) However, as ASU well knows, a *quo warranto* action is available to remove trustees who illegally serve on the Board. *See, e.g.*, *Reed v. Bd. of Trs. for Ala. State Univ.*, 778 So. 2d 791, 792 (Ala. 2000) (per curiam) (affirming removal of ASU trustees through *quo warranto* action); *Tucker v. Watkins*, 737 So. 2d 443, 443 (Ala. 1999) (same). Less than ten years ago, the ASU Board and the State of Alabama brought a *quo warranto* action challenging the right of two members to serve on the Board. *Reed*,

16

778 So. 2d at 792.  In addition to its age limitation provision, subsection (a) also restricts

employees of public postsecondary institutions from serving on the Board.  In *Reed*, the trial

court found this provision rendered both Board members ineligible to occupy their seats and

ordered them removed.  *Id.* at 793.

Though the Alabama Supreme Court reversed the removal of one of the Board

members because she had cured her ineligibility, it affirmed the removal of the second

member because she had still been ineligible at the time judgment was entered against her.

*Id.* at 797-98.  In reaching its decision, the Court stated "if, at the time a defendant in a *quo*

*warranto* action is 'adjudged guilty of . . . unlawfully holding . . . any office,' she is, in fact,

ineligible to hold such office, [and] 'judgment must be entered,' thus vacating the office."

*Id.* (quoting Ala. Code § 6-6-600) (emphasis omitted).  Similarly, if a trustee were in

violation of subsection (a)'s age limitation provision, he would be unable to cure his

ineligibility and, therefore, would be unlawfully holding office.  In such a situation, a *quo*

*warranto* action would be available as an enforcement remedy.[15]

The intrinsic wording, the extrinsic legislative history, and its construction with

related statutes confirm the Legislature intended to limit all of subsection (b) to the staggered

term provision of subsection (a).  Consequently, with respect to the age limitation provision

of subsection (a), although the Governor does not have the authority to re-designate term

---

[15]  Reed admits that if he is subject to the age limitation provision, "a *quo warranto* action
would be the way to seek his removal."  (Doc. # 8-1, at 12.)

periods in order to enforce it,[16] subsection (b) does not exempt 1986 trustees from the age limitation provision.  Therefore, even in a light most favorable to Reed and assuming his allegations to be true, his summary judgment motion is due to be denied and the defendants' motion to dismiss is due to be granted on the state law claim for declaratory relief.

## C.    *Constitutionality of the Age Limitation Provision*

Even if he is subject to the age limitation provision, Reed argues that it violates the Equal Protection Clause.  Both parties agree, as they must, that the proper standard of review for the challenge of a statutory age classification on equal protection grounds is rational basis review.  *See Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991).  Reed's argument is two-pronged.  First, he claims there is no rational basis for prohibiting persons over seventy from serving on the Board.  (Doc. # 17, at 9.)  Second, he claims there is "no rational basis for imposing such a rule on Trustees of Alabama State University and not on the Trustees of many other public universities in the State."  (*Id.*)

Legislatures are afforded a very high degree of deference under the rational basis standard, especially when they "must engage in line-drawing."  *Panama City Med. Diagnostic Ltd. v. Williams*, 13 F.3d 1541, 1546 (11th Cir. 1994).  Accordingly, a statute is

---

[16]  The Governor's letter (Doc. # 5) purporting to re-designate the period of Reed's term so that it expires on September 30, 2008, is a legal nullity.  The term of Reed's seat remains unchanged and, once Reed is no longer eligible to serve after September 30, 2008, the Governor is free to exercise his authority to appoint a successor, by and with the consent of the Senate, who will serve the remainder of the seat's unexpired term.  However, because Reed is subject to the age limitation provision regardless of the Governor's attempted re-designation, the court need not grant Reed's request for a specific declaration to this effect as it is now moot.  (*See* First Am. Compl. ¶ 9.)

constitutional "so long as 'there is *any reasonably conceivable state of facts* that could provide a rational basis for the' statute." *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993)). The party challenging the statute has "'the burden to *negative every conceivable basis which might support it.*'" *Id.* (quoting *Beach Commc'ns*, 508 U.S. at 313-15). Furthermore, "'a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* (quoting *Beach Commc'ns*, 508 U.S. at 313-15). Almost every statute subject to rational basis scrutiny is held constitutional, *id.*, and ASU's age limitation provision is no different.

### 1.    Persons Over Seventy in General

The United States Supreme Court has upheld the constitutionality of a state constitutional amendment that mandated retirement for state judges when they reach the age of seventy. *Gregory*, 501 U.S. at 473. The trial court identified "numerous legitimate state objectives" that the age limitation provision served, including protecting the quality of the judiciary, avoiding the need to make difficult decisions about which judges are physically and mentally capable of serving at such an age, and increasing opportunities for younger persons through orderly attrition. *Id.* at 471. Although the Court focused its attention on the protection of quality and capability rationale, it found that "[a]ny one of these explanations is sufficient" to provide a rational basis. *Id.* at 471-72.

The defendants proffer similar explanations as those upheld in *Gregory* as rational

19

bases to subsection (a)'s age limitation provision, such as the difficulty in determining which trustees are mentally and physically qualified for the job, and permitting an orderly attrition through retirement. (Doc. # 21, at 11.) As the Supreme Court noted, "[i]t is an unfortunate fact of life that physical and mental capacity sometimes diminish with age." *Gregory*, 501 U.S. at 472. Providing a bright-line age limitation may reduce the number of trustees serving on the Board with diminished abilities, thereby reducing the number of times beloved trustees must be confronted with their deterioration in an effort to procure their retirement or, worse, impeachment and its accompanying humiliation.

The age limitation provision could also serve to reduce the instances of trustees unexpectedly dying before the completion of their term, thereby leaving the seat unfilled until a replacement is nominated. This is especially pertinent when a term consists of twelve years and the average life expectancy in Alabama is only about 74 years. Susan Pace Hamill, *A Tale of Two Alabamas*, 58 Ala. L. Rev. 1103, 1131 n.238 (2007) (book review) (reporting that life expectancy in Alabama is 74.4 years). Instead of unnecessarily risking that the Board not operate at full capacity due to unexpected deaths, the age limitation provision makes it more likely expected and foreseeable transitions will occur.

While there are many more conceivable objectives that could supply a rational basis for ASU's age limitation provision, such as preventing trustees from becoming too disconnected from ASU students who tend to be much younger, rational basis analysis only requires one. The defendants have proposed many rational bases that Reed has failed to

rebut.  The primary thrust of Reed's argument is that people over seventy are perfectly capable of serving on the ASU Board because it is neither physically nor temporally demanding.[17]  (Reed Second Decl. 1.)  Even if true, this fails to negative the other conceivable rational bases.

It is clear from his op-ed article, which called for leadership change at ASU, that at sixty-nine years of age, Reed is still an active and valuable member of the Board.  The court harbors no doubt that he could continue as such come October 1, 2008.  But the age limitation provision was not promulgated with Reed in mind; rather, it is the result of a legal classification based on a generalization.  And the Supreme Court of the United States has made it clear that, even if the generalization is not true at all, a State still "'does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.'"  *Gregory*, 501 U.S. at 473 (quoting *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316 (1976)).  The citizens of Alabama could rationally conclude that the threat of deterioration at age seventy, or the threat of a disconnect between students and trustees based on their age difference, or the awkward task of removing a revered but senile trustee, is sufficiently great to require all ASU trustees to step down at the age of seventy.  Therefore, the age limitation provision applicable to service on the Board does not violate the Equal Protection Clause.

---

[17]  Notably, as the defendants point out, Reed "completely ignor[es] whether the job is mentally demanding."  (Doc. # 24, at 10.)  Although Reed does equate service on the ASU Board with that of "a typist in any public office," (Doc. # 22, at 13), the court cannot entertain this as a serious comparison to holding a seat on the governing board of a four-year university with an annual budget of over $84 million and over five-thousand students.  (Doc. # 24, at 10.)

## 2.    Persons Over Seventy at ASU

Reed next argues that trustees at ASU are subject to an age limitation while trustees at most other public universities in Alabama are not.  When this argument was first made to the court, Reed mistakenly thought ASU was the only university subject to such an age limitation.  (*See* Doc. # 8-1, at 16.)  Now that the defendants have pointed out that both the University of Alabama and Auburn University also contain age limitation provisions – enshrined in the state constitution, no less, as Amendments 399 and 670 – this argument falls flat on its face.  The ASU Board is not alone in its age limitation provision, and cannot show it has been treated unequally when two of the largest public universities in the state have similar governing board age limitations.  For these reasons, Reed's claim seeking a declaration that the age limitation provision is in violation of the Equal Protection Clause fails, his summary judgment motion is due to be denied, and the defendants' motion to dismiss is due to be granted for failure to state a claim for relief.

## VI.  CONCLUSION

For the reasons set forth above, it is hereby ORDERED that:

1.    The plaintiff's Motion for Summary Judgment (Doc. # 16) is DENIED;

2.    The defendants' Motion to Dismiss First Amended Complaint (Doc. # 20) is GRANTED as to both counts; and

3.    This case is DISMISSED WITH PREJUDICE.

An appropriate judgment will be entered.

DONE this 31st day of March, 2008.

          /s/  W.  Keith Watkins

UNITED STATES DISTRICT JUDGE