IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| DR. JOE L. REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:07-CV-190-WKW |
| ) | |
| GOVERNOR BOB RILEY, in his official ) | Removed from the Circuit Court |
| capacity, and ELTON DEAN, in his official ) | of Montgomery County, Alabama |
| capacity as Chair of the Board of Trustees ) | Case No. 03-CV-2007-900076.00 |
| of Alabama State University, ) | |
| ) | |
| Defendants. ) | |

_____

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR INJUNCTION PENDING APPEAL**
_____

COME NOW Defendants Governor Bob Riley and Chairman Elton Dean (collectively "the Defendants"), by and through their respective counsel of record, and submit this response opposing Plaintiff Reed's motion for an injunction pending the resolution of his appeal to the Eleventh Circuit. (Doc. 34). For the reasons that follow, Reed's motion should be denied.

ARGUMENT

**I.  The Ruiz v. Estelle, 650 F.2d 555 (5th Cir. 1981), standard advocated by Plaintiff Reed has no application to this case.**

In his motion, Reed relies heavily on Ruiz v. Estelle, 650 F.2d 555 (5th Cir. 1981), to argue that he bears only a relatively light burden to obtain the injunction he seeks. According to Reed, Ruiz requires only that he establish a "substantial issue" on appeal, not that he demonstrate a likelihood of ultimately succeeding on the merits of his claims. This argument, however, ascribes too great a scope to the holding in Ruiz, as it

would justify an injunction in all but the most frivolous of appeals. What Reed fails to acknowledge is that Ruiz represents a departure from the general rule that an injunction pending appeal is an extraordinary remedy that should be granted only sparingly. See Touchston v. McDermott, 234 F.3d 1130, 1132 (11th Cir. 2000); Florida Businessmen for Free Enterprise v. City of Hollywood, 648 956 (5th Cir. 1981) (Kravitch, J., dissenting). Moreover, Reed also neglects to consider that the Ruiz standard has rarely been followed in the Eleventh Circuit and, when it has been, those cases involved extraordinary circumstances.

Ruiz was decided by the "old" Fifth Circuit just before the Eleventh Circuit was created. Thus, although Ruiz constitutes binding precedent in the Eleventh Circuit, subsequent Fifth Circuit opinions that have applied its holding are not likewise binding in the Eleventh Circuit. Taking that into account, Ruiz has since been cited in only five Eleventh Circuit cases. The earliest of these, Newman v. State of Alabama, 683 F.2d 1312, 1321 (11th Cir. 1982), involved an issue of prison crowding and did not rely on the part of Ruiz that dealt with stays pending appeal. In the second case, Garcia-Mir v. Meese, 781 F.2d 1450 (11th Cir. 1986), the Eleventh Circuit was asked to stay an order that required the United States Attorney General to implement a plan to provide hearings to some 1,800 Cuban "excludable aliens" who were then being incarcerated in an Atlanta penitentiary. Fernandez-Roque v. Smith, 91 F.R.D. 117, 121 (N.D. Ga. 1981). These detainees had in the summer of 1980 illegally emigrated to the United States during the Mariel "Freedom Flotilla" with some 125,000 Cuban nationals. Fernandez-Roque v. Smith, 734 F.2d 576, 578 (11th Cir. 1984).

The third citation of Ruiz came in United States v. Hamilton, 963 F.2d 322, 323 (11th Cir. 1992), in which the Eleventh Circuit denied a stay pending appeal in a tax case.

Ruiz was only briefly mentioned when the Court quoted it and Garcia-Mir to establish the appropriate standard for reviewing stay motions. See id. In the spring of 2000, Ruiz was again cited in an unpublished opinion in the highly publicized Elian Gonzalez case. Gonzalez v. Gonzalez ex rel. Reno, No. 00-11424-D, 2000 WL 381901 at *1 (11th Cir. Apr. 19, 2000). In that case, a 6-year-old Cuban boy sought asylum in the United States despite the wishes of his father, who remained in Cuba. The Eleventh Circuit, relying in part on Ruiz, granted Elian Gonzalez a stay pending appeal. The alternative, however, was that the boy would have been returned to Communist Cuba before the Court could even have decided the validity of his asylum application.

The last appearance of Ruiz in an Eleventh Circuit case came in Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1232 (11th Cir. 2005). Though Ruiz was not cited in the appellate decision itself, it was cited in the district court's order in that case that was attached as an appendix to the Eleventh Circuit's opinion. As it was with Gonzalez, the Schiavo case was highly publicized, but in this instance the courts were asked to literally make the life-or-death decision of whether Terri Schiavo should have remained on life support despite her being in a persistent vegetative state. Ultimately, the stay that was sought in that case was denied, and the Eleventh Circuit affirmed.

Ruiz itself stated that its relaxed standard for obtaining injunctive relief is only available when an appeal presents a "serious legal question." 650 F.2d at 565. Since then, the Eleventh Circuit has apparently taken this self-imposed limitation to heart, as is shown by the sparing application of Ruiz over the past two and a half decades. Ruiz has appeared a scant five times in the Eleventh Circuit, with one citation being in an

unpublished opinion[1] (Gonzalez) and another appearing in an appendix (Schiavo). Moreover, in one case the citation of Ruiz had nothing to do with stays pending appeal (Newman). In yet another, the Court declined to apply the relaxed Ruiz standard and denied the requested stay (Hamilton). Ultimately, Garcia-Mir stands as the only published Eleventh Circuit decision that has relied on Ruiz to grant a stay or injunction pending appeal. Importantly, it is absolutely clear that that appeal involved a "serious legal question," as the liberty of some 1,800 Cuban nationals hinged on its outcome. In contrast, though Plaintiff Reed may assert that his appeal presents a "serious legal question," his claims pale in comparison to the liberty interests and foreign policy implications that were at stake in Garcia-Mir. For that matter, the issues in Reed's appeal are also dwarfed by the important, high-profile issues that were in play in both Gonzalez and Schiavo. Simply put, when Reed's appeal is measured on the appropriate scale, it is manifest that it does not present the type of "serious legal question" to which Ruiz might legitimately be applied. Thus, Reed cannot avail himself of Ruiz's standard for obtaining an injunction pending appeal and, insofar as he has not even attempted to otherwise argue there is a likelihood that he will prevail on the merits of his appeal, his motion for injunctive relief should be denied.

II. **Even if the Ruiz v. Estelle standard applies in this case, Plaintiff Reed still cannot establish that he is entitled to an injunction pending appeal.**

A district court may grant injunctive relief only when the moving party can show: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever

---

[1] Pursuant to Eleventh Circuit Rule 36-2, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."

damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). The moving party has the burden of proving all four prongs. Id. The Eleventh Circuit has also held that "[o]rdinarily the first factor is the most important [and a] finding that the movant demonstrates a probable likelihood of success on the merits on appeal requires [a] determin[ation] that the trial court . . . was clearly erroneous." Garcia-Mir, 781 F.2d at 1453 (citing In re Grand Jury Proceedings, 689 F.2d 1351, 1353 (11th Cir. 1982)). Reed cannot carry this heavy burden, and so he has sought refuge in the more lenient standard announced in Ruiz. Yet, as Defendants have argued herein, the issues presented in Reed's appeal are simply not serious enough to allow the invocation of Ruiz. As a result, this Court should deny Reed's motion based on his failure to satisfy even the first prong of the requisite analysis.

Assuming for the sake of argument that Reed could rely on Ruiz and be relieved of his burden of demonstrating a likelihood of success on the merits of his appeal, to obtain an injunction Reed *still* must show that "'the balance of the equities [identified in factors 2, 3, and 4] *weighs heavily* in favor of granting the stay.'" Garcia-Mir, 781 F.2d at 1453 (quoting Ruiz) (emphasis added). This, too, is beyond Reed's ability in this case. Though he quickly runs through the last three factors in his motion, Reed's arguments do not establish that the equities *weigh heavily* in his favor. Much to the contrary, and as the Defendants will demonstrate below, the balance of the equities actually tilts in favor of the Defendants' interests.

### A.   Reed will not suffer an irreparable injury without the issuance of an injunction.

Reed alleges in his motion that he will suffer irreparable harm if an injunction is not issued pending appeal.  Reed claims that the harm to be suffered is "not being able to perform the functions of the office to which he was appointed, and the harm of being subjected to a violation of his constitutional right to Equal Protection." (Doc. 34, p. 5)  Yet, Reed has no property interest in his membership on the ASU Board of Trustees.  Reed is also not an elected official whom the people of the State of Alabama rely upon to effectuate the democratic process.  Thus, there is no injury to Reed or to the citizens of the State of Alabama if he does not serve on the Board during the appellate process.

In the event that Reed turns seventy before the Eleventh Circuit renders an opinion, and assuming the Defendants (or someone else) then take measures to remove Reed from the Board, he would still have an adequate remedy to redress any alleged harm.  Reed could simply be reinstated to his position on the Board if the Eleventh Circuit reverses the decision of this Court on appeal.  Also, as both this Court and Reed have already noted (Doc. 27, p. 17 and n.15), a *quo warranto* proceeding in state court would be the mechanism through which Reed could be removed from the Board if he attempts to continue serving as a trustee after September 30.  If such a *quo warranto* action does ensue, Reed can attempt to obtain injunctive relief or some other remedy in that action to prevent his removal.[2]  Because an adequate future remedy would exist for Reed, and because the judgment of this Court contains no self-executing provision for

---

[2] The Defendants are not suggesting they would agree to such an injunction; they are only pointing out that Reed could seek such relief in a state-court *quo warranto* proceeding.

6

Reed's ouster from the ASU Board of Trustees, he cannot credibly contend that the present proceedings might cause him irreparable harm.

> **B.  The harm to Governor Riley and Chairman Dean greatly outweighs the potential harm to Reed.**

The Eleventh Circuit has stated that "preliminary injunctions of legislative enactments - because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits - must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts." <u>Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville, Fla.</u>, 896 F.2d 1283, 1285 (11th Cir. 1990), rev'd on other grounds, 508 U.S. 656 (1993).  This same principle should apply when analyzing the enjoinment of a statutory provision pending appeal.  There is absolutely no indication from the pleadings or the judgment of this Court that there is any such demand by either the United States or Alabama constitutions or any other legal or equitable principles. The potential harm of enjoining the actions of Governor Riley and Chairman Dean done pursuant to the laws of the State of Alabama greatly outweigh any potential harm to Reed.

As the Court noted in its Memorandum Opinion and Order, there are valid considerations in imposing an age limitation for members of university boards of trustees.  Specifically, the Court noted that "the citizens of Alabama could rationally conclude that the threat of deterioration at age seventy, or the threat of a disconnect between students and trustees based on their age difference, or the awkward task of removing a revered but senile trustee, is sufficiently great to require all ASU trustees to

7

step down at the age of seventy." (Doc. 27, p. 21) These are great concerns of the Defendants. The effects of having an illegal trustee, or even a potentially ineffectual or disconnected trustee, continuing to serve on the ASU Board would be long-lasting because the votes and decisions that are made by trustees will endure even after individual Board meetings are adjourned. And, whereas a court order could easily reinstate Reed as a trustee in the event he prevails on appeal, it would not be nearly as easy to undo his votes and actions as a trustee if he is allowed to serve past September 30 only to have the judgment of this Court affirmed by the Eleventh Circuit.

    **C.**    **The issuance of an injunction would be adverse to the public interest.**

The public interest in this case lies in the protection and upholding of the statutes enacted by the Legislature, which was elected by a majority of the citizens of the State of Alabama. Thus, the public has the same interest as Governor Riley and Chairman Dean in adhering to the age limitation set forth in section 16-50-20(a) of the Code of Alabama. The public interest would not be harmed if the *status quo* is not preserved as argued by Reed. As stated previously, Reed was not elected by the citizens of this State to the ASU Board of Trustees. Instead, he was appointed by a previous Governor to assist in administering one of the State's universities. Thus, the public is not relying upon Reed in particular to perform any duties on its behalf. Simply put, the ASU Board can fully operate without Reed, as it is a twelve-member body that can carry out its duties with just seven members. Therefore, Reed's absence from the Board will not hinder or affect any progress at ASU.

CONCLUSION

For the foregoing reasons, the Defendants respectfully request that Plaintiff Reed's motion for an injunction pending appeal be denied.

Respectfully submitted,

**/s/ Kenneth D. Wallis, II**
Kenneth D. Wallis, II (WAL064)
Chief Legal Advisor
Office of the Governor

**/s/ Scott L. Rouse**
Scott L. Rouse (ROU010)
Deputy Legal Advisor
Office of the Governor

**ADDRESS OF COUNSEL:**
Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax

**/s/ Kenneth L. Thomas**
Kenneth L. Thomas (THO043)
Attorney for Defendant Elton Dean

**/s/ Ramadanah M. Salaam-Jones**
Ramadanah M. Salaam-Jones (SAL026)
Attorney for Defendant Elton Dean

**ADDRESS OF COUNSEL:**
Thomas, Means, Gillis & Seay, P.C.
P. O. Drawer 5058
Montgomery , AL 36103-5058
(334) 270-1033 Phone
(334) 260-9396 Fax

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of May 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following attorneys:

J. Cecil Gardner, Esq.
M. Vance McCrary, Esq.
James H. Anderson, Esq.
John B. Crawley, Esq.

/s/ **Scott L. Rouse**
Scott L. Rouse (ROU010)
Deputy Legal Advisor
Office of the Governor

**ADDRESS OF COUNSEL:**
Office of the Governor
State Capitol, Suite NB-05
600 Dexter Avenue
Montgomery, Alabama  36130
(334) 242-7120 Phone
(334) 242-2335 Fax